# EXHIBIT B

DOD MANUAL 5200.02

PROCEDURES FOR THE DOD PERSONNEL SECURITY PROGRAM (PSP), October 29, 2020

§9.4. SUSPENSION OF NATIONAL SECURITY ELIGIBILITY OR ACCESS.

a.    Except for cases involving NISP contractor personnel, which are administered according to the suspension standards set by DoDD 5220.6 and Volume 2 of DoDM 5220.22, the DoD CAF and the DoD IC central adjudication facilities are solely responsible for suspending national security eligibility.

(1) The adjudication facility will evaluate any credible derogatory information it receives within 15 calendar days and make an initial determination indicating whether or not a cleared individual's continued eligibility is clearly consistent with the interests of the national security.

(2) Adjudication facility officials should confirm with the reporting organization to ensure derogatory information has been reported to CI or law enforcement authorities as appropriate.

[…]

c.    DoD Component heads, commanders, or their authorized representatives must report access suspensions to the appropriate adjudication facility via the JPAS incident report link within the same calendar day as the suspension. This action alerts registered JPAS users of the change in the person's status. The MDCO or FBI may direct this reporting not be done.

[…]

§ 10.2. MINIMUM DUE PROCESS REQUIREMENTS APPLICABLE TO ALL. No

unfavorable national security eligibility determination will be made without first:

a.     Providing the individual with a comprehensive and detailed written explanation of the basis for the unfavorable determination as the national security interests of the United States and other applicable law permit. The LOD or LOR must include each security concern, the applicable adjudicative guideline(s) related to each concern, and provide an explanation of the kinds and types of information they could provide to support their appeal.

b.    Informing the individual of their right to:

(1) Be represented by counsel or other representative at their own expense.

(2) Request the documents, records, and reports upon which the unfavorable national security determination was made. Be granted an extension to the set timeline by the

Component   PSAB if requested documents, records, and reports are not provided promptly.

c.    Providing a reasonable opportunity to reply in writing and to request review of the unfavorable determination.

[…]

h.    When a DoD Component head or principal deputy personally certifies that a procedure in this section cannot be made available in a particular case without damaging the national security interests of the United States by revealing classified information, the particular procedure will not be made available. This certification is conclusive.

[…]

*Available at:*
https://www.esd.whs.mil/Portals/54/Documents/DD/issuances/dodm/520002m.PDF?ver=YMf-3XVWDdl4IodzbSsLnA%3d%3d

**Executive Order 12968**
**Part 5 – REVIEW OF ACCESS DETERMINATIONS**

**Sec 5.2.** *Review Proceedings for Denials or Revocations of Eligibility for Access.*
(a)    Applicants and employees who are determined to not meet the standards for access to classified information established in section 3.1 of this order shall be:
(1) provided as comprehensive and detailed a written explanation of the basis for that conclusion as the national security interests of the United States and other applicable law permit;

(2) provided within 30 days, upon request and to the extent the documents would be provided if requested under the Freedom of Information Act (5 U.S.C. 552) or the Privacy Act (3 U.S.C. 552a), as applicable, any documents, records, and reports upon which a denial or revocation is based;

(3) informed of their right to be represented by counsel or other representative at their own expense; to request any documents, records, and reports as described in section 5.2(a)(2) upon which a denial or revocation is based; and to request the entire investigative file, as permitted by the national security and other applicable law, which, if requested, shall be promptly provided prior to the time set for a written reply;

*Available at:*
https://www.dni.gov/files/NCSC/documents/Regulations/EO_12968.pdf

**DOD INSTRUCTION 5505.03**

**INITIATION OF INVESTIGATIONS BY DEFENSE CRIMINAL INVESTIGATIVE ORGANIZATIONS**, August 2, 2023

[…]

**SECTION 2: RESPONSIBILITIES**

**2.1. IG DOD.**

The IG DoD monitors and evaluates compliance of DoD Components with this issuance.

[…]

**SECTION 3: PROCEDURES**

3.7. INVESTIGATION REPORTS.

a.    In accordance with Section 1732(b) of Public Law 113-66, at the conclusion of the investigation, the DCIOs will only report and document final investigative facts. To avoid the appearance of investigative bias, DCIOs must not convey or document investigative conclusions, whether founded or unfounded, in investigation reports.

b.    DCIOs must document legal coordination from supporting legal counsel or staff judge advocates about an investigation in the final investigation report.

*Available at:*

https://www.esd.whs.mil/Portals/54/Documents/DD/issuances/dodi/550503p.pdf

# EXHIBIT C

**INSPECTOR GENERAL**
**DEPARTMENT OF DEFENSE**
DEFENSE CRIMINAL INVESTIGATIVE SERVICE

2019002173-80SI-B0/F                                              October 26, 2022

██████████████████, INCORPORATED, Fairfax, VA
(b)(7)(A), (b)(6), (b)(7)(C) ████

**GLINES, KRISTINA** ████
(b)(7)(A), (b)(6), (b)(7)(C) ████
██████████████

DISTRIBUTION:
(b)(7)(A) ████████

| Designation Indicator: | WARNING |
| --- | --- |
| **Controlled by:** DCIS<br>**CUI Category:** LEI/INV/PRVCY<br>**Limited Dissemination Control:** FEDCON<br>**POC:** (b)(6), (7)(C) | ~~This document is the property of the Department of Defense Office of Inspector General, Defense Criminal Investigative Service (DCIS). Distribution of this document to other entities without authorization from DCIS is prohibited.~~ |

2019002173-80SI-B0/F                                                                 2

**Synopsis:**
From at least 2015 to present, Kristina A. Glines, GS-15, Director of Security, Department of the Navy Special Programs Office/Department of the Navy Special Access Program Central Office, Pentagon, Washington, D.C., knowingly and willfully, violated her basic obligation of public service, which holds that public service is a public trust. Glines placed private gain ahead of her loyalty to the Constitution, ethics laws, and ethical principles. Glines held financial interests that conflicted with the conscientious performance of her duties, used nonpublic Government information to further a private interest, used public office for private gain, failed to act impartially, and gave preferential treatment to a private entity. These improprieties pertain to Glines imputed interest in ███████████████████████, a company her husband owns and operates.

**Statutes:**
The following violations of the United States Code (U.S.C.) and Code of Federal Regulations (C.F.R.) apply to this investigation:

- 18 U.S.C. § 208 - Acts Affecting a Personal Financial Interest;
- 5 C.F.R. § 2635.402 - Disqualifying Financial Interest;
- 5 C.F.R. § 2635.501 - Impartiality in Performing Official Duties;
- 5 C.F.R. § 2635.502 - Personal and Business Relationships;
- 5 C.F.R. § 2635.701 - Misuse of Position;
- 5 C.F.R. § 2635.702 - Use of Public Office for Private Gain;
- 5 C.F.R, § 2635.703 - Use of Nonpublic Information.

**Background:**
This investigation was opened on May 30, 2019, via a referral from (b)(7)(A), (b)(6), (7)(C) ████ (b)(7)(A), (b)(6), (7)(C) Department of Defense (DoD) Special Access Program Central Office (SAPCO), Pentagon, Washington, D.C., regarding questionable Special Access Program (SAP) accesses for ██████████████████████ employees and questionable business practices. ██(b)(7)(A)(b)(6)██ questioned the high number of SAP accesses being processed, with hundreds of programs each being nominated. ██(b)(7)(A)██ also took umbrage with the spouse of ████████████ President and Chief Executive Officer, who used her official U.S. Government position to benefit her and her husband's financial position, potentially amounting to an organizational conflicts of interest. ██(b)(7)(A), (b)(6)██ expressed concern with the following personnel:

- ███████████, President and Chief Executive Officer, ███████████;
- (b)(7)(A), (b)(6), (b)(7)(C) (b)(7)(A), (b)(6), (b)(7)(C) ████████████████ ██(b)(7)(A), (b)(6),██ & (b)(7)(A), (b)(6), (b)(7)(C), Assistant Secretary of the Air Force for Acquisitions, Special Programs (SAF/AQL), █)(7)(A), (b)(6), (7)(C)████
- (b)(7)(A), (b)(6), (b)(7)(C) (b)(7)(A), (b)(6), (b)(7)(C) ████████████████; (b)(7)(A), (b)(6), (b)(7)(C), Employee, ████████████ (b)(7)(A), (b)(6), (b)(7)(C) ████

**WARNING**
~~This document is the property of the Department of Defense Office of Inspector General, Defense Criminal Investigative Service (DCIS). Distribution of this document to other entities without authorization from DCIS is prohibited.~~

**2019002173-80SI-B0/F**                                                                                      3

- Kristina Glines, Directory of Security, Department of the Navy Special Programs Office/Department of the Navy SAPCO (N9SP).

A SAP is a program activity that imposes additional controls governing access to classified information involved with such programs beyond those required by normal management and safeguarding practices. These additional controls may include, but are not limited to, access approval, adjudication or investigative requirements, special designation of officials authorized to determine a need-to-know, or special lists of persons determined to have a need-to-know.

Based on the DoD SAPCO referral, the Defense Criminal Investigative Service (DCIS), Sensitive Investigations Unit, Alexandria, Virginia, opened a criminal investigation to determine the veracity of the allegations. (b)(7)(A)

**Narrative:**

             **BACKGROUND**

1. ████████████ is a small business specializing in professional services supporting U.S. Government customers within the DoD and the Intelligence Community (IC). ██████ ██████ specializes in the following professional services:

- (b)(7)(A)
- 
- 
- 
- 
- 
- 
- 
- 
- 
- 
- 
- 
- 

2. ████ started ████████████ in 2013 as an individually owned limited liability company supporting DoD customers. In 2016, ████ converted his company into a subchapter S-

WARNING
This document is the property of the Department of Defense Office of Inspector General, Defense Criminal Investigative Service (DCIS). Distribution of this document to other entities without authorization from DCIS is prohibited.

**2019002173-80SI-B0/F**                                                                                          4

Corporation and added three new partners.  The following three corporate officers joined ▮▮▮▮▮▮▮▮▮▮▮:

- (b)(7)(A), (b)(6), (7)(C)
- 
- 

3. ▮▮▮▮▮▮▮▮▮ divided ownership amongst the four owners, with the majority ownership held by ▮▮▮▮▮▮▮▮ Innovators ownership percentages are:

- ▮▮▮▮▮▮, President and Chief Executive Officer, 28.75% ownership;
- (b)(7)(A), (b)(6), (7)(C)
- 
- 

4. ▮▮▮▮▮▮▮▮▮ is a registered corporation in the Commonwealth of Virginia.  ▮▮▮▮▮▮▮▮▮ is a corporate entity (Not Tax Exempt), business, subchapter S-Corporation, and for-profit organization.  ▮▮▮ (b)(7)(A), (b)(6), (7)(C)
(b)(7)(A), (b)(6), (7)(C)

5. ▮▮▮▮▮▮▮▮▮ registered business address was (b)(7)(A), (b)(6), (7)(C) (b)(7)(A), (b)(6), (7)(C) (Attachment 1).  On March 26, 2022, ▮▮▮▮▮▮▮ changed their corporate address from (b)(7)(A), (b)(6), (7)(C) (b)(7)(A), (b)(6), (7)(C) (Attachment 2).  LiquidSpace owns and operates this new business address.  LiquidSpace leases workspace, offices, conference rooms, etc., for use by companies such as ▮▮▮▮▮▮▮▮▮.

6. ▮▮▮▮▮▮▮▮ is registered in the General Services Administration (GSA) Systems for Award Management (SAM) database.  ▮▮▮▮▮▮ has been registered in GSA SAM since July 9, 2013.  ▮▮▮▮▮▮▮▮▮ is an active U.S. Government contractor eligible for all Federal agency contract awards, is in good standing, and without any exclusions – e.g. debarred, suspended, proposed for debarment, or declared ineligible for the award of contracts by any Federal agency.  ▮▮▮▮▮▮▮▮ operates via Commercial and Government Entity (CAGE) code 6XNZ7 (Attachment 3).

7. ▮▮▮▮▮▮▮▮ is a cleared DoD contractor.  In 2016, the Defense Counterintelligence & Security Agency (DCSA) issued ▮▮▮▮▮▮▮ a TOP SECRET Facility Clearance (FCL) (Attachment 4).  ▮▮▮▮▮▮▮ maintains a valid FCL, which allows them to access, possess, and work with classified information up to and including TOP SECRET.  ▮▮▮▮▮▮▮ is an access elsewhere facility with no safeguarding or automated information systems at the FCL's registered address, (b)(7)(A), (b)(6), (7)(C)



**WARNING**
This document is the property of the Department of Defense Office of Inspector General, Defense Criminal Investigative Service (DCIS).  Distribution of this document to other entities without authorization from DCIS is prohibited.

2019002173-80SI-B0/F                                                    5

8. All corporate officers maintain TOP SECRET personnel security clearances with sensitive compartment information and SAP eligibility. ████████████ has had several Facility Security Officers (FSO) throughout their existence. (b)(7)(A), (b)(6), (7)(C)
(b)(7)(A), (b)(6), (7)(C)
████████████████████████████████████████

9. DCSA confirmed ████████████ performed classified work on DoD classified contracts

████████████████████, **INCORPORATED FEDERAL AGENCY CONTRACTS**

10. According to publicly available information, ████████████ has a limited Federal requiring access to classified material, to include SAP access (Attachments 5, 6, and 7). (b)(7)(A)
(b) (7)(A)
████████████████████████████████████

agency contractor presence and a complete absence of contracts with the DoD. Dunn & Bradstreet Federal Information reports indicated a complete absence of federal agency contracts (Attachment 8). The Federal Procurement Data System (FPDS) reported ████████████ had only one federal agency contract award (Attachment 9). This federal agency contract is the General Services Administration (GSA) Professional Services Schedule (PSS) Contract #: 47QRAA20D001N. The PSS is a GSA Indefinite Delivery Indefinite Quantity, Multiple Award Schedule, Firm Fixed Price contract wherein ████████████ is a contract holder (Attachment 10).

11. The DoD Office of General Counsel, Standards of Conduct Office (SOCO), prepares and releases an annual report entitled, *"DoD Vendors with Awards of $25,000.00 and over FPDS Data"* identifying prime contractors who have received DoD contracts awards greater than $25,000. ████████████ was not listed in the FY2016, FY2017, FY2018, FY2019, FY2020, and FY2021 *annual "DoD Vendors with Contracts of $25,000.00 and over"* reports (Attachment 11).

12. (b) (7)(A)
████████████████████████████

- (b) (7)(A)
████████████████████

- (b) (7)(A)
████████████████████

**WARNING**
This document is the property of the Department of Defense Office of Inspector General, Defense Criminal Investigative Service (DCIS). Distribution of this document to other entities without authorization from DCIS is prohibited.

2019002173-80SI-B0/F                                                    6

13. (b)(7)(A)



**WARNING**

This document is the property of the Department of Defense Office of Inspector General, Defense Criminal Investigative Service (DCIS). Distribution of this document to other entities without authorization from DCIS is prohibited.

2019002173-80SI-B0/F                                                    7



14. (b)(7)(A)

**SPECIAL ACCESS PROGRAM ACCESSES**

**WARNING**
This document is the property of the Department of Defense Office of Inspector General, Defense Criminal Investigative Service (DCIS). Distribution of this document to other entities without authorization from DCIS is prohibited.

**2019002173-80SI-B0/F**                                                                                      8

15. ████████████ maintains a significant presence in the DoD SAP community.  DoD
SAPCO, JADE, and Joint Access Database System (JADS) queries confirmed extensive DoD
SAP read-ins for Blue Sky Innovator corporate officers and employees.  Specific SAP details
such as program name, type, and owner are not reportable in this document.  DoD SAPCO
maintains a full list of ███████████ employee SAP accesses.



### PERFORMANCE ON U.S. NAVY CONTRACTS

16. ████ leads ██████████████ performance on U.S. Navy classified contracts.  ████, as
the President and CEO of ████████████, entered into two subcontract agreements with
ECS Federal, Limited Liability Company (LLC), codifying their contractual relationship.  ████
entered into the following two subcontract agreements with ECS Federal, LLC, on the following
U.S. Navy contracts:

- Contract Number:  N3237B-13-C-2010
- Prime Contractor:  ECS Federal, LLC
- Customer:  U.S. Navy, Office of Naval Research (PMR-51)
- Contract Description:  CLASSIFIED
- Subcontract Agreement Execution Date:  May 1, 2017 (Attachment 14)

- Contract Number:  N3237B-15-D-6816
- Prime Contractor:  ECS Federal, LLC
- Customer:  U.S. Navy, Office of Naval Research (PMR-51)
- Contract Description:  CLASSIFIED
- Subcontract Agreement Execution Date:  March 16, 2020 (Attachment 15)

17. These classified contracts have DoN SAP equities that fall under the oversight of █████'s
spouse – Kristina A. Glines, Director of Security, Department of the Navy Special Programs
Office/Department of the Navy SAPCO (N9SP), Pentagon, Washington, D.C.

████████████                                                        (b)(7)(A), (b)(6), (7)(C)
18. ██████████ is the President and CEO of ████████

(b)(7)(A), (b)(6), (7)(C) ████████████████████
████████████████

19. (b)(7)(A), (b)(6), (7)(C) ██████████████
20. (b)(7)(A), (b)(6), (7)(C) ██████████████
████████████████████
████████████████
████████████

**WARNING**
This document is the property of the Department of Defense Office of Inspector General, Defense Criminal Investigative
Service (DCIS).  Distribution of this document to other entities without authorization from DCIS is prohibited.

21. (b)(7)(A), (b)(6), (7)(C) [redacted]

22. As a small business, [redacted] corporate officers perform multiple roles from running the company to working directly on a Federal agency contracts. As the President and CEO of [redacted], [redacted] leads the company, oversees company operations, establishes business strategies, and makes important corporate decisions that impact the company's brand and financial health. [redacted] bills this time, while performing [redacted] President and CEO duties, as an indirect cost – cost not related to a specific service provided directly to a federal agency contract. [redacted] bills his indirect labor as both overhead and General and Administrative (G&A) labor. Overhead costs support the efforts of the direct labor workforce not performing work on a specific contract. G&A are the residual cost necessary to run a business such as labor for strategic planning, business development efforts, and to manage and perform administrative functions.

23. [redacted] also works on Federal agency contracts where he provides professional services, in most cases, Systems Engineering and Technical Assistance (SETA) support to various Federal agency customers. In this capacity, [redacted] bills his time as direct labor – labor that is provided directly to a customer. The cost of direct labor is considered the cost of regular hours, shift differentials, and overtime hours worked by an employee.

24. As a representative example of [redacted]'s direct labor billing on Federal agency contracts, [redacted] worked and billed his time at DARPA as a [redacted] SETA. [redacted]'s work at DARPA is very extensive. While supporting DARPA, [redacted] worked on a multitude of programs, to include, but not limited to, Rapid Attack Detection, Isolation and Characterization Systems, Cyber Fault-tolerant Attack Recovery, Communications in Contested Environments, ADAPTable Sensor System, Integrated Sensor is Structure, Flow based Information Theory Tracking, Large Area Coverage Search-Prior, and several classified cyber efforts.

**KRISTINA GLINES**

25. Kristina A. Glines is a Department of the Navy, Executive Branch, civilian federal employee of the U.S. Government and his been since she began federal career in February 2005. Glines started her federal civil service career with the Department of the Navy, Navy Engineering Logistics Office (NELO) as a Security Specialist. From 2005 to present, Glines maintained continuous employment with the Department of the Navy as a civilian federal employee.

26. During her career with the Department of the Navy, Glines worked at various commands, to include, but not limited to, NELO, Navy Systems Management Activity, and the Department of the Navy Special Programs Office/Department of the Navy SAPCO. Glines held a variety of positions to include Security Specialist, Supervisory Security Specialist, Program Security Officer, Program Security Manager, and the Director of Security. Glines currently holds the pay grade of GS-15.

**2019002173-80SI-B0/F**                                                                      10

27. According to *SECNAV Instruction 5460.4 – Mission, Functions, and Tasks of the Department of the Navy Special Access Program Central Office*, DoN SAPCO is responsible for the execution, management, oversight, administration, security, information systems and networks, information assurance, and records management for SAPs under the responsibility of the DoN.  In her position as the Director of Security at DoN SAPCO, Glines is responsible for the protection of DoN SAPs and implementation of enhanced security requirements.  Glines responsibilities include, but are not limited to, the following:

- Develop and promulgate policies and procedures for the security of DoN SAPs, to include insider threat policy for DoN SAPs;
- Exercise Access Approval Authority for all DoN SAPs for which the Secretary of the Navy is responsible and as delegated by agreement with non-DON entities;
- Maintain a master list of all access authorizations for DoN SAPs and of the individuals granted access;
- Establish, manage, and execute approval authority for DoN SAP access baselines;
- Evaluating continued access to DoN SAPs access for personnel who have committed security violations and/or have other derogatory information findings;
- Ensuring that security standards and policies are maintained and followed.

 **& KRISTINA GLINES MARRIAGE & FINANCIAL INTEREST**

28. A review of Glines' social media posts, National Background Investigation Bureau investigative file, and Questionnaire for National Security Positions, revealed Glines and █████ are married and began living together in 2011.

29. On ████████, Glines and █████ were legally married in Charlevoix County, Michigan wherein they became each other's spouse.  The Charlevoix County Clerk's office issued a marriage certificate codifying their legal marriage.  Glines' new married name was recorded as "Kristina Glines ████" (Attachment 16).

30. Although Glines listed her new name on the marriage certificate as "Kristina Glines ████," she does not use this name during the course of her official Government duties.  Glines does not use this name on her Government e-mail accounts, on Government documents, Government issued identification, nor does she sign official documents using this name.  Instead, Glines uses her maiden name – "Kristina Glines."  Glines uses her maiden name on the following:

- DoD Common Access Card;
- U.S. Government E-mail Signature Block;
- U.S. Government Passport;
- Social Security Number;
- Virginia Driver's License;
- Virginia Vehicle Registration;
- LinkedIn Social Media Platform;
- E-mail Addresses

**WARNING**
This document is the property of the Department of Defense Office of Inspector General, Defense Criminal Investigative Service (DCIS).  Distribution of this document to other entities without authorization from DCIS is prohibited.

**2019002173-80SI-B0/F**                                                                11

- o  kristina.glines@navy.mil (NIPRNet)
- o  kristina.glines@navy.smil.mil (SIPRNet)
- o  glinesk@nmic.ic.gov (JWICS)

31. In June 2015, Glines reported on her "Electronic Questionnaire for Investigations Processing" form that she married ████ on ████████ and had not legally changed her name; however, she "informally" goes by her husband's last name Kristina ████. During Glines' enhanced subject interview for her security clearance, on January 5, 2016, Glines addressed the use of her maiden name vice the use of her married name. Glines reported she listed her name as Kristina ████ on her marriage certificate and on Facebook; however, reported "She does not sign any official documents with the name [Kristina ████] or use it for any other reason. When she listed [Kristina Glines ████] on her marriage certificate her intention was to switch everything over to that name but found the process to be difficult and time consuming and decided to continue using the name Kristina Glines."

32. Without personal knowledge that Glines is married to ████, or Glines voluntarily disclosing her marriage to ████, a reasonable person would not readily know Glines is married and maintains a "covered relationship" to ████. Glines' use of her maiden name effectively obfuscates any perceived or actual personal and/or financial conflicts of interest concerns a reasonable person might have regarding Glines, ████, and ████████████.

33. Glines has a direct and imputed financial interest with her husband and his company, ████████████. Glines and ████ live together and share a mortgage on their home (Attachment 17). Glines told DCIS that she shares financial interest with her husband as joint owners and signatories on loans, bank products, and investments, to include but not limited to, their home mortgage, savings account, checking account, stocks, mutual funds, credit cards, etc. Glines reported she and ████ file federal and state income tax as married filing jointly.

34. Glines maintains a "covered relationship" with her husband ████. This "covered relationship" exist because they are members of the same household, are legally married, have a close personal relationship, and ████ serves as an officer of ████████████.

## STANDARDS OF ETHICAL CONDUCT FOR EMPLOYEES OF THE EXECUTIVE BRANCH

35. Glines, as an employee of the executive branch of the U.S. Government, has an obligation to abide by *5 C.F.R. § 2635 - Standards of Ethical Conduct for Employees of the Executive Branch*. The basic obligation of public service is that it is a public trust. Each employee has a responsibility to the U.S. Government and its citizens to place loyalty to the Constitution, laws, and ethical principles above private gain. To ensure that every citizen can have complete confidence in the integrity of the Federal Government each employee shall respect and adhere to the principles of ethical conduct. The general principles apply to every employee. These general principals include, but are not limited to, the following:

- Public service is a public trust, requiring employees to place loyalty to the Constitution, the laws, and ethical principles above private gain;

**WARNING**
This document is the property of the Department of Defense Office of Inspector General, Defense Criminal Investigative Service (DCIS). Distribution of this document to other entities without authorization from DCIS is prohibited.

**2019002173-80SI-B0/F**                                                        12

- Employees shall not hold financial interests that conflict with the conscientious performance of duty;
- Employees shall not engage in financial transactions using nonpublic Government information or allow the improper use of such information to further any private interest;
- Employees shall not use public office for private gain;
- Employees shall act impartially and not give preferential treatment to any private organization or individual;
- Employees shall endeavor to avoid any actions creating the appearance that they are violating the law or the ethical standards set forth in this part. Whether particular circumstances create an appearance that the law or these standards have been violated shall be determined from the perspective of a reasonable person with knowledge of the relevant facts.

36. As a DoD and DoN employee, Glines is subject to additional rules, regulations, and guidance regarding ethical conduct. They include the following:

- 5 C.F.R. § 3601 - Supplemental Standards of Ethical Conduct for Employees of the Department of Defense;
- DoD Directive 5500.07-R - Joint Ethics Regulation;
- The Department of the Navy Core Values Charter;
- Navy Code of Ethics.

37. Additionally, DoD personnel have been reminded about their obligations to perform their jobs ethically. The most recent guidance includes the following:

- On September 18, 2019, the Honorable Mark Esper, Secretary of Defense, issued a memorandum to all DoD personnel entitled "Reaffirming Our Values and Ethical Conduct." In his message, Esper reiterated that DoD personnel must practice and exercise ethical decision making and it must become a daily task and habit. Esper directed all DoD personnel to complete annual ethics training.

- On February 5, 2020, Secretary of Defense Esper issued a memorandum to all DoD personnel entitled "Ethical Conduct and Political Activities." This was follow-on guidance from the September 18, 2019 memorandum wherein he reemphasized ethical conduct, political activities, and reaffirmed annual ethics training requirements.

- On March 29, 2022, The Honorable Carlos Del Toro, Secretary of the Navy, issued an "Annual Ethics Message" wherein he reminded DoN personnel about the concept of integrity and that it expanded to all employees of the DoN – officers, enlisted, and civilian personnel.

38. Glines, as an employee of the DoD/DoN, has been exposed to, and consistently reminded of, her moral and ethical obligations she must follow as a DoD/DoN senior civilian federal employee.

**WARNING**
This document is the property of the Department of Defense Office of Inspector General, Defense Criminal Investigative Service (DCIS). Distribution of this document to other entities without authorization from DCIS is prohibited.

2019002173-80SI-B0/F                                                                      13

## ETHICS TRAINING

39. Glines reported to DCIS she has received ethics training throughout her federal career.
Electronic training records obtained from the DoN Total Workforce Management Services
(TWMS) system confirmed Glines took ethics training. Only Glines' 2019 and 2020 ethics
training record, could be located (Attachment 18). Glines took the following ethics training
courses:

- November 19, 2020 - DON Initial and Annual Ethics Training Course V.3;
- November 18, 2020 - DON Initial and Annual Ethics Training Course V.3;
- February 18, 2020 - DON Annual Ethics Training V2;
- September 16, 2019 - Annual Ethics Training.

40. A review of the ethics training modules revealed the ethics training addressed a multitude of
topics and required an end of course examination (Attachment 19). The training included, but
was not limited, to the following topics:

- 18 U.S.C. § 208 – Acts Affecting a Personal Financial Interest;
- Principals of Ethical Conduct;
- Financial Conflicts of Interest;
- Impartiality;
- Misuse of Position;
- Ethics Advice.

41. The training further instructs the student to consult their ethics counselor to determine
whether their participation would be considered personal and substantial, whether the particular
matter would have a direct and predictable effect on their financial interest, and whether they
may avail themselves on any exemptions - "Seek Early Advice: Consult Your Attorney."

42. The training stated as a general rule, "Do not work on matters in which YOU have a financial
interest. In following this rule, employees should keep in mind that the financial interests of
others – including a spouse, minor child, and certain entities - are imputed to them."

43. Furthermore, the training reiterates financial interest are imputed to the Government
employee via a spouse, minor child, general partner; and an organization in which the employee
serves as an officer, director, general partner, or employee.

44. Remedial steps to resolve conflict of interest are addressed wherein an employee can take
steps to avoid taking action on a matter in which they have a financial interest. This includes
divesting themselves of the conflicting financial interest, the employee being granted a waiver,,
recusal/disqualification, reassignment, and changes of duties.

45. The training addresses impartiality in conducting official business. Appearance of a loss of
impartiality directs the employee not to participate in a particular matter involving specific
parties without written supervisory approval if the matter is likely to affect the financial interest

**WARNING**
This document is the property of the Department of Defense Office of Inspector General, Defense Criminal Investigative
Service (DCIS). Distribution of this document to other entities without authorization from DCIS is prohibited.

**2019002173-80SI-B0/F**                                                              14

of a member of the employee's household, and a person with whom the employee has a "covered relationship" is involved in the matter. The training defines an employee has a "covered relationship" with the following:

- A member of the employee's household;
- A relative with whom the employee has a close personal relationship;
- A person for whom the employee's spouse, parent, or dependent child is an employee;
- A person with whom the employee has a business or financial relationship;
- An organization in which the employee is an active participant.

46. Criminal statute *18 U.S.C. § 208 - Acts Affecting a Personal Financial Interest*, prohibits executive branch employees from working on U.S. Government matters that will affect their own personal financial interest, or the financial interest of other people, to include their spouse, minor child, or general partner. An executive branch employee should not act on a Government matter if a reasonable person who knew the circumstances of the situation could legitimately question their impartiality.

47. Impartiality could be questioned if the Government matter an executive branch employee worked on is likely to affect the financial interest of a member of their household, their spouse, minor child, or partner. Impartiality could also be questioned if a Government employee worked on a Government matter with someone with whom they had a "covered relationship" wherein they are a party or represent a party to a Government matter.

### KRISTINA GLINES – OGE FORM 450 - CONFIDENTIAL FINANCIAL DISCLOSURE REPORTS



48. Glines is an *OGE Form 450 – Confidential Financial Disclosure Report* filer. Glines completed and submitted OGE Form 450s to the NELO OGC Ethics Counselor in 2017, 2019, 2020, 2021, and 2022 (Attachment 20). In each such filing, Glines properly reported ███████████ as a source of non-investment income via her spouse's salary. Glines properly reported ███████████ as an asset via her spouse's stock ownership in the company.

49. Reviewers reviewed the annual DoD SOCO *"DoD Vendors with Awards of $25,000.00 and over FPDS Data,"* but reported the Blue Sky listed in the report was a different Blue Sky than █. Since "███████████, Incorporated" was not listed in the DoD SOCO report, Ethics Counselors had no reason to believe Glines had a conflicting personal financial interest. Hence, Ethics Counselors did not issue a "Conflict Letter" to Glines during the period 2017 to 2021.

50. In 2022, (b)(7)(A), (b)(6), (7)(C) ███████████, NELO, OGC, issued a "Conflict Letter" to Glines warning her that her OGE Form 450 revealed she, or her spouse, maintained a financial interest in ███████████, and that 18 U.S.C. § 208 prohibited her from taking any official action regarding an entity in which she holds a financial interest (Attachment 21).

**WARNING**
This document is the property of the Department of Defense Office of Inspector General, Defense Criminal Investigative Service (DCIS). Distribution of this document to other entities without authorization from DCIS is prohibited.

2019002173-80SI-B0/F                                                                          15

51. A review of the *"FY 2021 DoD Vendors with Contracts of $25,000 and over (1/13/2022)"* report revealed "███████████, Incorporated" was not listed in the report; however, there were similar companies with similarly sounding names, such as "Blue Sky Innovative Solutions, Incorporated" and "Blue Sky Industries, Incorporated." Neither is affiliated with ███████ ██████.. The report listed prime contractors, not subcontractors, to the DoD. ████████ issuance of the "Conflict Letter" appears to have been made erroneously based on the DoD SOCO report; however, the "Conflict Letter" is appropriate because of the potential personal conflict of interest posed by ████████████' performance on DoD contracts and Glines' position as an executive branch employee (Attachment 22).

## KRISTINA GLINES ETHICS GUIDANCE REQUEST

52. Glines' ethics training instructed her to consult her supervisor, ethics counselor, and/or recuse herself if she had any perceived or actual conflicts of interest. Glines demonstrated her understanding and obligation to do so on at least four occasions:

- Glines recused herself from the source selection team on the Contractor Support Services ██████ selection acquisition. She did so because she believed her husband's company could potentially support ████████. Glines reported this recusal occurred several years ago (Attachment 23). DCIS requested all ethics documents from DoN OGC for such recusals; however, there were no records produced for this recusal.
- In July/August 2022, Glines sought guidance from ████████████████, N9SP and ████████████ DoN, OGC. Glines had been selected as a member of the technical evaluations board for the N9SP Contractor Support Services contract re-compete. One of the bidders on the re-compete was American Systems Corporation. Glines reported her husband's company, █████████████, had a subcontract with American Systems to provide SETA support to the Office of the Undersecretary of Defense for Research and Engineering. Glines requested a legal determination to determine if she should be involved in the acquisition. ████████ believed Glines had an actual conflict of interest and recommend Glines have no direct involvement in the contractor evaluation and selection process; Glines complied with this ethics guidance (Attachment 24).
- In July 2022, Glines sought guidance from ████████ regarding her requirement to list all prime contracts wherein █████████ performs as a subcontractor on her OGE Form 450. ████████ notified Glines that she did not need to list all the "primes/subs" of █████████ on her OGE Form 450. ████████ reported OGC would deal with these situations on a case-by-case basis (Attachment 24).
- Sometime in July/August 2022, Glines notified her supervisor, ████████████████, N9SP, that her husband, was under investigation, but did not know why or for what. Glines notified ████████ about the investigation because Glines was not sure if and/or how it would or might affect her role as the Director of Security at N9SP. Glines told ████████ she had done nothing wrong and the investigation was all about her husband (Attachment 25). Although Glines notified ████████ of an investigation into her husband circa July/August 2022, ████████ was likely aware of the DCIS investigation as early as October 20, 2021. On this date, DCIS and ████████ interviewed ████████ a ████████████ employee, about the issues raised by DoD SAPCO. ████████ was fully aware of the DCIS investigation upon receipt of

**WARNING**
This document is the property of the Department of Defense Office of Inspector General, Defense Criminal Investigative Service (DCIS). Distribution of this document to other entities without authorization from DCIS is prohibited.

**2019002173-80SI-B0/F**                                                                                      16

two DoD Office of Inspector General subpoenas served on December 3, 2021 and April 4, 2022.

53. Glines confirmed these were the only times she sought ever sought ethics guidance and notified her supervisor of any perceived or actual conflicts of interest.

## KRISTINA GLINES VOLUNTARY INTERVIEW WITH THE DEFENSE CRIMINAL INVESTIGATIVE SERVICE

54. On October 12, 2022, DCIS Special Agents executed a voluntary interview of Glines at the Pentagon, Washington, D.C. (Attachment 26). Reporting Agent read, explained, and executed a *DCIS Form 70 – Warnings and Assurances to Employee Requested to Provide Information on a Voluntary Basis (Garrity)* with Glines. Glines acknowledged her rights, signed the form, and agreed to speak voluntarily with agents. The interview was recorded and transcribed (Attachment 23).

55. During the interview, Glines admitted that she had used her official position to help her husband and his company, ████████████. Furthermore, she failed to recuse herself from matters in which she had a personal financial interest/conflict of interest, and failed to seek guidance and/or report all perceived or actual conflicts of interest to her supervisor and/or DoN attorneys. Glines acknowledged that she had received ethics training throughout her DoN career and knew she had an obligation to seek guidance, report her conflicts, and recuse herself in matters involving her husband's company. She acknowledged that she did not do this for every conflict involving ████████████.

## KRISTINA GLINES FAILURE TO RECUSE HERSELF IN (b)(7)(A), (b)(6), (b)(7)(C) SPECIAL ACCESS PROGRAM SUSPENSION

56. On August 20, 2020, ██(b)(7)(A), (b)(6), (b)(7)(C)██, SETA, ████████████, committed a security violation while assigned to the DARPA, █(b)(7)(A)█
████████████.

                                                                                                        57.
              Investigative action confir███(b)(7)... was a █████(b)(7)(A)█████ employee at the time of the incident. █(b)(7)(A), (b)(6), (b)(7)(C)█ supported DARPA as a SETA via a █(b)(7)(A)█ █████ contract awarded to █(b)(7)(A)█ ████████████. ███ support to DARPA was codified in a subcontract agreement executed between █(b)(7)(A)█ ████ and ██████ (Attachment 29). The contract, valued at █(b)(7)(A)█ required ███(b)(7)... to support DARPA ACO from August 1, 2020 to December 17, 2020. ███(b)(7)... timecard confirmed █(b)... charged █ direct labor to this contract as a ████████████ subcontractor. Specifically, █(b)(7)(A), (b)(6)█ billed this DARPA SETA support work as direct labor from August 3, 2020 to November 3, 2020, via job code █(b)(7)(A)█.

58. On October 9, 2020, ███(b)(7)(A), (b)(6), (7)(C)███, DoD SAPCO, notified SAPCO Directors and Security Directors of DARPA's decision to suspended ██(b)(7)(A), (b)(6), (b)(7)... SAP accesses across the SAP community – DARPA, DoN, USAF, etc. – via reciprocity suspension. At the time of this notification, Glines was on maternity leave. In her absence, ██(b)(7)(A), (b)(6), (7)(C)██

**WARNING**

This document is the property of the Department of Defense Office of Inspector General, Defense Criminal Investigative Service (DCIS). Distribution of this document to other entities without authorization from DCIS is prohibited.

2019002173-80SI-B0/F                                                                    17

███████████, N9SP, assumed her duties as the Acting Director of Security and led
N9SP's effort to suspend ██████ DoN SAP access. ██ documented ██ role in ██████
DoN SAP suspension in a timeline (Attachment 31).

59. On October 19, 2020, Glines returned from maternity leave and reassumed her duties as the
Director of Security, N9SP. ███████ relinquished the role of Acting Director of Security and
reassumed ██ duties as ██████ . ██████ continued to work on
DoN SAP suspension. (b)(7)(A), (b)(6), (b)(7)(C)

60. On November 12, 2020, ███████ forwarded an e-mail chain entitled "FW: (U//FOUO –
PII/FOUO//HVSACO) DAR███ uspension – ███████ (Contains PII)" to Glines about DARPA's
decision to suspend ██████ SAP accesses (A███████nt 31). Glines responded to ███████ and
wrote the following ████████

(b)(7)(A), (b)(6), (b)(7)(C)

| From: | Glines, Kristina |
| Sent: | Thursday, November 12, 2020 3:21 PM |
| To: | ██████████ |
| Subject: | RE: (U//FOUO - PII/FOUO//~~HVSACO~~) DARPA Suspension - ██████ (Contains PII) |
| | |
| Follow Up Flag: | Follow up |
| Flag Status: | Flagged |

~~UNCLASSIFIED//FOR OFFICIAL USE ONLY - Privacy Sensitive. Any misuse or unauthorized disclosure may result in both civil and criminal penalties //FOUO//HVSACO~~

I need to recuse myself from this specific case. This SETA works for my husband's company. I don't want any decision to appear bias.

61. Although Glines acknowledged this actual conflict of interest, and the need to recuse herself;
she chose to ignore her own guidance and instead took over from ███████ and directly inserted
herself into this matter where she participated, personally and sub████ally, into a matter that she
had a personal financial interest (Attachments 32 and 33).

62. Throughout Glines work on N9SP's decision to suspend, or not suspend ███████ DoN SAP
accesses, she interacted with a multitude of security professionals to include ████████imited to,
personnel assigned to N9SP, NELO, DoD SAPCO, USAF SAPCO, and DARPA SAPCO. At no
time did Glines ever disclose to any of these parties that ███████ was an employee of her
husband's company, she had an actual conflict of interes████ personal financial interest in this
matter. Glines never requested guidance, waiver of exemption from disqualification, or
disclosed this conflict to her supervisor, ███████ or DoN OGC. Instead, Glines kept this
information a closely guarded secret and █████sclosed this conflict to DCIS agents on October
12, 2022 (Attachment 23).

63. During the interview with DCIS, Glines admitted that when she became involved in the
██████ DoN SAP suspension matter, circa November 2020, she knew ██████ worked for her

WARNING
This document is the property of the Department of Defense Office of Inspector General, Defense Criminal Investigative
Service (DCIS). Distribution of this document to other entities without authorization from DCIS is prohibited.

DCIS Form 1                                              CUI
June 2021

husband's company. Glines also knew [redacted] worked at DARPA on a [redacted] contract. Initially, Glines questioned DARPA's decision to suspend [redacted] SAP accesses; however, she acknowledged that if she did not suspend [redacted] DoN SAP accesses it would look like "favoritism" towards her husband's company. Glines understood that without SAP access, [redacted] could not perform his SETA contract work at DARPA, and subsequently could not bill [redacted] direct labor to the contract. Instead, [redacted] salary would have to be paid by [redacted] as overhead. Glines' personal and substantial involvement in this particular matter had a direct and predictable effect on an outcome that could affect her personal financial interest.

64. Glines admitted sharing information about SAP suspension with her husband as it was being adjudicated. Glines acknowledged [redacted]d non-public information with her husband; however, did not believe this was wrong or inappropriate. Glines rationalized her actions wherein she told agents she would have shared this type of information with other corporate leaders who requested information about their employee in the same situation. As such, she was sharing information she would have shared with others. Glines did not feel this was inappropriate behavior.

65. Glines ultimately agreed with DARPA's decision to suspend DoN SAP accesses. Glines recommended DoN SAP access be suspended to[redacted]who in turn made the final decision to susp[redacted] DoN SAP accesses. Agents in[redacted]ed N9SP, DoD SAPCO, USAF SAPCO, and DAR[redacted]CO personnel to determine if Glines tried to dissuade them from suspending SAP accesses; she did not. There is no evidence Glines used her position to attem[redacted]ence anyone not to suspend SAP accesses, or do anything illegal or unethical that benefitted [redacted]ments 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, and 43). Glines admitted that she should not have participated in this matter, should have recused herself, and notified [redacted] of her conflict; decisions she now regrets.

**KRISTINA GLINES REQUESTED JOINT ACCESS DATABASE ENVIRONMENT ACCOUNTS FOR [redacted] EMPLOYEES**

66. Glines admitted that she requested DoD SAPCO JADE accounts for her husband, and other [redacted] employees, while acting in her official capacity as the Director of Security, N9SP (Attachment 23). On January 17, 2019, Glines, electronically approved and submitted a request to DoD SAPCO for the creation of a JADE account for her husband.

67. JADE [redacted], DoD SAPCO, confirmed office received the req[redacted]s to create an account for [redacted]. There were no justi[redacted]tions or comments listed as to why [redacted] needed a JADE account. approved the creation of the JADE account and issued [redacted] an account with "Gen[redacted]ser" privileges (Attachments 44 & 45). [redacted] completed a JADE User Agreement and listed his organizational assignment as the Office of Naval Research/PMR-51 (Attachment 46).

68. Glines reported she approved and submitted multiple JADE account requests to DoD SAPCO for her spouse and other [redacted] employees. Glines explained she submitted the

WARNING
~~This document is the property of the Department of Defense Office of Inspector General, Defense Criminal Investigative Service (DCIS). Distribution of this document to other entities without authorization from DCIS is prohibited.~~

**2019002173-80SI-B0/F**                                                                19

requests for ████████████ employees because they were required to maintain JADE accounts as a function of their SETA duties on U.S. Navy contract N3237B-15-D-6816, wherein █ ████████████ was a subcontractor to ECS Federal, LLC (Attachment 15).

69. Glines explained she received multiple request from the Navy Program Office to create JADE accounts for ████████████ SETAs. Glines explained she approved the creation of the JADE accounts as a function of her duties as the Director of Security in support of the Navy Program Office. Glines claimed she was the only person that could issue JADE accounts and subsequently did so as a function of her official duties. Glines claimed her failure to approve the accounts would have negatively impacted the program.

70. Investigative action confirmed ████ supported a U.S. Navy program office, associated to PMR-51, as a SETA via contract N3237B-15-D-6816. ████'s timecard confirmed he charged his direct labor to this contract as a ████████ subcontractor. Specifically, ████ billed his U.S. Navy support work as direct labor from January 2019 to October 2019, via job code "Navy – ECS Federal – B2-SC-132010" (Attachment 47).

71. Glines acknowledged she approved and submitted the JADE accounts for ████████ ████████ employees but did not believe her actions were inappropriate. Glines reported she would never do it again.

## KRISTINA GLINES PARTICIPATION IN OFFICIAL GOVERNMENT MEETINGS WITH HER HUSBAND

72. Glines was asked if she ever disclosed classified information to her husband for which he did not have a need-to-know. Glines reported she had never done this. To date, there is no evidence Glines has ever made any unauthorized disclosers of classified information to any individuals not authorized to receive that information. Glines reported she never discusses classified information with her husband; however, Glines reported she may have had a meeting or call with her husband where they discussed classified information.

73. Glines was asked how many meetings she attended where her husband represented ████ ████████. Glines reported it "probably happened a handful of times." Glines explained she attended meetings where her husband attended in his capacity as a ████████████ SETA. ████ attended these meetings as a ████████████ SETA supporting the U.S. Navy via the ECS Federal, LLC contract N3237B-15-D-6816 (Attachment 15). This is the same contract wherein Glines approved JADE accounts for her husband and other ████████ SETAs supporting the contract. This contract supports DoN SAP equities that fall under Glines' jurisdiction as the Director of Security, N9SP.

74. Glines explained she attended the meetings in her official capacity as the Director of Security while her husband attended the meeting as a SETA. In addition to her husband's participation, other Government personnel attended the meeting to discuss security efforts for Navy programs involving DoN SAP equities. Glines reported the meetings included discussions about the program, program security, security related decisions, managing test plans, and transporting

**WARNING**
This document is the property of the Department of Defense Office of Inspector General, Defense Criminal Investigative Service (DCIS). Distribution of this document to other entities without authorization from DCIS is prohibited.

**2019002173-80SI-B0/F**                                                        20

assets.  Glines attended these meetings because, by virtue of her position as the Director of Security for N9SP, her approval was needed.

75. Glines did not think her attendance at the meetings with her husband was wrong.  When challenged on the appropriateness of her attendance at these meetings, Glines countered and explained she needed to go the meetings and "if anything, it would be he's [████] not allowed to go to the meeting" and "if anybody is getting kicked out, he's [████] the one should have been kicked out.  Not me."  Glines did not think there was anything concerning about being in the same meetings with her husband.  Glines believed she had to be there as a function of her duties as the Director of Security.

**KRISTINA GLINES MISUSE OF POSITION & FAILURE TO SEPARATE PERSONAL AND BUSINESS RELATIONSHIPS**

76. Agents obtained and reviewed Glines' U.S. Navy unclassified and CNET classified e-mails.  The unclassified email data set was not complete, it did not include emails that were permanently deleted.  The number of missing emails is unknown.

77.  Emails were identified that demonstrated as early as 2015, Glines willingly misused her position; failed to separate personal and business relationships; and disregarded her obligation to abide by the ethical standards expected of a Government employee.  Others, such as subordinates and friends, accommodated Glines inappropriate and unethical requests.

78. The first known instance was on September 1, 2015, when Glines requested [████████████]  , [(b)(7)(A), (b)(6), (7)(C)], N9SP, to check on the status of her husband's [████████]s Request (PAR) (Attachment 48).  In the e-mail, Glines wrote the following:

| From: | "Glines, Kristina CIV" <Organization/First Administrative Group/Recipients/kristina.glines> |
|---|---|
| Sent: | 9/1/2015 5:40:27 PM -0400 |
| To: | [(b)(7)(A), (b)(6), (b)(7)(C)] |
| Subject: | PAR |
| Attachments: | smime.p7m |

Hi [████],

have a semi-personal PAR request. Can you see where [████████] (my husband) PAR is in our system?  He mentioned it has been held up in the Navy for some time, but I have no idea where.

Thanks!
Kristina

79. [████████] was interviewed and [██] provided information about the aforementioned request (Attachment 49). [████████] reported that, at the time of the request, Glines was his immediate supervisor. [████████] was in charge of the PAR adjudication process and this request fell within his jurisdiction. [████████] reported the only difference with this particular PAR request was that it was for Glines' husband. [████████] opined [████] would have reviewed the PAR and determined if access was needed based upon a review of the justification provided.  Sometimes PARS would have to go through the Office of the Chief of Naval Operations (OPNAV) Special Programs

**WARNING**
This document is the property of the Department of Defense Office of Inspector General, Defense Criminal Investigative Service (DCIS).  Distribution of this document to other entities without authorization from DCIS is prohibited.

**2019002173-80SI-B0/F**                                                                              21

Division (N89) for final review. ▮▮▮▮ could not recall if ▮▮▮▮'s PAR was approved, but believed it was, and ▮▮▮▮ had a ▮▮▮▮ official need for the access.

80. With regard to the appropriateness of Glines using her position to speed up the approvals process for her husband, ▮▮▮▮ opined there was nothing wrong with it. ▮▮▮▮ explained that regardless of Glines ▮▮▮▮ ip with ▮▮▮▮, it was in her professional ▮▮▮▮ move PARS through the system. Furthermore, ▮▮▮▮ stated the PAR for ▮▮▮▮ would have been reviewed eventually, so the approval was ▮▮▮▮ a legitimate need for SAP access. ▮▮▮▮ stated romantic or familial relationships between Government employees and contract ▮▮▮▮ perhaps slightly more closely scrutinized, but maintained there was nothing wrong with Glines intervening on her husband's behalf. ▮▮▮▮ reported ▮▮ did not feel compelled to speed up the approval process for ▮▮▮▮'s PAR.

81. On September 2, 2015, ▮▮▮▮ e-mailed Glines the status of her husband's PARs (Attachment 50). ▮▮▮▮ e following:

From: ▮▮▮▮ (b)(7)(A), (b)(6), (b)(7)(C)
Sent: Wednesday, September 02, 2015 6:55 AM
To: Glines, Kristina CIV
Subject: RE: PAR

Good Morning Kristina,

Here is the data on your hubby:

- Initiated on 4 Jun.
- Shuffled around in the Program Office until 10 Jul when it was sent to N89 bypassing the CSO.
- Rejected by N89 on 22 Jul (back to PO).
- Sent to CSO on 23 Jul.
- CSO ▮▮▮▮ rejected back to PO on 26 Aug - LOCN conflicts with supplemental paperwork (yes, with the loss of ▮▮▮▮
ve are that
    behind...making progress though).
- Currently with ▮▮▮▮ after shuffling around the PO for a couple of days.

82. On September 3, 2015, Glines thanked ▮▮▮▮ for checking on the status of her husband's PARs. Glines asked ▮▮▮▮ to let her kn ▮▮▮▮ ▮▮▮▮'s PARS made it back to N89 (Attachment 50). ▮▮▮▮

83. Glines cavalier attitude is fully on display via a September 16, 2015 email exchange between her and her husband regarding his PAR status (Attachment 51). In this exchange, Glines told her husband his PAR was at N89. ▮▮▮▮ told Glines to have ▮▮▮▮ call ▮▮▮▮ and jokes "Fyi I think this constitutes direction from a Gover ▮▮▮▮ ior." ▮▮▮▮ nes jokingly wrote "Lol...I can't call and expedite PARs for my family :-)." ▮▮▮▮ was carbon copied on the e-mail. ▮▮▮▮

**WARNING**
This document is the property of the Department of Defense Office of Inspector General, Defense Criminal Investigative Service (DCIS). Distribution of this document to other entities without authorization from DCIS is prohibited.

2019002173-80SI-B0/F                                                                 22

From:              "Glines, Kristina CIV" <Organization/First Administrative
                   Group/Recipients/kristina.glines>
Sent:              9/16/2015 12:56:51 PM -0400
To:                ████ (b)(7)(A), (b)(6), (b)(7)(C) ████
Subject:           RE: PAR
Attachments:       smime.p7m

Lol... I can't call and expedite PARs for my family :-)

-----Original Message-----
From: ████████████████████████ @darpa.mil]
Sent: Wednesday, September 16, 2015 12:54 PM
To: (b)(7)(A), (b)(6), (b)(7)(C)
Cc: Glines, Kristina CIV
Subject: FW: PAR

Fyi I think this constitutes direction from a government superior

84. ████ was interviewed about this e-mail exchange (Attachments 52). ████ reported relationship with Glines is predominately of a personal nature, which includes having dinner at ████ and Glines' home. ████ reported Glines' husband, ████, is ████ friend and work colleague at DARPA.  They have maintained a personal relationship since 2015.

85. ████ recalled the e-mail and explained that ████ and ████ typically would not have reached out to Glines for assistance in getting this type of access request moving; however, ████ stated they were trying to "move bureaucracy along." ████ further explained that the usual process for getting a PAR through the system involved routing the request through the OPNAV Special Programs Division (N89). ████ stated this process was inefficient so, on occasion, ████ and ████ would go to Glines to try to expedite the paperwork. ████ explained that in the position ████ held at that time, ████ was able to facilitate the submission of PARS, but was not involved in processing the PARS.  Hence, ████ required Glines' assistance.

86. As to the appropriateness of ████ using his wife to speed up PAR approvals for himself, ████ did not believe there was anything wrong with what Glines and ████ did. ████ opined that regardless of Glines' intervention, ████'s PAR would have been reviewed by all the same people, so the approval was still based on a legitimate need for SAP access. ████ opined the interaction between ████ and Glines was only unusual because of their relationship as a married couple.

87. In April 2016, Glines again demonstrated her willingness to compromise her ethics by assisting her husband using her official position.  Glines did so wherein ████ asked Glines to check the status of their Facility Clearance (FCL) (Attachment 53). ████ asked Glines to check if ████████████ had a FCL, and if not, could she find someone who could check.  Glines reported that ████ needed to update their CAGE code.  It is unclear through the exchange if she

WARNING
This document is the property of the Department of Defense Office of Inspector General, Defense Criminal Investigative Service (DCIS).  Distribution of this document to other entities without authorization from DCIS is prohibited.

**2019002173-80SI-B0/F**                                                                                  23

was able to get the answer ▓▓▓ requested; however, Glines confirmed there was a problem with their CAGE code.

88. Glines was asked how many times she executed database checks using U.S. Government computer systems for her husband. Glines acknowledged she did this for her husband but did not provide a specific number of instances. Glines reported she accessed U.S. Government computer systems to find out her husband's security clearance access date. Glines acknowledged that the ▓▓▓▓▓▓▓▓ FSO could do this as part of his industrial security duties. Glines rationalized running database checks for her husband as something she would do for other companies and personnel. As such, Glines did not believe she was doing anything wrong, nor was she doing a favor for her husband. In retrospect, Glines acknowledged she should not have conducted these checks (Attachment 23).

89. A review of ▓▓▓▓▓▓▓▓ PARS obtained from DoD SAPCO and N9SP failed to identify any PARS wherein Glines was an approver. The PARS obtained from DoD SAPCO was limited in scope to a sample of PARS for ▓▓▓, (b)(7)(A), (b)(6), (b)(7)(C) ▓▓▓, provided investigators with N9SP JADS PAR results for ▓▓▓▓▓▓▓▓ DoN PA▓▓▓▓ accesses. A review of the records, did not identify Glines as an approver on the PARS.

## DEPARTMENT OF JUSTICE

90. On October 18, 2022, DCIS contacted (b)(7)(A), (b)(6), (b)(7)(C) Department of Justice, Criminal Division, Public Integrity Section, Washington, D.C. to discuss the October 12, 2022, DCIS voluntary interview of Glines via Garrity. Reporting Agent briefed ▓▓▓on the investigation of Glines and her admission of various ethics violations. Based on this discussion, the Public Integrity Section declined to open a criminal investigation regarding the conflict of interest allegations concerning Glines. Should new information and/or evidence be developed, the Department of Justice will be re-contacted to reconsider prosecution (Attachment 54).

## OFFICE OF GOVERNMENT ETHICS NOTIFICATION

91. On October 18, 2022, DCIS filed *OGE Form 202 – Notification of Conflict of Interest Referral Part 1: Initial Notification; Part 2: Disposition of Referral; and Part 3: Consideration of Corrective Action* with the Office of Government Ethics, Washington D.C. The notification pertained to ethics violations committed by Glines. The Office of Government Ethics Tracking Number for this referral is OGE-2023-0443 (Attachment 55).

## COORDINATION OF REMEDIES

92. Glines' decisions, actions, and behavior, raises serious questions about her eligibility, suitability, and fitness to maintain a security clearance, occupy a national security sensitive position, and access classified material. As such, DCIS will coordinate administrative remedies with DoD SAPCO, N9SP, DoN OGC, and DCSA to address these concerns.

93. On October 12, 2022, ▓▓▓▓▓ suspended Glines from work and suspended her access to SAPs. No decision as to s▓▓▓▓on duration, reassignment, termination, etc. has been made.

**WARNING**
This document is the property of the Department of Defense Office of Inspector General, Defense Criminal Investigative Service (DCIS). Distribution of this document to other entities without authorization from DCIS is prohibited.

**2019002173-80SI-B0/F**                                                    24

94. ███'s willingness to utilize, and exploit, his wife's position as the Director of Security, N9SP, in furtherance of his business, raises serious questions about his, and his company's, ethical conduct and commitment to comply with federal law. ███'s behavior runs counter to *48 C.F.R. § 52.203-13 – Contractor Code of Business Ethics and Conduct.* As such, this investigation will be referred to the Interagency Suspension and Debarment Committee, and the appropriate debarring officials, for suspension and debarment consideration. This referral will be made at the conclusion of this investigation.

## CONCLUSION
95. The investigation of Glines is finished and culpability established; however, this investigation will remain open pending final resolution of the other allegations (b)(7)(A)



96. (b)(7)(A)

**WARNING**
This document is the property of the Department of Defense Office of Inspector General, Defense Criminal Investigative Service (DCIS). Distribution of this document to other entities without authorization from DCIS is prohibited.

2019002173-80SI-B0/F                                                      25

Attachments:



1. (b)(7)(A)
2. (b)(7)(A)
3. (b)(7)(A)
4. (b)(7)(A)
5. (b)(7)(A)
6. (b)(7)(A)
7. (b)(7)(A)
8. (b)(7)(A)
9. (b)(7)(A)
10. (b)(7)(A)
11. (b)(7)(A)
12. (b)(7)(A)
13. (b)(7)(A)
14. (b)(7)(A)
15. (b)(7)(A)
16. DCIS Form 1 – Marriage License – [redacted] and Kristina Glines, dated February 9, 2021
17. DCIS Form 1 – Property Records [redacted] and Kristina Glines, dated February 11, 2021
18. DCIS Form 1 – Kristina Glines – Navy Total Workforce Management Services Training Records, dated March 5, 2021
19. DCIS Form 1 – Kristina Glines Navy Ethics Training Modules, dated March 18, 2021
20. Department of the Navy, Office of General Counsel Ethics Documents – Kristina Glines, multiple dates
21. Memorandum for Kristina Glines – 2022 Annual Executive Branch Confidential Financial Disclosure Report (OGE 450), undated
22. (b)(7)(A), (b)(6), (b)(7)(C)
23. (b)(7)(A), (b)(6), (b)(7)(C)
24. (b)(7)(A), (b)(6), (b)(7)(C)
25. (b)(7)(A), (b)(6), (b)(7)(C)
26. (b)(7)(A), (b)(6), (b)(7)(C)

**WARNING**
This document is the property of the Department of Defense Office of Inspector General, Defense Criminal Investigative Service (DCIS). Distribution of this document to other entities without authorization from DCIS is prohibited.

2019002173-80SI-B0/F                                                                 26



27. (b)(7)(A)
28. (b)(7)(A)
29. (b)(7)(A)
30. (b)(7)(A), (b)(6), (b)(7)(C)
31. (b)(7)(A), (b)(6), (b)(7)(C)
32. (b)(7)(A), (b)(6), (b)(7)(C)
33. (b)(7)(A), (b)(6), (b)(7)(C)
34. (b)(7)(A), (b)(6), (b)(7)(C)
35. (b)(7)(A), (b)(6), (b)(7)(C)
36. (b)(7)(A), (b)(6), (b)(7)(C)
37. (b)(7)(A), (b)(6), (b)(7)(C)
38. (b)(7)(A), (b)(6), (b)(7)(C)
39. (b)(7)(A), (b)(6), (b)(7)(C)
40. (b)(7)(A), (b)(6), (b)(7)(C)
41. (b)(7)(A), (b)(6), (b)(7)(C)
42. (b)(7)(A), (b)(6), (b)(7)(C)
43. (b)(7)(A), (b)(6), (b)(7)(C)
44. DCIS Form 1 – Joint Access Database Environment Account Information, dated December 3, 2020
45. DCIS Form 1 – Joint Access Database Environment Account Information, dated October 6, 2022
46. ▓▓▓▓▓▓▓, ▓▓▓▓▓▓▓ Timesheet, multiple dates
47. E-mail entitled: "PAR," dated September 1, 2015
48. (b)(7)(A), (b)(6), (b)(7)(C)

49. E-mail chain entitled: "RE: PAR," various dates
50. E-mail Entitled: "RE: PAR," dated September 16, 2015
51. (b)(7)(A), (b)(6), (b)(7)(C)

52. E-mail entitled: "RE: Can you see if we have an FCL yet?," dated April 27, 2016
53. DCIS Form 1 – Department of Justice Prosecution Decision, dated October 18, 2022
54. DCIS Form 1 – Office of Government Ethics Referral – Kristina A. Glines, dated October 19, 2022

**WARNING**
This document is the property of the Department of Defense Office of Inspector General, Defense Criminal Investigative Service (DCIS). Distribution of this document to other entities without authorization from DCIS is prohibited.

**2019002173-80SI-B0/F**                                                                27

**Identity of Suspect(s):**

| | |
|---|---|
| Name | : Kristina Arlene Glines |
| Alias | : Kristina Glines ████ |
| Social Security Number | : ██████████ |
| Date/Place of Birth | : ████████████████████████ |
| Race | : Caucasian |
| Sex | : Female |
| Residence | : 1605 Palm Springs Drive, Vienna, Virginia 22182 |
| Employment/Occupation | : Department of the Navy Special Programs Office/Department of the Navy Special Access Program Central Office/Director of Security |
| Driver's License Number and Issuing State | : ████████ Virginia |

**WARNING**

This document is the property of the Department of Defense Office of Inspector General, Defense Criminal Investigative Service (DCIS). Distribution of this document to other entities without authorization from DCIS is prohibited.

**2019002173-80SI-B0/F**                                                                                  28

Name                              : ▮▮▮▮▮▮▮ ▮▮▮
Alias                             : N/A
Social Security Number            : (b)(7)(A), (b)(6), (b)(7)(C)
Date/Place of Birth               : (b)(7)(A), (b)(6), (b)(7)(C)
Race                              : Caucasian
Sex                               : Male
Residence                         : 1605 Palm Springs Drive, Vienna, Virginia
Employment/Occupation             : ▮▮▮▮▮▮▮, Incorporated/President
                                    and Chief Executive Officer

Driver's License Number           : (b)(7)(A), (b)(6), (7)(C)
and Issuing State                   Virginia

Prepared by:                          Approved by: (b)(6), (b)(7)(C)

(b)(6), (b)(7)(C)(b)(6), (b)(7)(C)

**WARNING**
This document is the property of the Department of Defense Office of Inspector General, Defense Criminal Investigative Service (DCIS). Distribution of this document to other entities without authorization from DCIS is prohibited.

# EXHIBIT D



**DEPARTMENT OF THE NAVY**
OFFICE OF THE CHIEF OF NAVAL OPERATIONS
2000 NAVY PENTAGON
WASHINGTON DC 20350-2000

IN REPLY REFER TO
5520
N9SP/22U-144879
10 NOV 2022

From: Director of the Department of the Navy Special Programs

To: Senior Intelligence Officer

Subj:  Report of Investigation for Ms. Kristina E. Glines

Ref:  (a) 2019002173-80SI-B0/F Report of Investigation 2019002173-138

1. Based on references (a): The investigation of Kristina E. Glines is effectively closed and culpability established.

2. SSO Navy will make a decision regarding suspension of access to classified information based upon the results. All relevant information obtained will be forwarded to the Department of Defense Consolidated Adjudication Service for the final adjudicative decision.

3. For any questions or comments concerning this letter, please contact, Bertrand A. Eden, GS-13, Government SAP Security Officer, (703) 693-2010.

11/14/2022

X  B. T. Howes

B.T. HOWES

Signed by: USN

# EXHIBIT E

**STATEMENT OF REASONS (SOR) FOR MS. KRISTINA A. GLINES,** ████████.

The information listed below was derived from the documents listed at the end of this attachment (Attachment 1, Statement of Reasons). Each item of disqualifying information falls under one or more of the security guidelines listed below.

## GUIDELINE E: Personal Conduct

Available information shows issues of Personal Conduct on your part.

Conduct involving questionable judgment, lack of candor, dishonesty, or unwillingness to comply with rules and regulations can raise questions about an individual's reliability, trustworthiness, and ability to protect classified or sensitive information. Of special interest is any failure to cooperate or provide truthful and candid answers during national security investigative or adjudicative processes.

Per the Adjudicative Guidelines, conditions that could raise a security concern and may be disqualifying include:

The Department of Defense Inspector General, Defense Criminal Investigative Service (DCIS) opened an investigation on May 30, 2019, after a referral from the Deputy Director of Security, Department of Defense Special Access Program (SAP), regarding questionable SAP accesses for ████████, Incorporated. Your spouse founded ████████, Incorporated in 2013 and is the President and Chief Executive Officer. The referral also included the allegation that you used your official U.S. Government position as Director of Security, Department of The Navy Special Programs Office/Department of the Navy Special Access Program Central Office (SAPCO) (N9SP), Pentagon, Washington, D.C. to benefit your financial position, potentially amounting to a conflict of interest.

As an employee of the executive branch of the U.S. government, you have an obligation to abide by 5 C.F.R. § 2635 - Standards of Ethical Conduct for Employees of the Executive Branch. The basic obligation of public service is that it is a public trust. The general principles apply to every employee. These principles include, but are not limited to, the following:

1. Employees shall not hold financial interests that conflict with the conscientious performance of duty;
2. Employees shall act impartially and not give preferential treatment to any private organization or individual;
3. Employees shall endeavor to avoid any actions creating the appearance that they are violating the law, or the ethical standards set forth in this part. Whether particular circumstances create an appearance that the law or these standards have been violated shall be determined from the perspective of a reasonable person with knowledge of the relevant facts.

On October 12, 2022, during an interview with DCIS Special Agents, you admitted that you used your official position to help your husband and his company, ████████. Furthermore, the report revealed that you failed to recuse yourself from matters in which you had a personal financial interest/conflict of interest and failed to seek guidance or report all perceived or actual

THE CONTENTS OF THIS DOCUMENT ARE PROTECTED UNDER THE PRIVACY ACT OF 1974

conflicts of interest to your supervisor and/or Department of Navy (DoN) attorneys. You acknowledged that you had received ethics training throughout your DoN career and knew you had an obligation to seek guidance, report your conflicts, and recuse yourself in matters involving your spouse's company. You acknowledged that you did not do this for every conflict involving ███████████████ .

The DCIS report disclosed that on August 20, 2020, an employee of ███████████████ committed a security violation while assigned to the Defense Advanced Research Projects Agency (DARPA), Adaptive Capabilities Office (ACO), Arlington, Virginia. At this time, you were on leave, and in your absence, the Deputy Director of Security assumed your duties as the Acting Director of Security and led the effort to suspend the ███████████████ employee's DoN SAP access. On October 19, 2020, you returned from leave and resumed your role as Director; however, the Deputy Director continued to work on the ███████████████ employee SAP suspension. On November 12, 2020, the Deputy Director forwarded an email chain to you regarding the employee's suspension decision. You responded, "I need to recuse myself from this specific case. This [Systems Engineering and Technical Assistance] SETA works for my husband's company. I don't want any decision to appear bias [sic]." You remained involved even after acknowledging your conflict. You questioned DARPA's decision to suspend the employee's SAP accesses; however, you were aware that if you did not suspend the employee's DoN SAP accesses, it would look like "favoritism." You also admitted to sharing information about the employee's SAP suspension with your spouse as it was being adjudicated. You did not believe this was wrong or inappropriate. You stated that you would have shared this type of information with other corporate leaders who requested information about their employee in the same situation. Nonetheless, you stated that you should not have participated in this matter, should have recused yourself, and notified your supervisor of your conflict.

According to the DCIS investigative report, you admitted to requesting DoD SAPCO Joint Access Database Enterprise (JADE) accounts for your spouse and other ███████████████ employees while acting in your official capacity as the Director of Security. On January 17, 2019, you electronically approved and submitted a request to DoD SAPCO for the creation of a JADE account for your spouse. You told the investigator that you did not believe your actions were inappropriate but would never do it again.

As part of the DCIS investigation, DCIS agents obtained and reviewed your U.S. Navy unclassified and CNET classified e-mails. According to the report, your e-mails showed that as early as 2015, you misused your position, failed to separate personal and business relationships, and disregarded your obligation to abide by the ethical standards expected of a government employee.

For instance, on September 1, 2015, you requested that the Senior Security Manager check on the status of your spouse's Program Access Request (PAR). In a September 16, 2015, e-mail exchange between you and your spouse regarding his PAR status, you told your spouse his PAR was at N89. Your spouse said to you, "Fyi I think this constitutes direction from a government superior." In response, you wrote, "Lol…I can't call and expedite PARs for my family :-)."

THE CONTENTS OF THIS DOCUMENT ARE PROTECTED UNDER THE PRIVACY ACT OF 1974

DCIS interviewed an employee copied on the e-mail exchange. He described his relationship with you as predominately personal in nature and your spouse as a friend and work colleague. He explained that he and your spouse typically would not have reached out to you for assistance in getting this type of access request moving; however, he stated they were trying to "move bureaucracy along." The employee further explained that the usual process for getting a PAR through the system involved routing the request through the OPNAV Special Programs Division (N89). The employee stated this process was inefficient so on occasion, he and your spouse would go to you to try to expedite the paperwork. The employee added that in the position he held at that time, he was able to facilitate the submission of PARS but was not involved in processing the PARS. Hence, he required your assistance.

According to the DCIS report, in April 2016, you assisted your spouse using your official position. Your spouse asked you to check if ▬▬▬▬▬▬▬ had a Facility Clearance (FCL), and if you could not check, if you would find someone who could. You were asked how many times you executed database checks using U.S. government computer systems for your spouse. You acknowledged executing database checks for your spouse but did not provide a specific number of instances. You reported accessing U.S. government computer systems to find out your spouse's security clearance access date. You acknowledged that the ▬▬▬▬▬▬ FSO could do this as part of his industrial security duties. You rationalized running database checks for your spouse as something you would do for other companies and personnel. As such, you did not believe you were doing anything wrong, nor were you doing a favor for your spouse. In retrospect, you acknowledged you should not have conducted these checks.

On October 12, 2022, your supervisor suspended you from work and suspended your access to SAPs.

According to the DCIS report, you misused your position, failed to separate personal and business relationships, and disregarded your obligation to abide by the ethical standards expected of a government employee. The investigation found that you were involved with the SAP access determination of your spouse's employee, even after you acknowledged your conflict; you used your official position to expedite the approval process for your spouse's PAR, and you ran database checks using U.S. Government computer systems for your spouse, which you acknowledge you should not due to your personal relationship. You admitted during your DCIS interview that you used your official position to help your husband and his company. The report revealed that you failed to recuse yourself from matters in which you had a personal financial interest and failed to seek guidance or report all perceived or actual conflicts of interest to your supervisor or DoN attorneys. DCIS found that your financial interests conflicted with the conscientious performance of your duties; you failed to act impartially and gave preferential treatment to a private entity. Your behavior reflects questionable judgment and an unwillingness to comply with rules and regulations, which raises questions about your reliability, trustworthiness, and ability to protect classified or sensitive information. Therefore, your personal conduct is a security concern. (Guideline E, Attachment 6)

THE CONTENTS OF THIS DOCUMENT ARE PROTECTED UNDER THE PRIVACY ACT OF 1974

Updated on: 20231005

**List of Pertinent Documents**

Defense Information System for Security, Incident Report, December 7, 2022

Department of Defense Inspector General, Defense Criminal Investigative Service, Report of Investigation, #2019002173-80SI-B0/F, October 26, 2022

THE CONTENTS OF THIS DOCUMENT ARE PROTECTED UNDER THE PRIVACY ACT OF 1974

Updated on: 20231005

# EXHIBIT F

**The Sander Group**
**6618 Saint Mark Court**
**Alexandria, VA 22306**
**(703) 459-0442**

November 17, 2023

Attn: OPNAV FOIA Coordinator
**usn.ncr.dns.mbx.don-foia-pa@us.navy.mil**
Navy FOIA
1000 Navy Pentagon
Washington, DC 20350-1200
(Submitted Via Email Only)

Dear FOIA Coordinator:

This is a request under the Freedom of Information Act (5 U.S.C. 552).

On behalf of Ms, Kristina Glines and as her counsel of record, I request that a copy of the following document(s) be provided to me:

(a) All materials relating to the DCIS investigation of Blue Sky Innovators, Inc, also known as "BSI." These documents would likely be dated in the range of 5/1/2021 to 1/1/2023.

(b) All documents, notes, records, recordings, interviews, emails, text messages, and conclusions relating to the DCIS investigation of Ms. Glines, whether they be generated by DCIS or by the Navy. These documents are expected to range from December 2021 through January 2023.

(c) The final report by former Agent Peter Rozman, Agent Brian Futagaki, and/or any other DCIS agent(s) or employees regarding Ms. Glines. This document is likely dated in the range of October 2022 to January 2023.

(d) Information, emails, text messages, notations, or other documents in which the report discussed in request ©, supra, was shared within the Navy, DoD IG, or other Government agencies. These documents would be dated from October 2022 to the present.

(e) The interview notes, impressions, conclusions, and documentation of all interviews conducted in relation to the DCSA investigation of Ms. Glines. These email, text messages, and documents would be dated in the range of December 2021 through January 2023.

(f)  All requests for OGC opinions, guidance, advice, or direction on the ethical matters
pertaining to Ms. Glines, including, but not limited to, requests for ethics opinions from
Joel Weger, Michael Causey, or Jannika Cannon. These documents would be dated from
2017 to the present.

(g)  All emails, text messages, correspondence, or documentation among DON employees
pertaining to Ms. Glines from December 2021 to the present.

(h)  All information pertaining to the security review of Ms. Glines stemming from the DCIS
investigation; including documentation of how Navy staff met the procedural
requirements of DODM 5200.02 and other applicable laws and regulations, from
December 2021 to the present.

(i)  All information pertaining to the personnel action regarding Ms. Glines placing her on
indefinite suspension of duty and pay, including all information relied upon by the
proposing official Mr. B.T. Howes and the Deciding Official Mr. C. Miller dated between
October 2022 and the present.

(j)   All information pertaining to the Equal Employment Opportunity claim by Ms. Glines,
and records relating to the facts, email exchanges, information, or email exchanges
related to interactions between Mr. Howes and Abigail Thoennes, Chrissy Juergens,
Debra Dutko, and Lisa Burns.

(k)  All information concerning reports, allegations, records, or notations pertaining to
complaints by Ms. Abigail Thoennes to CAPT Nicholas Smentana pertaining to a hostile
work environment between October 2019 and November 2022.

In order to help you determine my status for the purpose of assessing fees, you should know that
Ms. Glines is an individual seeking information for her personal use and not for a commercial
use.

I request a waiver of fees for this request because disclosure of the requested information is in
the public interest.  This information is likely to contribute significantly to public understanding
of the procedural requirements applicable to operations or activities of the DoD and is not
primarily in my commercial interest.  These documents will contribute to an understanding of
how the Navy processes security clearance access and eligibility determinations, including the
appropriate processing of these matters pursuant to DODM 5200.02.  This process is otherwise
hidden from public view under an inappropriate understanding of the Supreme Court's *Egan*
doctrine, with the hiding of such materials creating the impression that the Navy uses *Egan* as a
shield against review of potentially inappropriate security actions instead of according to *Egan*'s
stated purpose, which is to protect against judicial review of the substance of the security action.
The information on the full process under DODM 5200.02 and its practical application will be
disseminated through the public court system to allow any individual similarly aggrieved to have
their cases addressed according to whether the Navy followed proper procedural protocols via an

understanding of those procedural protocols, allowing individuals to fully adjudicate complaints of improper process in security matters.

I have also included a telephone number at which I can be contacted if necessary to discuss any aspect of my request.

Sincerely,

Robert J. Sander
6618 Saint Mark Court
Alexandria, VA 22306
(703) 459-0442
rsander@sandergroup.org

# EXHIBIT G

 **Gmail**

**Mary Anne Zivnuska <mzivnuska@sandergroup.org>**

---

## DON-NAVY-2024-000756.

---

**Mary Anne Zivnuska** <mzivnuska@sandergroup.org>                    Thu, Feb 29, 2024 at 6:31 PM
To: usn.ncr.dns.mbx.don-foia-pa@us.navy.mil
Cc: Robert Sander <rsander@sandergroup.org>

On behalf of Ms. Kristina Glines, The Sander Group submitted an appeal of FOIA Request DON-NAVY-2024-000756, which the SECNAV/CNO FOIA Office acknowledged on November 21, 2023, assigning number DON- NAVY-2024- 000756 to the request.

While we acknowledge DOD's processing of these requests under a first-in, first-out policy as set forth in 32 CFR 286.8, under the Freedom of Information Act a response was due by December 21, 2023.  See 5 U.S.C. 552 (a)(6)(A)(ii).  Can you please let us know when the SECNAV/CNO FOIA office will respond to DON-NAVY-2024-000756?

You may reach us by email at rsander@sandergroup.org or mzivnuska@sandergroup.org, or by phone at 703-459-0442.

Sincerely,
Mary Anne Zivnuska

--
Mary Anne Zivnuska
The Sander Group, PLLC
https://www.sandergroup.org/

ATTENTION - CONFIDENTIALITY NOTICE:  This e-mail transmission (and/or the attachments accompany it) may contain confidential information which is protected by the attorney-client privilege, attorney work product, or other privilege.  The information is intended only for the use of the intended recipient.  If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this information is strictly prohibited.  If you have received this transmission in error, please promptly notify the sender by reply e-mail, and then destroy all copies of the transmission.

# EXHIBIT H



**Mary Anne Zivnuska <mzivnuska@sandergroup.org>**

___

## OPNAV FOIA POC?
5 messages

___

**Mary Anne Zivnuska** <mzivnuska@sandergroup.org>                          Tue, Mar 19, 2024 at 10:52 AM
To: jannika.e.cannon.civ@us.navy.mil

Good morning Jannkia!

I hope all is well with you-- can you please tell me who the OPNAV FOIA attorney point of contact is, and provide his or her contact information?

r/
Mary Anne

--
Mary Anne Zivnuska
The Sander Group, PLLC
https://www.sandergroup.org/

ATTENTION - CONFIDENTIALITY NOTICE:  This e-mail transmission (and/or the attachments accompany it) may contain confidential information which is protected by the attorney-client privilege, attorney work product, or other privilege.  The information is intended only for the use of the intended recipient.  If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this information is strictly prohibited.  If you have received this transmission in error, please promptly notify the sender by reply e-mail, and then destroy all copies of the transmission.

___

**Cannon, Jannika E CIV USN CNO (USA)** <jannika.e.cannon.civ@us.navy.mil>          Tue, Mar 19, 2024 at 11:03 AM

To: Mary Anne Zivnuska <mzivnuska@sandergroup.org>

Good morning, Mary Anne,


How are you? I hope all is well with you also! What can I help you with?


VR,

Jannika


Jannika E. Cannon, Esq.
Counsel, Office of the Chief of Naval Operations (OPNAV)

Department of the Navy Office of the General Counsel

2000 Navy Pentagon Room 5E486

Washington, DC 20350-2000

Tel: 703.697.3358

Mobile: 571.970.8403

CONFIDENTIALITY NOTICE: This e-mail transmission is intended only for the personal and confidential use of the recipient(s) designated above. The communications contained therein may be protected by attorney-client, attorney work product, deliberative process or other legal privileges. Additionally, this e-mail and any accompanying attachments may contain sensitive and pre-decisional information that is protected from mandatory disclosure under the Freedom of Information Act (FOIA), 5 USC 552. If you are not the intended recipient of this communication (or an agent responsible for delivering it to the intended recipient), you are hereby notified that any review, disclosure or use of the information contained herein is strictly prohibited. If you have received this communication in error, please notify us by telephone, at 703.697.3358, or by return e-mail, immediately. Thank you.

[Quoted text hidden]

---

**Mary Anne Zivnuska** <mzivnuska@sandergroup.org>                    Tue, Mar 19, 2024 at 11:21 AM
To: "Cannon, Jannika E CIV USN CNO (USA)" <jannika.e.cannon.civ@us.navy.mil>

Thanks so much Jannika!

We have a FOIA request which is overdue & are looking for someone to talk to w/r/t that matter, but there are complicating factors concerning an administrative proceeding pertaining to the client for which we need the materials requested-- do you have time to discuss over the next day or two? My schedule gets away from me after 12:40 Eastern today. Otherwise, I'm happy to discuss with your FOIA counsel.

Mary Anne
[Quoted text hidden]

---

**Cannon, Jannika E CIV USN CNO (USA)** <jannika.e.cannon.civ@us.navy.mil>        Tue, Mar 19, 2024 at 1:11 PM
To: Mary Anne Zivnuska <mzivnuska@sandergroup.org>

What's the request number? I'll see if I can get a status.

[Quoted text hidden]

---

**Mary Anne Zivnuska** <mzivnuska@sandergroup.org>                    Tue, Mar 19, 2024 at 1:33 PM
To: "Cannon, Jannika E CIV USN CNO (USA)" <jannika.e.cannon.civ@us.navy.mil>

Thank you so much, the request number is DON-NAVY-2024-000756, which was submitted on November 17th.

 We also want to put in a request to expedite the FOIA/PA response under 32 CFR 286.8(e)(ii)(A). The materials sought under that FOIA request are necessary to respond to the client's administrative proceeding before DCSA. The clock on her response due date began on March 5 and she currently is slated to respond by May 3-- We need to be able to review the materials in advance of the response date in order to respond. There is a compelling need to receive the FOIA/PA request materials to avoid an imminent loss of the client's due process rights.

If you want to discuss, please feel free to call me either on my cell at 202-558-8850, or at 573-764-5426.

I really appreciate your assistance, Jannika!

Mary Anne
[Quoted text hidden]

# EXHIBIT I

**The Sander Group**
**6618 Saint Mark Court**
**Alexandria, VA 22306**
**(703) 459-0442**

November 20, 2023

Defense Counterintelligence and Security Agency
Attn: FOIA/Privacy Office for Adjudications
600 10th Street
Fort George G. Meade, MD 20755-5615
dcsa.meade.dcsa.mbx.privacy-act@mail.mil
(Submitted Via Email Only)

Dear FOIA Coordinator:

This is a request under the Freedom of Information Act (5 U.S.C. 552).

On behalf of Ms. Kristina Glines and as her counsel of record, I request that a copy of the following document(s) be provided to me:

(a)    All materials relating to the DOD IG and DCIS investigation of ▇▇▇▇▇▇▇▇▇, Inc, also known as "▇▇▇▇  These documents would likely be dated in the range of 5/1/2021 to 1/1/2023.

(b)    All documents, notes, records, recordings, interviews, emails, text messages, and conclusions relating to the DOD IG, DCIS, and Navy investigation of Ms. Glines, whether they be generated by DOD, DCSA, DCIS, or by the Navy. These documents are expected to range from December 2021 through January 2023.

(c)    The final report by former Agent Peter Rozman, Agent Brian Futagaki, and/or any other DOD IG or DCIS agent(s) or employees regarding Ms. Glines, and any attachments or enclosures thereto.  This document is likely dated in the range of October 2022 to January 2023.

(d)    Information, emails, text messages, notations, or other documents in which the report discussed in request (c), supra, was shared within the Navy, DCSA, DoD IG, or other Government agencies. These documents would be dated from October 2022 to the present.

(e)    The interview notes, impressions, conclusions, and documentation of all interviews conducted in relation to the DOD and DCSA investigation of Ms. Glines. These email, text messages, and documents would be dated in the range of December 2021 through January 2023.

(f)    All DOD, DCSA, DOD IG and DCIS requests for opinions, guidance, advice, or direction on the ethical matters pertaining to Ms. Glines. These documents would be dated from 2021 to the present.

(g)    All information pertaining to the security review of Ms. Glines stemming from the DOD IG and DCIS investigation; including documentation of whether (and if so, how) DCSA, DOD IG, and DCIS staff informed any Navy action under procedural requirements of DODM 5200.02 and other applicable laws and regulations, from December 2021 to the present.

In order to help you determine my status for the purpose of assessing fees, you should know that Ms. Glines is an individual seeking information for her personal use and not for a commercial use.

I request a waiver of fees for this request because disclosure of the requested information is in the public interest.  This information is likely to contribute significantly to public understanding of the procedural requirements applicable to operations or activities of the DoD and is not primarily in her commercial interest.  These documents will contribute to an understanding of how the DOD and the Navy processes security clearance access and eligibility determinations, including the appropriate processing of these matters pursuant to DODM 5200.02.

This process is otherwise hidden from public view under an inappropriate understanding of the Supreme Court's *Egan* doctrine, with the hiding of such materials creating the impression that the Navy uses *Egan* as a shield against review of potentially inappropriate security actions. *Egan*'s stated purpose is to protect against judicial review of the substance of the security action, which is properly reserved to the Executive Branch. Ms. Glines is aggrieved by an improper application of *Egan* by the Navy and a failure to follow DoD and Navy procedures. The information on the full process under DODM 5200.02 and its practical application will be disseminated through the public court system to allow any individual similarly aggrieved to have their cases addressed according to whether the Navy followed proper procedural protocols. An understanding of those procedural protocols will allow individuals to fully adjudicate complaints of improper process in security matters.

I have also included a telephone number at which I can be contacted if necessary to discuss any aspect of my request.

Sincerely,

Robert J. Sander
6618 Saint Mark Court
Alexandria, VA 22306
(703) 459-0442
rsander@sandergroup.org

cc: Ms. Kristina Glines

# EXHIBIT J

**The Sander Group**
**6618 Saint Mark Court**
**Alexandria, VA 22306**
**(703) 459-0442**

November 20, 2023

Defense Counterintelligence and Security Agency
ATTN: FOIA and Privacy Office for Investigations
1137 Branchton Road, P.O. Box 618
Boyers, PA 16018
**dcsa.boyers.dcsa.mbx.inv-foip@mail.mil**
(Submitted Via Email Only)

Dear FOIA Coordinator:

This is a request under the Freedom of Information Act (5 U.S.C. 552).

On behalf of Ms. Kristina Glines and as her counsel of record, I request that a copy of the following document(s) be provided to me:

(a)    All materials relating to the DOD IG and DCIS investigation of ▮▮▮▮▮▮▮▮▮, Inc, also known as "▮▮▮▮    These documents would likely be dated in the range of 5/1/2021 to 1/1/2023.

(b)    All documents, notes, records, recordings, interviews, emails, text messages, and conclusions relating to the DOD IG, DCIS, and Navy investigation of Ms. Glines, whether they be generated by DOD, DCSA, DCIS, or by the Navy. These documents are expected to range from December 2021 through January 2023.

(c)    The final report by former Agent Peter Rozman, Agent Brian Futagaki, and/or any other DOD IG or DCIS agent(s) or employees regarding Ms. Glines, and any attachments or enclosures thereto.  This document is likely dated in the range of October 2022 to January 2023.

(d)    Information, emails, text messages, notations, or other documents in which the report discussed in request (c), supra, was shared within the Navy, DCSA, DoD IG, or other Government agencies. These documents would be dated from October 2022 to the present.

(e)    The interview notes, impressions, conclusions, and documentation of all interviews conducted in relation to the DOD and DCSA investigation of Ms. Glines. These email, text messages, and documents would be dated in the range of December 2021 through January 2023.

(f)    All DOD, DCSA, DOD IG and DCIS requests for opinions, guidance, advice, or direction on the ethical matters pertaining to Ms. Glines. These documents would be dated from 2021 to the present.

(g)    All information pertaining to the security review of Ms. Glines stemming from the DOD IG and DCIS investigation; including documentation of whether (and if so, how) DCSA, DOD IG, and DCIS staff informed any Navy action under procedural requirements of DODM 5200.02 and other applicable laws and regulations, from December 2021 to the present.

In order to help you determine my status for the purpose of assessing fees, you should know that Ms. Glines is an individual seeking information for her personal use and not for a commercial use.

I request a waiver of fees for this request because disclosure of the requested information is in the public interest.  This information is likely to contribute significantly to public understanding of the procedural requirements applicable to operations or activities of the DoD and is not primarily in her commercial interest.  These documents will contribute to an understanding of how the DOD and the Navy processes security clearance access and eligibility determinations, including the appropriate processing of these matters pursuant to DODM 5200.02.

This process is otherwise hidden from public view under an inappropriate understanding of the Supreme Court's *Egan* doctrine, with the hiding of such materials creating the impression that the Navy uses *Egan* as a shield against review of potentially inappropriate security actions. *Egan*'s stated purpose is to protect against judicial review of the substance of the security action, which is properly reserved to the Executive Branch. Ms. Glines is aggrieved by an improper application of *Egan* by the Navy and a failure to follow DoD and Navy procedures. The information on the full process under DODM 5200.02 and its practical application will be disseminated through the public court system to allow any individual similarly aggrieved to have their cases addressed according to whether the Navy followed proper procedural protocols. An understanding of those procedural protocols will allow individuals to fully adjudicate complaints of improper process in security matters.

I have also included a telephone number at which I can be contacted if necessary to discuss any aspect of my request.

Sincerely,

Robert J. Sander
6618 Saint Mark Court
Alexandria, VA 22306
(703) 459-0442
rsander@sandergroup.org

cc: Ms. Kristina Glines

# EXHIBIT K



**DEFENSE COUNTERINTELLIGENCE AND SECURITY AGENCY**
OFFICE OF PRIVACY, CIVIL LIBERTIES, AND FREEDOM OF INFORMATION
1137 BRANCHTON ROAD
BOYERS, PA 16018-0618

January 5, 2024

Mr. Robert J. Sander
The Sander Group
6618 Saint Mark Court
Alexandria, VA 22306

Re: Ms. Kristina A. Glines

Dear Mr. Sander:

This is in reference to Ms. Kristina A. Glines' request that a copy of her information be provided to you. This perfected request was received by the Department of Defense, Defense Counterintelligence and Security Agency (DCSA), Freedom of Information and Privacy Act (FOI/PA) office on December 5, 2023. The information requested included:

(a) All materials relating to the DOD IG and DCIS investigation of ▮▮▮▮▮▮▮▮, Inc, also known as "▮▮▮▮ These documents would likely be dated in the range of 5/1/2021 to 1/1/2023.

(b) All documents, notes, records, recordings, interviews, emails, text messages, and conclusions relating to the DOD IG, DCIS, and Navy investigation of Ms. Glines, whether they be generated by DOD, DCSA, DCIS, or by the Navy. These documents are expected to range from December 2021 through January 2023.

(c) The final report by former Agent Peter Rozman, Agent Brian Futagaki, and/or any other DOD IG or DCIS agent(s) or employees regarding Ms. Glines, and any attachments or enclosures thereto. This document is likely dated in the range of October 2022 to January 2023.

(d) Information, emails, text messages, notations, or other documents in which the report discussed in request (c), supra, was shared within the Navy, DCSA, DoD IG, or other Government agencies. These documents would be dated from October 2022 to the present.

(e) The interview notes, impressions, conclusions, and documentation of all interviews conducted in relation to the DOD and DCSA investigation of Ms. Glines. These email, text messages, and documents would be dated in the range of December 2021 through January 2023.

(f) All DOD, DCSA, DOD IG and DCIS requests for opinions, guidance, advice, or direction on the ethical matters pertaining to Ms. Glines. These documents would be dated from 2021 to the present.

(g) All information pertaining to the security review of Ms. Glines stemming from the DOD IG and DCIS investigation; including documentation of whether (and if so, how) DCSA, DOD IG,

and DCIS staff informed any Navy action under procedural requirements of DODM 5200.02 and other applicable laws and regulations, from December 2021 to the present.

You requested electronic delivery to two email addresses. While our policy typically does not permit two delivery methods, we provided this letter to both as a courtesy.

You submitted your request to the DCSA Freedom of Information/Privacy (FOI/P) Office for Investigations. Adjudication and clearance records are not maintained as part of Ms. Glines' investigative file and are under the purview of the DCSA FOI/P Office for Adjudications. We noticed that you had already sent a request to that office for their review and response to you. You may refer to tracking number DCSA-M 24-02177 or to their website for additional information: https://www.dcsa.mil/contact/foia/rar/.

Our office, DCSA FOI/P Office for Investigations, conducts background investigations for employment purposes. We only have purview of DCSA information and do not hold any information pertinent to this specific request. Our records indicate we maintain historical background investigations pertaining to Ms. Glines which fall prior to the specific timeframes referenced within your request. If you wish to obtain this information, please submit a new request to our office using our INV-100 form and reference this letter and the tracking number below. You may refer to our website for the INV-100 form and for further information on submitting a request: https://www.dcsa.mil/Contact-Us/Privacy-Civil-Liberties-FOIA/FOIA-Requests/

The Office of Government Information Services (OGIS) was created to offer mediation services to resolve disputes between FOIA requesters and federal agencies as a non-exclusive alternative to litigation. You may contact OGIS in any of the following ways:

U.S. National Archives and Records Administration     Phone: 202-741-5770
Office of Government Information Services              Toll-Free: 1-877-684-6448
8601 Adelphi Road - OGIS                              Fax: 202-741-5769
College Park, MD 20740-6001                           Email: ogis@nara.gov

If you have any questions regarding this response, contact the Freedom of Information and Privacy office at 878-274-1185 and reference tracking number DCSA-B 24-02499.

Sincerely,

Melissa S. Igoe
Government Information Specialist

2

# EXHIBIT L

| | |
|---|---|
| **From:** | DCSA Ft Meade DCSA Mailbox Privacy Act |
| **To:** | "rsander@sandergroup.org" |
| **Subject:** | DCSA Records Request – Acknowledgement, DCSA-M 24-02177 |
| **Date:** | Thursday, November 30, 2023 1:27:15 PM |

Greetings,

This e-mail serves to acknowledge receipt of your request for records, per the Freedom of Information Act and Privacy Act of 1974.  Your request, on behalf of your client, Ms. Kristina Glines, has been assigned tracking number DCSA-M 24-02177 and placed in our queue for processing.  We are required to respond to each request in the order in which it was received; this ensures no request is shown favoritism or given priority above another.  We appreciate the opportunity to assist you in this matter.

Sincerely,

Freedom of Information and Privacy Office for Adjudications
Defense Counterintelligence and Security Agency
600 10th Street, Fort Meade, MD 20755-5131

Email:  dcsa.meade.caf.mbx.privacy-act@mail.mil

The information herein is For Official Use Only (FOUO), which must be protected under the Privacy Act of 1974, as amended.  Unauthorized disclosure or misuse of this PERSONAL INFORMATION may result in criminal and/or civil penalties.  If you received this message in error, please notify the sender by reply e-mail and delete all copies of the message.

# EXHIBIT M

# REQUEST for RECORDS
## DCSA – Consolidated Adjudication Services

To request a copy of **your employing agency/military command personnel security records;
your medical records; continuous evaluation incident reports and credit reports obtained
by Vetting Risk Operations (VRO), and/or DCSA CAS**, please complete this form and mail
to:

**Defense Counterintelligence and Security Agency (DCSA)
Attn: FOI/PA Office for Adjudications
600 10th Street
Fort George G. Meade, MD 20755-5131**

**Encrypted Email Only:** dcsa.meade.caf.mbx.privacy-act@mail.mil

**Note:** To encrypt to this email address using your CAC card, please select the "DCSA Ft Meade CAF
Mailbox Privacy Act" email address from the Global Address List (GAL), rather than the local default
list.

**Privacy Act Advisement:** Requesting personal information which includes your Social Security
Number is authorized by 5 USC Sec. 552a (*Privacy Act of 1974*). Information provided herein is
used to identify and retrieve records pertaining to you. Providing all or part of the information
below is voluntary; however, without it, the DCSA CAS may not be able to identify your
records. This information may be retained and/or released to other agencies under Routine Use.

**Authority:** E.O. 12968, Access to Classified Information; Department of Defense (DoD) Manual
5200.02, *Procedures for the DoD Personnel Security Program*, April 3, 2017.

**Description of Records:** Under the provisions of the *Privacy Act*, and to respond to a Statement
of Reasons (SOR) issued by DCSA CAS, I hereby request a copy of record(s) pertaining to me,
which DCSA CAS relied upon in its preliminary decision to deny/revoke my security eligibility.

**Required Personally Identifiable Information is provided as follows:**

Social Security Number: ____ L.R. ___ 5.4 (f) _____

Full Name: ___Kristina  Arlene  Glines_____

Other Names Used: ___N/A_____

Date of Birth: __5.4(f)__ 82 _____ Place of Birth: ___L.R. 5.4(f)_____

**Page 1 of 2**

THE CONTENTS OF THIS DOCUMENT ARE PROTECTED UNDER THE PRIVACY ACT OF 1974

Updated on: 20231005

Please mail my file to (physical mailing address):

c/o Robert Sander

66018 Saint Marks Court, Alexandria VA 22306

**E-mail address:**

rsander@sandergroup.org

*"I declare under penalty of perjury under the laws of the United States of America that the foregoing information [concerning my identity] is true and correct."*

_____    3/11/24
Handwritten or CAC eSignature (required)    Date (required)

Page 2 of 2

THE CONTENTS OF THIS DOCUMENT ARE PROTECTED UNDER THE PRIVACY ACT OF 1974

Updated on: 20231005

**ATTACHMENT to DCSA – Consolidated Adjudication Services Request for Records**

Ms. Krisina Glines requests copies of the following documents from DCSA – Consolidated Adjudication Services pursuant to the attached form:

(a).    Defense Information System for Security, Incident Report, December 7, 2022.

(b).    Department of Defense Inspector General, Defense Criminal Investigative Service, Report of Investigation, #2019002173-80SI-B0/F, October 26, 2022.

(c).    Video Recording of DCIS interview, October 12, 2022.

(d).    All materials relating to the DOD IG and DCIS investigation of ███████████nc., also known as "███" These documents would likely be dated in the range of 4/1/2019 to 1/1/2023.

(e).    All documents, notes, records, video and/or audio recordings, interviews, emails, text messages, and conclusions relating to the DOD IG, DCIS, and Navy investigation of Ms. Glines, whether they be generated by DOD, DCSA, DCIS, or by the Navy. These documents are expected to range from May 2019 through January 2023.

(f).    Information, emails, text messages, notations, or other documents in which the report discussed in request (b), supra, was shared within the Navy, DCSA, DoD IG, or other Government agencies. These documents would be dated from October 2022 to the present.

(g).    The interview notes, impressions, conclusions, and documentation (including video and/or audio recordings) of all interviews conducted in relation to the DOD and DCSA investigation of Ms. Glines. These email, text messages, videos and documents would be dated in the range of May 2019 through January 2023.

(h).    All DOD, DCSA, DOD IG and DCIS requests for opinions, guidance, advice, or direction on the ethical matters pertaining to Ms. Glines. These documents would be dated from 2019 to the present.

(i).    All information pertaining to the security review of Ms. Glines stemming from the DOD IG and DCIS investigation; including documentation of whether (and if so, how) DCSA, DOD IG, and DCIS staff informed any Navy action under procedural requirements of DODM 5200.02 and other applicable laws and regulations, from 2019 to the present.

(j).    Any continuous evaluation incident reports pertaining to Ms. Glines.

(k).    Any OPNAV personnel security records pertaining Ms. Glines.

# EXHIBIT N

 Gmail

**Mary Anne Zivnuska <mzivnuska@sandergroup.org>**

---

## November 20, 2023 FOIA request

1 message

**Mary Anne Zivnuska** <mzivnuska@sandergroup.org>                    Thu, Feb 29, 2024 at 7:04 PM
To: dcsa.meade.dcsa.mbx.privacy-act@mail.mil
Cc: Robert Sander <rsander@sandergroup.org>

On behalf of Ms. Kristina Glines, The Sander Group submitted a FOIA Request to the DCSA Office for Adjudications on November 20, 2023, attached.  We have not received any confirmation of receipt for this request, nor have we received any tracking number for the request.

While we acknowledge DOD's processing of these requests under a first-in, first-out policy as set forth in 32 CFR 286.8, under the Freedom of Information Act a response was due by December 21, 2023.  See 5 U.S.C. 552 (a)(6)(A)(ii).  Can you please let us know when your office will respond to the FOIA request?

Although the response on the Request is already untimely, Ms. Glines is quickly approaching a point at which she will be denied her due process rights, as yesterday DCSA sent Ms. Glines a Statement of Reasons to which she intends to respond and desires to review and rely on the documents under request.  Her due process rights in responding to the Statement of Reasons would be substantially prejudiced without access to the requested information.  We certify the basis for this request to expedite the FOIA request to be true and correct.  **Please note that we now request expedited consideration of this Request pursuant to 32 CFR 286.8(e)(ii)(A).**

You may reach us by email at rsander@sandergroup.org or mzivnuska@sandergroup.org, or by phone at 703-459-0442.

Sincerely,

Mary Anne Zivnuska
The Sander Group, PLLC
https://www.sandergroup.org/

ATTENTION - CONFIDENTIALITY NOTICE:  This e-mail transmission (and/or the attachments accompany it) may contain confidential information which is protected by the attorney-client privilege, attorney work product, or other privilege.  The information is intended only for the use of the intended recipient.  If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this information is strictly prohibited.  If you have received this transmission in error, please promptly notify the sender by reply e-mail, and then destroy all copies of the transmission.

 **Glines FOIA Request DCSA 11.20.23 (Final) (1).pdf**
277K

# EXHIBIT O



**Mary Anne Zivnuska <mzivnuska@sandergroup.org>**

---

## DCSA Records – Status Request, 24-02177

**DCSA Ft Meade DCSA Mailbox Privacy Act** <dcsa.meade.dcsa.mbx.privacy-act@mail.mil>   Mon, Mar 11, 2024 at 9:31 AM
To: Mary Anne Zivnuska <mzivnuska@sandergroup.org>

Greetings,


Your request on behalf of Kristina A. Glines is in our queue, pending assignment to a processor.  Due to an increase of incoming requests, our office is experiencing longer than normal processing times.  Each incoming request is processed in the order in which we received it.


We thank you for your patience while we work through our backlog.


Sincerely,


Freedom of Information and Privacy Office for Adjudications

Defense Counterintelligence and Security Agency

600 10th Street, Fort Meade, MD 20755-5131


Email:  dcsa.meade.caf.mbx.privacy-act@mail.mil


The information herein is For Official Use Only (FOUO), which must be protected under the Privacy Act of 1974, as amended.  Unauthorized disclosure or misuse of this PERSONAL INFORMATION may result in criminal and/or civil penalties.  If you received this message in error, please notify the sender by reply e-mail and delete all copies of the message.

# EXHIBIT P

                                    **Mary Anne Zivnuska <mzivnuska@sandergroup.org>**

---

## DCSA Records – Status Request, 24-02177

---

**Mary Anne Zivnuska** <mzivnuska@sandergroup.org>                     Mon, Mar 11, 2024 at 10:59 AM
To: DCSA Ft Meade DCSA Mailbox Privacy Act <dcsa.meade.dcsa.mbx.privacy-act@mail.mil>, Robert Sander
<rsander@sandergroup.org>

Dear Sir/Madam:

Do you have an attorney assigned to advise the Freedom of Information and Privacy Office for Adjudications, and if so,
may I have his or her contact information?

  I am not only concerned that DCSA apparently never docketed the November 20, 2023 FOIA request (for which a
response is already overdue), but per 32 CFR 286.8, your office has a legal duty to respond to the request for expedited
processing contained in our February 29, 2024 status request by **no later than March 14, 2024**, ten working days after
the request to expedite contained in that status request, attached.

Please confirm that your office is reviewing the request to expedite processing of Ms. Glines' request and plans to timely
respond by March 14.

r/
Mary Anne Zivnuska
[Quoted text hidden]
[Quoted text hidden]

---

📄 **November 20, 2023 FOIA request - mzivnuska@sandergroup.org - The Sander Group, PLLC Mail.pdf**
   358K

# EXHIBIT Q

 **Gmail**

**Mary Anne Zivnuska <mzivnuska@sandergroup.org>**

---

## DCSA Records – Status Request, 24-02177

---

**Powell, Fernanda I CIV DCSA DCSA (USA)** <fernanda.i.powell.civ@mail.mil>          Tue, Mar 19, 2024 at 9:34 AM
To: Mary Anne Zivnuska <mzivnuska@sandergroup.org>

Greetings Ms. Zivnuska,

Thank you for your email, on March 7, 2024 at 2:55 pm EST an email was sent to Ms. Cecilia Franceski, stating the new course for the case for Ms. Kristina A. Glines.

The SOR request dated March 1, 2024 was received on March 7, 2024. We combined this request with the previous request dated November 2, 2023, Case # 24-02177 pertains.

Ms. Glines Request has been re-classified as a SOR request, as result this will be in the priority category.

The case is in the final stage for review.

For any further questions please let us know.

Sincerely,

Freedom of Information and Privacy Office for Adjudications

Defense Counterintelligence and Security Agency

Fort George Meade, MD 20755

Email:  dcsa.meade.caf.mbx.privacy-act@mail.mil

The information herein is For Official Use Only (FOUO), which must be protected under the Privacy Act of 1974, as amended. Unauthorized disclosure or misuse of this PERSONAL INFORMATION may result in criminal and/or civil penalties.  If you received this message in error, please notify the sender by reply e-mail and delete all copies of the message.

**From:** Mary Anne Zivnuska <mzivnuska@sandergroup.org>
**Sent:** Monday, March 11, 2024 11:59 AM
**To:** DCSA Ft Meade DCSA Mailbox Privacy Act <dcsa.meade.dcsa.mbx.privacy-act@mail.mil>; Robert Sander
<rsander@sandergroup.org>
**Subject:** Re: DCSA Records – Status Request, 24-02177


Dear Sir/Madam:

[Quoted text hidden]
[Quoted text hidden]

# EXHIBIT R



**DEFENSE COUNTERINTELLIGENCE AND SECURITY AGENCY**
OFFICE OF PRIVACY, CIVIL LIBERTIES, AND FREEDOM OF INFORMATION
BUILDING 601 10TH STREET
FORT GEORGE G. MEADE, MD  20755-5615

March 20, 2024
DCSA-M 24-02177

Mr. Rober J. Sander
The Sander Group
6618 Saint Mark Court
Alexandria, VA  22306

RE:   Glines, Kristina A.

Dear Mr. Sander:

This is in response to your Freedom of Information/Privacy Act (FOI/PA) request dated November 2, 2023, and a request for a copy of the records pertaining to you, which the Defense Counterintelligence and Security Agency Consolidated Adjudication Services (DCSA CAS) relied upon in its preliminary decision to deny/revoke your security eligibility, pursuant to DoDM 5200.02, dated March 11, 2024, on behalf of your client, Ms. Kristina A. Glines, wherein you requested the following:

- Video recording of DCIS interview dated October 12, 2022
- All materials relating to the DOD IG and DCIS investigation of ████████████, Inc, to range from May 1, 2021 to January 1, 2023.
- All documents, Information, opinions, guidance, advice, notes, records, recordings, interviews, emails, text messages, and conclusions relating to the DOD IG, DCIS, DCSA, DCIS and Navy investigations to range from December 2021 through present.
- The final report by former Agent Peter Rozman, and Agent Brian Futagaki in the range of October 2022 to January 2023.

The Defense Counterintelligence and Security Agency (DCSA) Freedom of Information and Privacy Office for Adjudications received your first request, including Mr. Glines' Power of Attorney, on November 30, 2023, and the second request, on March 7, 2023.  We conducted a search of available records, to include the Defense Information System for Security (DISS) and the Defense Central Index of Investigations (DCII) for records pertaining to Mr. Glines.

Our search revealed the attached documents, which we are authorized to release to you. We have withheld portions of the records under the provisions of the Privacy Act of 1974, Title 5 U.S.C. § 552(a), exemption (d)(5), and the Freedom of Information Act (FOIA), Title 5 U.S.C. § 552, exemptions (b)(5) and (b)(6).  Privacy Act exemption (d)(5) protects disclosure of information that is compiled in reasonable anticipation of civil action or proceedings, court proceedings or quasi-judicial administrative hearings.  FOIA exemption (b)(5) protects inter-and intra-agency documents which are deliberative in nature, and part of the decision-making process. We determined the information is also protected under the attorney work-product privilege, and/or attorney-client privilege.  Portions of the records contain privacy-related

information about a party other than your client.  Thus, Ms. Glines is not entitled to third party information under the provisions of the Privacy Act.  This information is also withheld per the Freedom of Information Act, Title 5 U.S.C. § 552, exemption (b)(6), as disclosure of the information would constitute a clearly unwarranted invasion of the personal privacy of the individual(s) involved.

Records potentially responsive to your request, which fall under the release authority of Chief Of Naval Operations (CNO), and the Inspector General Department Of Defense (DODIG), were located.  We do not have release authority for those records; thus, we are referring your request and responsive records to their Privacy Offices, for action and direct response to you. Potentially responsive background investigation records which fall under the release authority of the DCSA FOI and Privacy Office for Investigations, were also located.  We do not have release authority for those records; however, since the DCSA FOI and Privacy Office for Investigations has received your request (reference DCSA 24-05537), we will take no further referral action.

Ms. Glines has the right to appeal this response by submitting a written request to the: Defense Counterintelligence and Security Agency, ATTN:  Office of General Counsel, 27130 Telegraph Road, Quantico, VA 22134-2253.  Clearly mark the outside of the envelope and the written appeal letter: *"Privacy/FOIA Appeal."*  DCSA must receive your appeal within ninety (90) calendar days from the date of this letter.  The written appeal letter should include the reasons why DCSA should release the requested information and why this action may be in error.  Include with the appeal letter a copy of the original request and this response letter. Please reference FOI/PA tracking number DCSA-M 24-02177 in all communication(s).

Your client may seek dispute resolution services from the DCSA Public Liaison or the Office of Government Information Services (OGIS).  Your client may contact the DCSA Public Liaison by emailing dcsa.quantico.dcsa-hq.mbx.foia@mail.mil.  OGIS offers mediation services to resolve disputes between FOIA requesters and federal agencies as a non-exclusive alternative to litigation.  Your client may contact OGIS in any of the following ways:

| | |
|---|---|
| U.S. National Archives and Records Administration | Phone: 202-741-5770 |
| Office of Government Information Services | Toll-Free: 1-877-684-6448 |
| 8601 Adelphi Road – OGIS | Fax: 202-741-5769 |
| College Park, MD 20740-6001 | Email:  ogis@nara.gov |

PRIVACY ACT INFORMATION
In compliance with the Privacy Act of 1974, this information is Personal Data and must be protected from public disclosure.

No other records were located responsive to your request.  We hope this information is helpful and appreciate the opportunity to assist you in this matter.

Sincerely,


for/
Joy F. Greene
Supervisory, Government Information Specialist
FOI and Privacy Office for Adjudications

Attachments:
As stated

PRIVACY ACT INFORMATION
In compliance with the Privacy Act of 1974, this information is Personal Data and must be protected from public disclosure.

# KRISTINA ARLENE GLINES

| | | | |
|---|---|---|---|
| SSN: | ▮ | DoD EDI PN: | 1281522945 |
| DOB: | 1982/▮ | Eligibility Level: | SCI - ICD704 |
| Place Of Birth: | ▮ | Eligibility Determination: | Favorable made on 2016-03-14 by DoD CAF |
| Exception Code: | None | Open Investigation: | No |
| Supporting Investigation: | PPR | NDA Signed Date: | 2022/12/09 |
| Incident Report: | Yes | NDS Signed Date: | 2005/02/22 |

**▾ Subject Actions**

| Basic Info. | Other Subject Details | SMO Relationships | **Incidents** | Accesses | CSRs/RFAs | Subject Notes/Documents | Foreign Travel |
|---|---|---|---|---|---|---|---|

## ▾ Incidents (1)

| Status ⇕ | Date ▾ | Type(s) ⇕ | Self Reported | Expand |
|---|---|---|---|---|
| Adjudication Pending | 2022/12/07 | Personal Conduct | No | 🔵 |

Incident Reported Date:    2022/12/09        Access Debriefed:    No

### Incident Notes (1)

- A Defense Criminal Investigative Service (DCIS) investigation of Kristina Glines has determined culpability in regard to improper use of her public position for private gain. The investigation will remain open until resolution of all allegations pertaining to the case. Her access to all DON Special Access Programs and subsequent access to all national security information has been locally suspended until the incident has been adjudicated by the Defense Counterintelligence and Security Agency (DCSA) Consolidated Adjudication Services (CAS).

### Incident Documents (6)

⏮ ⏪ **1** 2 ⏩ ⏭

| Name ⇕ | Type ⇕ | Notes ⇕ | View |
|---|---|---|---|
| DOD_IG_DCIS_2019002173-138- REPORT OF INVESTIGATION | Other | DCIS Report | 📄 |
| Initial SAER | Incident Report Documentation | Initial SAER | 📄 |
| Navy Special Programs Local Suspension | Other | Navy Special Programs Local Suspension | 📄 |
| Navy Special Programs Report of Investigation | Other | Navy Special Programs Report of Investigation | 📄 |
| OPNAV-N9B Decision on Proposed Indefinite Suspension | Other | OPNAV-N9B Decision on Proposed Indefinite Suspension | 📄 |

## Incident Documents (6)

|◄| |◄◄| 1 |►| |►►|

| Name ⬍ | Type ⬍ | Notes ⬍ | View |
|---|---|---|---|
| RSSO Arlington Formal Suspension of Access for Cause | Other | RSSO Arlington Formal Suspension of Access for Cause |  |

(Page 2 of 53)

**Acknowledgement of Receipt for Supplemental Information Request to Command**
Kristina A. Glines, ███████████

The SMO/SCI SMO acknowledges receipt for the Supplemental Information Request Memorandum. This office understands the required information is due to the Defense Counterintelligence and Security Agency Consolidated Adjudication Services (DCSA CAS) within the next thirty (30) calendar days of this Receipt via the DISS portal. This office understands that failure to provide the information within the specified time frame may result in an unfavorable eligibility determination.

This office further understands that this form must be returned to the DCSA CAS within <u>thirty (30)</u> calendar days.

# LASHON A. MARSHALL



MARSHALL.LASHON.AL Digitally signed by
LEN.(b) (6)  MARSHALL.LASHON.ALLEN.(b) (6)
Date: 2023.11.15 15:21:03 -05'00'

SMO/SCI SMO Contact (Print name & sign)

# SECURITY SPECIALIST

SMO/SCI SMO Contact (Official Job Title)

# lashon.a.marshall.civ@us.navy.mil/703-695-8915

SMO/SCI SMO Contact (email address & phone number)

# 11/15/2023

Date

THE CONTENTS OF THIS DOCUMENT ARE PROTECTED UNDER THE PRIVACY ACT OF 1974

**DEFENSE COUNTERINTELLIGENCE AND SECURITY AGENCY**
BUILDING 600 10TH STREET
FORT GEORGE G. MEADE, MD 20755-5615

CAS

November 16, 2023

MEMORANDUM FOR NIA SSO-1
(ATTN: SECURITY MANAGEMENT OFFICE)

SUBJECT:  Supplemental Information Request Re:  Kristina A. Glines, 

References: (a) DoDM 5200.02, Procedures for the DoD Personnel Security Program (PSP)
April 3, 2017
(b) ICD 704, Personnel Security Standards and Procedures Governing Eligibility
for Access to Sensitive Compartmented Information, and Other Controlled
Access Program Information, October 1, 2008
(c) Security Executive Agent Directive 4, National Security Adjudicative
Guidelines, December 10, 2016 (Effective June 8, 2017)

1.   Per the above references, the Defense Counterintelligence and Security Agency Consolidated
Adjudication Services' (DCSA CAS) review of a Incident Report, December 09, 2022, disclosed
information that may have a bearing on his/her eligibility for access to classified information,
and/or assignment to duties that have been designated national security sensitive, and/or access
to Sensitive Compartmented Information (SCI).

2.   DCSA CAS requests that you provide the Subject with the attached Memorandum and have
him/her complete the Acknowledgment of Receipt within thirty (30) calendar days of the receipt
of the notification, and return the form to the DCSA CAS. This information will need to be
provided to the DCSA CAS within thirty (30) calendar days from the date the Subject signs the
Acknowledgment of Receipt. Further, DCSA CAS requests that you advise the Subject that
failure to provide the requested information may result in an unfavorable eligibility
determination.

3.   Please notify us if the Subject has transferred, been discharged, or is no longer associated
with your organization.

THE CONTENTS OF THIS DOCUMENT ARE PROTECTED UNDER THE PRIVACY ACT OF 1974

Updated on: 20231005

4.   If you have any questions, please contact the DCSA CAS Call Center at commercial (301) 833-3850 or DSN 733-3850 or send a message via the DISS Portal.

*Tonya Rodgers*    by **tm**

Tonya Rodgers
Division Chief
DCSA CAS

Attachment:
Subject's Memorandum (w/attachment)

THE CONTENTS OF THIS DOCUMENT ARE PROTECTED UNDER THE PRIVACY ACT OF 1974

Updated on: 20231005

**DEFENSE COUNTERINTELLIGENCE AND SECURITY AGENCY**
BUILDING 600 10TH STREET
FORT GEORGE G. MEADE, MD 20755-5615

**CAS**

November 16, 2023

MEMORANDUM FOR  KRISTINA A. GLINES, ███████

THROUGH:  NIA SSO-1
(ATTN: SECURITY MANAGEMENT OFFICE)

SUBJECT: Supplemental Information Request

References: (a) DoDM 5200.02, Procedures for the DoD Personnel Security Program (PSP)
April 3, 2017
(b) ICD 704, Personnel Security Standards and Procedures Governing Eligibility
for Access to Sensitive Compartmented Information, and Other Controlled
Access Program Information, October 1, 2008
(c) Security Executive Agent Directive 4, National Security Adjudicative
Guidelines, December 10, 2016 (Effective June 8, 2017)

1.   The Defense Counterintelligence and Security Agency Consolidated Adjudication Services'
(DCSA CAS) review of a Incident Report, December 09, 2022, disclosed information that may
have a bearing on your eligibility for access to classified information, and/or assignment to
duties that have been designated national security sensitive, and/or access to Sensitive
Compartmented Information (SCI).

2.   The following information is required in order for the DCSA CAS to make an eligibility
determination:

Other Requested Info: A Defense Information System for Security (DISS) Incident Report,
submitted by your Security Management Office, dated December 9, 2022, disclosed subject
under investigation for improper use of her public position for private gain. The DoD CAS
requests that you provide all details and official documentation and if any disciplinary
actions has been taken. If subject has been discharged, please provide documentation or
update personnel system.

3.   DCSA CAS requests that you sign the attached Acknowledgement of Receipt form and
return the form to your Security Management Office (SMO) and/or SCI SMO within thirty (30)
calendar days from the date of this letter.

4.   DCSA CAS requests you provide this information to your SMO and/or SCI SMO within
thirty (30) calendar days from the date you sign the Acknowledgment of Receipt. Further, you
are advised that if the information is not received within the specified time frame, an unfavorable
eligibility determination may be rendered.

THE CONTENTS OF THIS DOCUMENT ARE PROTECTED UNDER THE PRIVACY ACT OF 1974

Updated on: 20231005

5.  Please direct any questions regarding this memorandum to your SMO and/or SCI SMO.

*Tonya Rodgers*    by tm

Tonya Rodgers
Division Chief
DCSA CAS

Attachment:
1. Acknowledgment of Receipt

THE CONTENTS OF THIS DOCUMENT ARE PROTECTED UNDER THE PRIVACY ACT OF 1974

Updated on: 20231005

**Acknowledgement of Receipt for Supplemental Information Request to Subject**
Kristina A. Glines, █████████

I acknowledge that I have been informed of the Defense Counterintelligence and Security Agency Consolidated Adjudication Services (DCSA CAS) request for information to aid in the determination of my eligibility for access to classified information, and/or assignment to duties that have been designated national security sensitive, and/or access to Sensitive Compartmented Information (SCI). I understand that failure to provide the information within the specified time frame may result in an unfavorable eligibility determination.

I further understand that this form must be returned to my organization's Security Management Office (SMO) or Sensitive Compartmented Information (SCI) SMO within <u>thirty (30)</u> calendar days.

NAME                                                     DATE


ENTER ORGANIZATION'S SMO/SCI SMO INFORMATION


SMO/SCI SMO Contact (Print name & sign)


SMO/SCI SMO Contact (Official Job Title)


SMO/SCI SMO Contact (email address & phone number)


Date


THE CONTENTS OF THIS DOCUMENT ARE PROTECTED UNDER THE PRIVACY ACT OF 1974

Updated on: 20231005

**Acknowledgement of Receipt for Supplemental Information Request to Subject**
Kristina A. Glines

I acknowledge that I have been informed of the Defense Counterintelligence and Security
Agency Consolidated Adjudication Services (DCSA CAS) request for information to aid in the
determination of my eligibility for access to classified information, and/or assignment to duties
that have been designated national security sensitive, and/or access to Sensitive Compartmented
Information (SCI). I understand that failure to provide the information within the specified time
frame may result in an unfavorable eligibility determination.

I further understand that this form must be returned to my organization's Security Management
Office (SMO) or Sensitive Compartmented Information (SCI) SMO within thirty (30) calendar
days.

_____                     11-17-23
NAME                                                 DATE


ENTER ORGANIZATION'S SMO/SCI SMO INFORMATION


**MARSHALL, LASHON A.**                  MARSHALL.LASHON  Digitally signed by MARSHALL.LASHON.ALLEN (b) (6)
                                         .ALLEN. (b) (6)  (b) (6)
                                                          Date: 2023.11.16 11:44:27 -05'00'

SMO/SCI SMO Contact (Print name & sign)


**SECURITY SPECIALIST**

SMO/SCI SMO Contact (Official Job Title)


**lashon.a.marshall.civ@us.navy.mil/703-695-8915**

SMO/SCI SMO Contact (email address & phone number)

11/16/2023

Date


THE CONTENTS OF THIS DOCUMENT ARE PROTECTED UNDER THE PRIVACY ACT OF 1974

**Ms. Kristina Glines**
1605 Palm Springs Drive
Vienna, VA 22182

December 7, 2023

Defense Counterintelligence and Security Agency
Consolidated Adjudication Services
27130 Telegraph Road
Quantico, VA 22134
*(Via Email Only)*

Re:    **Statement of Kristina Glines**

To Whom It May Concern:

Thank you for the opportunity to provide information to the Defense Counterintelligence and
Security Agency (DCSA) Consolidated Adjudication Services (CAS) regarding the adjudication
of my clearance eligibility. In short, I have a lengthy history of loyalty to the Nation, strength of
character, trustworthiness, honesty, reliability, and numerous other positive traits which have been
and continue being very helpful to the Nation. I have been a trusted Security Specialist for almost
two decades and believe that my security clearance should be favorably adjudicated so that I can
continue with my security career, my livelihood, and serving this Great Nation.

Introduction:

I have honorably served the Nation and the Department of the Navy (DON) for the past 17 years.
As a career civil servant and a Security Specialist, I have been highly valued by the Navy, trusted
by my peers, promoted, and given greater levels of responsibility due to my experience and
expertise, all of which has consistently showed great trust and confidence in my abilities, integrity,
and service to the Nation.  During this time, my assignments included serving as the DON Special
Access Programs Central Office (SAPCO) Director of Security since 2017 where amongst other
things I oversaw and executed routine administrative security functions, including actions such as
validating employee clearances, mission needs, and accesses.

In October 2022, I was notified by DON that my SAP access was being suspended due to
allegations that I "used my public office for private gain", placed on leave without pay, and
provided with no further information. This suspension occurred the same day I was interviewed
by DCIS. I have never been provided with any substantive information about the false allegations
that have removed me from pay and duty status for over a year. For over the past year, I have made
numerous requests for additional information so that I can properly respond to these false
allegations. I have also requested that the matter be properly processed by the DON and forwarded
to the Consolidated Adjudication Services (CAS) for adjudication. As the records indicate, for
over a year, the DON has been withholding information from the CAS regarding this matter, which
has been inhibiting an adjudicative review outside the DON by trained and authorized DCSA
adjudicators. An incident report was submitted in December 2022, two months after my SAP

1

access was suspended, and it has languished for over a year without any CAS review. I hereby request that the CAS apply the Adjudicative Guidelines to my case and apply the whole person concept as envisioned in the adjudicative process. I respectfully request that the CAS favorably adjudicate my clearance eligibility and remove any suitability flags in my file.

<u>Background</u>

I still have not received substantive information from the DON regarding this suspension. Regardless of the DON's actions, I will do my best to try and address what I believe the surrounding issues may be. In these regards, I am also willing to meet with the CAS Adjudicators to answer any questions you may have regarding my security clearance or this whole ordeal.

My husband and his partners own a company, ████████████ which does business with the U.S. Government, including DoD and the U.S. Intelligence Community (USIC). Beginning when the company formed, I completed an annual financial disclosure form OGE-450 for the DON ethics officials to review my financial interests and ensure there were no conflicts of interest or other concerns. I annually reported my husband's financial interests in BSI. Whenever issues arose where a known conflict of interest existed, I proactively sought legal counsel and preemptively recused myself from participating in anything involving BSI that required the exercise of judgment or discretion, including voluntarily withdrawing from two separate Source Selection Panels of companies with indirect ties to ███.

My relationship to ███ was widely known within my chain of command, including amongst DON SAPCO Mr. B. T. Howes, the Chief of Staff ██████████████ my other supervisors, and colleagues. At no time did I withhold information regarding the financial interest of my husband's company. At no time did I fail to report my relationship with my husband and his company. At no time did I perform any duties to improperly benefit ███ or me. The only times I did anything in my official capacity related to ███ was when I administratively processed information for which the substantive decisions had already been made and that was because at these times, I was the only one with the proper accesses and permissions to process these actions. All information regarding BSI and its nexus to me and my husband was reported in writing and adjudicated by trained security specialists and ethics officials.[1]

In 2022 the DoD Inspector General (IG) Defense Criminal Investigative Service (DCIS) opened an investigation into time and attendance of ███ Due to my marital relationship, I became involved in another line of inquiry of the DCIS investigation. When I learned of the DCIS Investigation, I notified my supervisors to include DON SAPCO Mr. Howes and ███ On October 11, 2022, I met with ██████████ and expressed concern about DON SAPCO's unfairness in the performance rating system. The very next day, on October 12, 2022, is when DCIS sought to interview me and DON SAPCO took the opportunity remove me from OPNAV.

---

[1] DoDM 5200.02 Enclosure 3 §8(c) provides that personnel who have been determined eligible for national security positions should not be subjected to additional security reviews…unless credible derogatory information that was not previously adjudicated becomes known. There was no new information that was not previously adjudicated. My connection to BSI had been subject to ethics reviews and my administrative actions were discussed with other security officials.

2

On October 12, 2022, DCIS Agent Peter Rozman, who has since retired, informed DON SAPCO that he would like to interview me. Even though I could've declined the interview or requested that an attorney be present, I voluntarily agreed to meet with now retired DCIS Agent Rozman. After a lengthy interview had taken place and concluded, I was immediately informed by Mr. Howes that my SAP access was suspended and that I was being placed on indefinite suspension of pay and duty. I later learned that prior to the interview even taking place and giving my version of the events, Mr. Howes initiated this SAP access suspension. During the course of the interview, I answered questions voluntarily, without a representative present, and to the best of my ability. I later learned that during the interview the DCIS Agent determined that I had engaged in no criminal wrongdoing, yet Mr. Howes decided to suspend my access anyway.

DON Failed to Follow Protocols for Notifying CAS

This SAP access suspension was a total shock to me as I was forthright with DCIS, addressed all their questions, and learned that I was cleared of any criminal wrongdoing. However, I was even more shocked to learn that DON SAPCO he issued a suspension when he learned that I was to be interviewed by DCIS, regardless of what the interview's outcome might be.[2] Mr. Howes incorrectly used his personal opinions to determine my criminal guilt, while the trained DCIS agent was finding no criminal wrongdoing. When DON SAPCO issued a SAP access suspension and debriefed me, they then failed to follow DoD and DON protocols in providing me information and properly notifying the CAS of their actions.[3]

On October 21, 2022, DON SAPCO drafted a Security Access Eligibility Report for the CAS; however, there is no indication that he signed the document or properly sent it to the CAS. SECNAVINST 5510.30C places the responsibility to notify the CAS squarely on DON SAPCO.[4] According to the Navy Instruction, Mr. Howes was required to notify the CAS within 72 hours. Mr. Howes learned of possible derogatory information in Spring of 2022, which is months prior to October 12, 2022. Mr. Howes enacted a suspension of access and proposed suspension of pay and duty on that same day—even though he was notified that there was a finding of no criminal wrongdoing. Unfortunately, Mr. Howes acted against me and denied me the CAS adjudicative

---

[2] On October 12, 2022, DON SAPCO Mr. B.T. Howes spoke to now-retired DoDIG DCIS Agent Peter Rozman and learned that DCIS had concerns about my ties to my husband's company that could be criminal in nature. Before Agent Rozman completed his interview, Mr. Howes directed the Deputy Director of Security Allison Goldsmith to draft a letter of suspension. Mr. Howes initiated this suspension based on a suspicion of criminal wrongdoing. After Agent Rozman completed his interview, which I voluntarily participated in and was forthcoming, spoke freely, and was not represented by counsel, Agent Rozman determined that there was no criminal wrongdoing.
[3] DoDM 5200.02 §9.4(c) requires that DoD Component heads, commanders, or their authorized representatives must report access suspensions to the appropriate adjudication facility via the JPAS incident report link within the same calendar day as the suspension. When my access was suspended on October 12, 2022, DON SAPCO failed in the requirement to properly and completely notify the CAS via DISS. SECNAVINST 5510.30c Enclosure 9 §§2(a)(3)(a)-(d) requires command offices to notify the CAS when administratively withdrawing access, debriefing for cause, or identifying any potentially disqualifying information. Both the DoD and DON policies were violated when DON SAPCO failed to properly and promptly notify the CAS of the action and surrounding information.
[4] SECNAVINST 5510.30C Enclosure 9 §1(f) states that commands are ultimately responsible for ensuring that the CAS is apprised whenever credible derogatory information develops that suggests an individual may no longer be in compliance with personnel security standards. Commands will report the issues to the CAS for adjudication using DISS within 72-hours and make a determination on whether the derogatory information warrants the suspension of access to classified information.

review that policy requires. I later learned that the CAS notification was not sent until December 2022.

On or about October 30, 2022, DON SAPCO received the final report from now-retired DCIS Agent Rozman finding no criminal wrongdoing. DON SAPCO was again obligated to notify the CAS of the investigative results.[5] SECNAVINST 5510.30C places an affirmative obligation for reporting to the CAS when unfavorable information is resolved by local investigation or inquiry.[6] Importantly and as previously noted, the DCIS investigation determined that there was no criminal wrongdoing on my part. However, DON SAPCO failed to notify the CAS that the DCIS investigation involving me was closed, withholding important information from DCSA, and preventing the CAS from executing its adjudicative authority.

On November 10, 2022, DON SAPCO created a memorandum regarding the closed DCIS investigation and circulated his own improper law enforcement conclusions to the Arlington RSSO and stated that the investigation was "effectively closed and culpability established." These terms are not found anywhere within the Adjudicative Guidelines or other regulatory guidance and were merely created by Mr. Howes to make matters sound worse than they were while not disclosing the full background of this matter. DON SAPCO is not a trained adjudicator and did not apply the adjudicative guidelines "whole person concept."[7] Furthermore, DON SAPCO is not an adjudication authority under DoDM 5200.02 Appendix 7A. The improper memorandum he drafted and promulgated is outside the scope of DON SAPCO's authority, and it was not properly sent to the CAS for adjudication when it was created weeks later on November 10, 2022.

In December 2022, DON SAPCO took further action against me to ensure that my collateral clearance was affected when he called the Arlington RSSO. I later learned that at the prompting of Mr. Howes, an SES, the Acting RSSO Mr. Cecil Wilson, who is a GS-14 and a temporary fill-in for both the RSSO and Deputy RSSO positions, was pressured and asked to review my case to effectively ensure that my clearance was suspended. Mr. Wilson confirmed that my access to National Security information and collateral TS and NATO accesses were removed. It was not until December 2022 when an incident report was submitted via DISS to the CAS; however, it

---

[5] SECNAVINST 5510.30C Enclosure (9)§4(a) requires commands to forward credible derogatory information from any source including but not limited to, an incident report, continuous evaluation alert or a BI to the CAS for determination of continued eligibility for security clearance, as appropriate. This requirement would include the DCIS investigative report which was not sent to the CAS in October 2022.

[6] SECNAVINST 5510.30C Enclosure (12)§8(d)(2) "In cases where unfavorable information was developed at the local command and subsequently resolved by local investigation or inquiry, commands must notify the [ CAS] of the inquiry results." DoDM 5200.02 §2.10(m) requires DoD Component Heads to ensure that results of investigations are delivered to the CAS for adjudication regardless of the source of the original request when requesting background investigations or reinvestigations for national security eligibility determinations. DoDM 5200.02 §11.2(a)(1)(c) Unfavorable information (e.g. government travel card misuse, abuse, or fraud and administrative or disciplinary action taken as a result of management review or investigation) is reported to the appropriate security, law enforcement, or CI professionals for appropriate action. Upon coordination with CI and law enforcement professionals as necessary, unless directed otherwise by the supporting CI professional, the incident report will be forwarded to the adjudication facility via JPAS.

[7] DoDM 5200.02 §7.1(b) provides that all reliable information relevant to determining whether a person meets the national security eligibility standards is reviewed and evaluated only by appropriately trained adjudicative personnel, in accordance with appropriate procedures approved by the Security Executive Agent. DON SAPCO's assertion that culpability was established is false, inappropriate under the adjudicative guidelines, and outside the scope of his authority.

4

appears that the manner in which it was submitted resulted in a significant delay and my case has not been adjudicated for over a year.

DON SAPCO is well-aware of the requirements to timely notify the CAS of any access determinations or potentially disqualifying information.[8] Despite this, DON SAPCO withheld information from the CAS, thereby depriving the CAS of its adjudication mission and preventing the CAS from properly making an authorized access and clearance eligibility determination. In addition, due to the improper notification of my SAP access suspension, the CAS was unable to adjudicate my clearance eligibility for over a year. The CAS was not made aware of my case until December 2022, two months after the DCIS investigation closed. Furthermore, because the DON did not properly submit this information to the CAS, the CAS was unable to satisfy the 15-day initial determination requirement prescribed in DoDM 5200.02 §9.4(a)(1) or their tracking requirements.

Notably, all other employees under investigation in relation to the DCIS and ███ inquiry, even those with imputed interests, have had their access or eligibility maintained or restored by the other services. I am the only individual still being penalized in relation to the BSI inquiry. Additionally, ███ tself is still in good standing with the Defense Department and continues assisting the Defense Department and U.S. Intelligence Community with executing its mission of defending the Nation. The actions of Mr. Howes and the DON for whatever reason have singled me out and penalized me unfairly by suspending my access and concurrently telling others at DoD and DON that I was terminated for cause, despite the reality of the pending CAS review, of which he should be well aware. Additionally, by not properly submitting this matter to the CAS or following up in the year this matter has been sitting in limbo, despite my requests, the DON has prevented my case from being adjudicated, despite the investigative matter closing a year ago, and prevented me from working.

Adjudicative Guidelines Process

DON SAPCO has established his own personal criteria for determining trustworthiness, which does not comply with the Adjudicative Guidelines. I later learned that after my DCIS interview, that Ms. Goodby learned that the investigation involving me was no longer criminal in nature. Upon learning of DON SAPCO's desire to suspend my SAP access, even though there was no criminal wrongdoing, Ms. Goodby asked if there was any room to consider an alternative course of action. DON SAPCO stated that as the Director of Security, he must have complete trust and faith in me. DON SAPCO claimed that out of all positions in the enterprise, the Director of Security had to be above reproach. He stated that he no longer had trust in me and couldn't keep me briefed any longer. This uncompromising perspective is contrary to the Adjudicative Guidelines and the

---

[8] SECNAVINST 5510.30C Enclosure 9 §1(f) states that commands are ultimately responsible for ensuring that DCSA CAS are apprised whenever credible derogatory information develops that suggests an individual may no longer be in compliance with personnel security standards. Commands will report the issues to DCSA CAS for adjudication using JPAS or successor system within 72-hours and make a determination on whether the derogatory information warrants the suspension of access to classified information.
SECNAVINST 5510.30C Enclosure 9 §4(a) states that commands will forward credible derogatory information from any source including but not limited to, an incident report, continuous evaluation alert or a BI to the CAS for determination of continued eligibility for security clearance, as appropriate. The CAS will determine if the information is within the scope of the national security eligibility adjudicative guidelines.

5

adjudicative process.[9] Under the Adjudicative Guidelines, trained adjudicators weigh each case on its unique merits, making common sense evaluations of the "whole person," with consideration for the nature and seriousness of past conduct; the circumstances surrounding the conduct; the frequency and recency of the conduct; the age of the individual; the voluntariness of participation; and the absence or presence of rehabilitation by applying the adjudication criteria.[10] In stark contrast, DON SAPCO, who is not a trained adjudicator, falsely believes that a mere allegation amounts to a finding of guilt and a total loss of trust and acted upon this incorrect standard.

The Adjudicative Desk Reference (ADR) identifies the role that "heuristic" plays in affecting judgment, which should be avoided.[11] In this case, DON SAPCO demonstrates the heuristic of an unconscious bias. DON SAPCO's statements comport with the "halo effect" which refers to the tendency to view people as all good or all bad. According to the ADR, this bias should be avoided and discounted as the proper inquiry is national security concerns, not an individual's own personal values.[12] DON SAPCO claims in his written notification to possess "absolute authority" over DON SAPs, which is incorrect.[13] This false belief should not be upheld, particularly when his judgment contradicts the Adjudicative Guidelines and the proper inquiry related to national security concerns.

There is documented evidence of my commitment to national security and exercise of good judgment found currently and throughout my entire National Security Career. One of the many notable examples is in my last evaluation, where my rating official states: "As the Director for Security, Ms. Glines always models best practices working in a classified environment and upholds high standards of integrity and ethical behavior."[14] This evaluation was not an outlier, but the norm for me.

In my 2022 progress review, I received the highest marks as "outstanding" in every category. My rating official stated that "Ms. Glines excels in her support to the [sic] DONSAPCO as the Director of Security…. Ms. Glines is recognized as a senior leader in the SAP Security Community and her guidance and expertise are highly valued."[15] These unbiased, documented findings of my commitment to the protection of national security and defense of our Nation demonstrate a pattern of unquestionable loyalty to the United States.

Unlike DON SAPCO's personal standards, the Adjudicative Guidelines process seeks reasonable assurance that persons granted access to classified information are persons:

---

[9] SECNAVINST 5510.30C Enclosure 8 §5(c) explains that the adjudication process assesses the probability of future behavior that could have an adverse effect on national security. Few situations allow for positive, conclusive evidence of certain future conduct, therefore, the adjudicative process is an attempt to judge whether the circumstances of a particular case of demonstrated past conduct, behaviors, and activities suggest a probable degree of future conduct, behavior or activities which would be inconsistent with the interests of national security.
[10] SECNAVINST 5510.30C Enclosure 8 §5(d)
[11] ADR 2014 pp233-234
[12] ADR 2014 pp233-234
[13] DON SAPCO specifically claims, "my responsibility for the DON SAPs is **absolute** (bold lettering added), having ultimate responsibility and authority for all determinations regarding persons who may have access to SAPs under my control." Proposed Indefinite Suspension, October 12, 2022.
[14] DoD Civilian Performance Plan, Progress Review(s) and Appraisal 2022.
[15] DoD Civilian Performance Plan, Progress Review(s) and Appraisal 2022.

6

...whose personal and professional history affirmatively indicates loyalty to the United States, strength of character, trustworthiness, honesty, reliability, discretion, and sound judgment, as well as freedom from conflicting allegiances and potential for coercion, and willingness and ability to abide by regulations governing the use, handling, and protection of classified information.[16]

I have made meaningful contributions to the Nation, the DON, and the SAP community throughout my career. My personal and professional history affirmatively demonstrates loyalty to the United States, a strong character, and trustworthiness. When I reflect on the decisions I made that intersected with my husband's company, I always sided with the interests of the United States and demonstrated sincere efforts to follow DoD and DON protocols. In 2020, as the Director of Security, I became aware that a ███ employee had their SAP access suspended by DARPA. I alerted another team member of the need to reciprocally recognize the DARPA SAP suspension and requested the reciprocal suspension of the ███ employee's SAP access in the DON system. Due to the impact of COVID on the workplace, the reciprocal suspension was not enacted as directed, and I initiated the reciprocal suspension of the employee's SAP access, which negatively vs positively impacted ███ If my actions were not optimal, I apologize to everyone involved and have learned from my mistakes, which will never happen again.

Adjudicative Guidelines Mitigated

**Adjudicative Guideline J** identifies criminal conduct which creates doubt about a person's judgment, reliability, and trustworthiness. By its very nature, it calls into question a person's ability or willingness to comply with laws, rules, and regulations.[17] In addition, a condition that could raise a security concern or may be disqualifying includes an allegation or admission of criminal conduct, regardless of whether the person was formally charged, formally prosecuted or convicted. In my case there was an allegation of criminal conduct followed quickly by a finding by DCIS that there was no criminal wrongdoing. The Adjudicative Guidelines state that conditions that could mitigate security concerns include:
(a) so much time has elapsed since the criminal behavior happened, or it happened under such unusual circumstances that it is unlikely to recur and does not cast doubt on the individual's reliability, trustworthiness, or good judgment;
(b) the person was pressured or coerced into committing the act and those pressures are no longer present in the person's life;
(c) evidence that the person did not commit the offense; [18]

I realize that someone can lose their security clearance even though criminal charges have not been brought, but this is not that type of case and is much different than what is envisioned in the ADR. In my case, the reciprocity decision I made regarding the ███ employee was in 2020 and did not benefit me or ███ in any way. Any actions relating to ███ prior to 2020 were also administrative in nature and do not cast doubt on my reliability, trustworthiness, or good judgment. My 2022 performance appraisal provides documentation of my reputation for good judgment over time. At the time, I enacted a reciprocal suspension against the ███ employee, it was due to the pressures

---

[16] Executive Order 12968, Access to Classified Information, dated August 4, 1995.
[17] ADR 2014 p 380
[18] ADR 2014 p 380

7

of COVID and the impacts on the workforce as I was the only one at the time able to process this action on behalf of the DON. Furthermore, DCIS determined that I did not commit a criminal offense. All three of the mitigating factors are satisfied under the Adjudicative Guidelines.

In addition, **Adjudicative Guideline L** regarding Outside Activities articulates the concern that involvement in certain types of outside employment or activities is of security concern if it poses a conflict of interest with an individual's security responsibilities and could create an increased risk of unauthorized disclosure of classified information. [19] Conditions that may be disqualifying largely focus on a foreign nexus, which is not present in this case. However, even outside employment with a foreign nexus may mitigate security concerns when the outside activity has been reported, evaluated by appropriate security or counterintelligence officials, and determined that there is no conflict of interest. In my case, there is no foreign nexus, my outside activities and interest in my husband's company has been reported and evaluated by security and ethics officials annually, and even evaluated by a counterintelligence and security agent who determined  there was no conflict of interest with my security responsibilities or with the national security interests of the United States.[20] Again, the mitigating factors for concerns regarding outside activities have been satisfied under the Adjudicative Guidelines.

Even after satisfying the mitigating factors for criminal conduct and outside activities under the Adjudicative Guidelines, my case does not raise additional security concerns regarding my personal conduct. I have not demonstrated a pattern of dishonest, unreliable, or rule-breaking conduct.[21] If anything, I have strived to be the opposite of these things and an honest and trusted security professional who now finds myself in this very unfortunate and serious situation. The information about my intersection with BSI does not implicate other unfavorable information as articulated in the Guidelines. [22] To the contrary, I have demonstrated a strength of character, trustworthiness, honesty, and sound judgment to uphold national security interests. Over the course of my 17-year career with the Navy as a Security Specialist, I have followed DON policies and procedures carefully and faithfully. I have continually demonstrated myself as a highly skilled employee and a loyal American, and I had anticipated serving the Navy for many years to come.

<u>Conclusion</u>

After careful consideration, I now realize that I should have engaged leadership and legal counsel before taking any actions at all, no matter how seemingly ministerial or inconsequential, on any matter involving ▉ However, I did not use my "Private Office for Public Gain" or receive any benefit from my actions as has been alleged. My objective as a leader in the Security community has always focused on outcomes that promoted and improved the efficiency, effectiveness, and security of the DON and the Nation. I regret that my actions created even an appearance of improper activity. I assure all who read this response that I am remorseful, have learned a great deal from this episode, and will never take any action with respect to ▉ even if the action would be clearly ministerial or administrative in nature or I am the only one who would be able to process the action.

---

[19] ADR 2014 p 382
[20] ADR 2014 p 382
[21] ADR 2014 p 225
[22] ADR 2014 pp 225-226

8

I respectfully request that the CAS favorably adjudicate my clearance eligibility and remove any suitability flags that were applied in my case. I respectfully request that the CAS apply the Adjudicative Guidelines to my case and apply the whole person concept as envisioned in the adjudicative process. DON has allowed my indefinite suspension of pay and duty to languish for over one year. The DON has allowed the actions of DON SAPCO to deprive me of the opportunity to continue to serve my country, deprive me of my career, and my livelihood. I have been seeking information about my case for over a year and my requests have been denied. I am very grateful for the CAS taking an interest in my case and finally conducting an adjudicative review. I would be happy to meet face-to-face or provide any documentation that would assist in your further review. I am available to answer any further questions or provide additional information. Thank you for your prompt attention and handling of this matter.

Sincerely,

Kristina A. Glines

9

# OGC Referral Form

**\*Please save this form as a .doc/.docx before sending to Legal Office**

Date Submitted to OGC: January 9, 2024
Subject's Full Name: Kristina Ar. Glines
Subject's SSN: ▮▮▮▮▮
Subject's Affiliation:

| ☐Military | ☐Contractor/Industry |
|---|---|
| ☐Civilian | ☐ Other (Specify Below) |

Other affiliation (not listed):

### SIPRNet Document(s)?



### Expedite?

| ☐Yes | ☐No |
|---|---|

### Bond Amendment applicable?

| ☐ Yes | ☐ No |
|---|---|

### Bond Analysis applicable?

| ☐ Yes | ☐ No |
|---|---|

Reviewer's Name:
Reviewer's Phone:
Reviewer's E-mail:



Preparing Adjudicator's Name: (b) (6)

### Review Requested (Select ALL that apply):

| (b) (5), (d)(5) | SOR - Statement of Reasons | (b) (5), (d)(5) | Director's Interest Summary |
|---|---|---|---|
| | LOR - Letter of Revocation or LOD - Letter of Denial | | Legal Question (Fill in Below) |
| | Evaluation Request | | Other Question (Fill in Below) |

List the documents that require a "legal sufficiency" review. (This list of documents must match the full names reflected in DISS):

Updated on: 20220617

# OGC Referral Form

**\*Please save this form as a .doc/.docx before sending to Legal Office**

---

List <u>supporting</u>document(s) that were relied upon when preparing the document requiring review (This list of documents must match the full names reflected in DISS):



Additional Notes/Question(s):

Additional Consultation:

(b) (5), (d)(5)

Guidelines (Select ALL that apply)

| | | | | | |
|---|---|---|---|---|---|
| (b)(5), (d)(5) | Allegiance to the US | (b)(5), (d)(5) | Financial Considerations | (b) (5), (d)(5) | Handling Protected Information |
| | Foreign Preference | | Alcohol Consumption | | Outside Activities |
| | Foreign Influence | | Drug Involvement | | Use of IT Systems |
| | Sexual Behavior | | Psychological Conditions | | |
| | Personal Conduct | | Criminal Conduct | | |

**\*<u>Additional Instructions</u>**:  DO NOT upload or retain legal advice or comments in DISS.

---

**<u>FOR OGC USE ONLY</u>**

Assigned Attorney

(b) (6)

Updated on: 20220617

# OGC Referral Form

**\*Please save this form as a .doc/.docx before sending to Legal Office**



Date Returned:

Updated on: 20220617

# Executive Level Interest Case Summary Form

**\*Please save this form as a .doc/.docx before uploading into DISS**

## ELI SUBJECT CASE INFORMATION
Date of Initiation: January 9, 2024
Case ID: 44953892
Subject Name: Kristina A. Glines
Employment Category: Civilian
Affiliated Organization: NAVY INTELLIGENCE AGENCY
Grade/Rank: GS 15
Current Eligibility: SCI-ICD 704
Current Access: NONE
Referring Adjudicator/Supervisor: (b) (6)

## EXECUTIVE SUMMARY:
Brief Paragraph of Major Concerns:
A Defense Criminal Investigative Service (DCIS) investigation of Kristina Glines has
determined culpability in regard to improper use of her public position for private gain.

List all Documentation and Correspondence to Review:



## BACKGROUND INVESTIGATION HISTORY:
SBPR 09/09/2010
PPR 02/05/2016

## ADJUDICATION SUMMARY:
Summary:

(b) (5), (d)(5)

THE CONTENTS OF THIS DOCUMENT ARE PROTECTED UNDER THE PRIVACY ACT OF 1974

Updated on: 20230425

# Executive Level Interest Case Summary Form

**\*Please save this form as a .doc/.docx before uploading into DISS**

(b) (5), (d)(5)

THE CONTENTS OF THIS DOCUMENT ARE PROTECTED UNDER THE PRIVACY ACT OF 1974

Updated on: 20230425

**DEFENSE COUNTERINTELLIGENCE AND SECURITY AGENCY**
BUILDING 600 10TH STREET
FORT GEORGE G. MEADE, MD  20755-5615

CAS

January 9, 2024

MEMORANDUM FOR NAVY INTELLIGENCE AGENCY
                    (ATTN: SECURITY MANAGEMENT OFFICE)

SUBJECT:   Supplemental Information Request Re: MS. Kristina A. Glines, 

References: (a) DoDM 5200.02, Procedures for the DoD Personnel Security Program (PSP)
                April 3, 2017
            (b) ICD 704, Personnel Security Standards and Procedures Governing Eligibility
                for Access to Sensitive Compartmented Information, and Other Controlled
                Access Program Information, October 1, 2008
            (c) Security Executive Agent Directive 4, National Security Adjudicative
                Guidelines, December 10, 2016 (Effective June 8, 2017)

1.   Per the above references, the Defense Counterintelligence and Security Agency Consolidated
Adjudication Services' (DCSA CAS) review of an Incident Report, December 7, 2022, disclosed
information that may have a bearing on his/her eligibility for access to classified information,
and/or assignment to duties that have been designated national security sensitive, and/or access
to Sensitive Compartmented Information (SCI).

2.   The following information is required for the DCSA CAS to make an eligibility
determination:

        Other Requested Info: Received your response, please provide an update/final for the
DCIS investigation. Please provide any official documentation including additional actions that
has been taken to this point.

3.   DCSA CAS requests that the attached "Acknowledgement of Receipt" be signed and return
the form to the DCSA CAS via the Defense Information System for Security (DISS) portal
within thirty (30) calendar days. After the receipt has been returned, please forward the above
requested information to the DCSA CAS via the DISS portal within thirty (30) calendar days of
your acknowledgement of receipt. Further, please be advised that failure to provide the requested
information may result in an unfavorable eligibility determination based on existing information
being rendered on the Subject.

4.   Please notify us if the Subject has transferred, been discharged, or is no longer associated
with your organization.

THE CONTENTS OF THIS DOCUMENT ARE PROTECTED UNDER THE PRIVACY ACT OF 1974

Updated on: 20231128

5.   If you have any questions, please contact the DCSA CAS Call Center at commercial (301) 833-3850 or DSN 733-3850 or send a message via the DISS Portal.


*Tonya Rodgers*     by **tm**

Tonya Rodgers
Division Chief
DCSA CAS

Attachment:
Acknowledgment of Receipt

THE CONTENTS OF THIS DOCUMENT ARE PROTECTED UNDER THE PRIVACY ACT OF 1974

Updated on: 20231128

**Acknowledgement of Receipt for Supplemental Information Request to Command**
MS. Kristina Ar. Glines, ███████

The SMO/SCI SMO acknowledges receipt for the Supplemental Information Request Memorandum. This office understands the required information is due to the Defense Counterintelligence and Security Agency Consolidated Adjudication Services (DCSA CAS) within the next thirty (30) calendar days of this Receipt via the DISS portal. This office understands that failure to provide the information within the specified time frame may result in an unfavorable eligibility determination.

This office further understands that this form must be returned to the DCSA CAS within <u>thirty (30)</u> calendar days.

_____

SMO/SCI SMO Contact (Print name & sign)

_____

SMO/SCI SMO Contact (Official Job Title)

_____

SMO/SCI SMO Contact (email address & phone number)

_____

Date

THE CONTENTS OF THIS DOCUMENT ARE PROTECTED UNDER THE PRIVACY ACT OF 1974

Updated on: 20231128



**DEFENSE COUNTERINTELLIGENCE AND SECURITY AGENCY**
BUILDING 600 10TH STREET
FORT GEORGE G. MEADE, MD 20755-5615

January 24, 2024

MEMORANDUM FOR NAVAL INTELLIGENCE AGENCY SPECIAL SECURITY OFFICE
(ATTN: SECURITY MANAGEMENT OFFICE)

SUBJECT: Investigative File Request Re: Kristina A. Glines, ████████

1.   The Defense Counterintelligence and Security Agency Consolidated Adjudication Services
(DCSA CAS) has been provided a copy of subject's investigation however DCSA CAS request
permission to use. DCSA CAS will use the information to determine Subject's eligibility for
access to classified information.

|  |  |
|---|---|
| Name: | KRISTINA A. GLINES |
| SSN: | |
| DOB: | ████ 1982 |
| Invest. Agency: | DEFENSE CRIMINAL INVESTIGATIVE SERVICE |
| Invest. Type: | DCIS Report of Investigation |
| Invest. Close Date: | October 26, 2022 |

2.   The DCSA CAS requests authorization to utilize information contained in the investigative
file, to use in an unfavorable security clearance eligibility determination (if applicable).

3.   If you have any questions, please contact DCSA CAS Call Center at commercial (677) 424-
3850 or DSN (b) (6) ████████ or send a message via the DISS Portal

*Tonya Rodgers*    by tm

Tonya Rodgers
Division Chief
DCSA CAS

| |
|---|
| **Controlled by:** CAS |
| **CUI Category:** PRVCY |
| **Distribution/Dissemination Controls:** FEDCON |
| **POC:** Tonya Rodgers, (b) (6) ████████ |

THE CONTENTS OF THIS DOCUMENT ARE PROTECTED UNDER THE PRIVACY ACT OF 1974

CUI

Updated on: 20240111



**DEFENSE COUNTERINTELLIGENCE AND SECURITY AGENCY**
BUILDING 600 10TH STREET
FORT GEORGE G. MEADE, MD 20755-5615

**CAS**

February 27, 2024

MEMORANDUM FOR NAVAL INTELLIGENCE AGENCY SPECIAL SECURITY OFFICE
(ATTN: SECURITY MANAGEMENT OFFICE)

SUBJECT:   Instructions for Handling Statement of Reasons Re: Ms. Kristina A. Glines,
███████████

References:  (a) DoDM 5200.02, Procedures for the DoD Personnel Security Program (PSP)
April 3, 2017
(b) Security Executive Agent Directive 4, National Security Adjudicative
Guidelines, December 10, 2016 (Effective June 8, 2017)
(c) ICD 704, Personnel Security Standards and Procedures Governing Eligibility
for Access to Sensitive Compartmented Information, and Other Controlled
Access Program Information, October 1, 2008
(d) ICPG 704.3, Denial or Revocation of Access to Sensitive Compartmented
Information, Other Controlled Access Program Information, and Appeals
Processes, October 2, 2008

1.   After careful review of available pertinent information and in accordance with the references
above, the Defense Counterintelligence and Security Agency Consolidated Adjudication
Services (DCSA CAS) has made a preliminary decision to deny or revoke the Subject's
eligibility for access to classified information, assignment to duties that have been designated
national security sensitive, and access to SCI. The DCSA CAS' assessment of the applicable
security concerns for this preliminary decision is documented in the attached Statement of
Reasons (SOR) addressed to the Subject.

2.   The purpose of this memorandum is to provide instructions for actions required by your
organization related to the Subject named in the attached SOR. Denial or revocation of eligibility
for access to classified information, duties that have been designated national security sensitive,
and SCI access can have a severe impact on Subjects and their careers. The procedures required
by the above references must be closely followed to ensure that all elements of security and
fairness are met.

3.   The DCSA CAS was informed that the Subject's access has been suspended.

THE CONTENTS OF THIS DOCUMENT ARE PROTECTED UNDER THE PRIVACY ACT OF 1974

Updated on: 20231005

4.  Please ensure the following actions, as appropriate, are accomplished within the specified time frames:

a.  Promptly deliver the attached Statement of Reasons package to the Subject.

b.  Establish a point of contact for the Subject. Advise the Subject that he/she should not attempt to communicate directly with DCSA CAS and all communication with DCSA CAS must be forwarded through the Security Management Office (SMO) or SCI SMO.

c.  Complete and forward the *Statement of Reasons Receipt and Statement of Intent* to DCSA CAS within ten (10) calendar days of the Subject's receipt of the SOR package. Ensure that the Subject and your office properly complete the form. This form notifies DCSA CAS whether the Subject intends to respond to the SOR. Should the subject refuse to complete the *Statement of Reasons Receipt and Statement of Intent,* the SMO or SCI SMO will complete the form verifying the date the package was delivered to the Subject and forward the completed form to DCSA CAS within ten (10) calendar days of the subject's refusal to sign. An additional witness is required to sign the form to verify the SOR package was delivered to the Subject.

d.  Also, ensure the Subject understands that he/she may choose to obtain legal counsel, or other assistance, in preparing a response to this preliminary decision. He/she may obtain civilian counsel, at personal expense, or, if eligible, from the staff of the Judge Advocate General. Advise the Subject that if he/she desires assistance from legal counsel that he/she should make those arrangements immediately.

e.  Ensure that the Subject understands the consequences of being found ineligible for access to classified information, assignment to duties that have been designated national security sensitive, and SCI access, and the serious effect such a decision could have on his/her career.

f.  Take particular care to ensure that the Subject fully understands that the preliminary denial or revocation decision will become final based on the available information if:

- your organization notifies DCSA CAS via the *Statement of Reasons Receipt and Statement of Intent* that the Subject does not intend to respond to the SOR, or

- the Subject reports that he/she will respond to the SOR and DCSA CAS receives no response within the specified time period.

**Ensure the Subject understands that in either of these instances, the preliminary decision will become a final determination on the merits of the available information.**

THE CONTENTS OF THIS DOCUMENT ARE PROTECTED UNDER THE PRIVACY ACT OF 1974

Updated on: 20231005

g.  If the Subject chooses to respond to the SOR, inform him/her they have sixty (60) calendar days from the date of their acknowledgment on Attachment 2, Statement of Reason Receipt and Statement of Intent, of his/her memorandum, to submit the response in writing through the SMO or SCI SMO. Ensure the Subject understands that requests for an extension beyond the established suspense date must be submitted in writing through the SMO or the SCI SMO prior to the SOR response due date and approved by DCSA CAS. Exceptions to this policy may only be circumstances where the Subject's failure to respond to the SOR was due to factors beyond his or her control.

h.  Assist the Subject in obtaining the applicable references and copies of pertinent investigative files. The SOR is based on information obtained from investigative agencies and/or other sources. If the Subject desires copies of releasable information pertinent to this SOR, advise him/her to follow the instructions in Attachment 3 of his/her memorandum.

i.  Advise the Subject that written comments from personal references may be included as part of the response to the SOR. Such written comments may include observations regarding the Subject's judgment, reliability, and trustworthiness. Personal references may comment on the pending eligibility decision if knowledgeable of the security issues identified in the SOR. Whether or not comments from personal references are included, the Subject's response to the SOR must be received in your office by the suspense date.

j.  Ensure the response to the SOR is promptly endorsed by the appropriate authority, with a copy to the Subject, and immediately forwarded to DCSA CAS.

5.  Deployment/TDY. It is in the best interest of national security that this notice to the Subject be delivered as soon as possible. It is understood, however, that deployment or other operational circumstances may make it difficult for the Subject to provide an adequate response. If the Subject is currently deployed or other operational circumstances prevent your organization from initiating this due process action, immediately notify DCSA CAS in writing. Be sure to provide your SMO or SCI SMO contact information to DCSA CAS and keep us apprised of the Subject's status. Upon the Subject's return from deployment, or the end of the operational circumstance, your office should deliver the SOR immediately and forward the signed *Statement of Reasons Receipt and Statement of Intent* to DCSA CAS as soon as possible.

6.  If you have any questions, please contact the DCSA CAS Call Center at commercial (301) 833-3850 or DSN 733-3850 or send a message via the DISS Portal.

*Tonya Rodgers*    by **rj**

Tonya Rodgers
Division Chief
DCSA CAS

Attachment:
Subject's Memorandum (w/attachments)

THE CONTENTS OF THIS DOCUMENT ARE PROTECTED UNDER THE PRIVACY ACT OF 1974

Updated on: 20231005



**DEFENSE COUNTERINTELLIGENCE AND SECURITY AGENCY**
BUILDING 600 10TH STREET
FORT GEORGE G. MEADE, MD 20755-5615

**CAS**

February 27, 2024

MEMORANDUM FOR  MS. KRISTINA A. GLINES, ███████

THROUGH:  NAVAL INTELLIGENCE AGENCY SPECIAL SECURITY OFFICE
(ATTN: SECURITY MANAGEMENT OFFICE)

SUBJECT:  Intent to Revoke Eligibility for Access to Classified Information, Assignment to
Duties that have been Designated National Security Sensitive, and Access to
Sensitive Compartmented Information (SCI)

References: (a) DoDM 5200.02, Procedures for the DoD Personnel Security Program (PSP),
April 3, 2017
(b) Security Executive Agent Directive 4, National Security Adjudicative
Guidelines, December 10, 2016 (Effective June 8, 2017)
(c) ICD 704, Personnel Security Standards and Procedures Governing Eligibility
for Access to Sensitive Compartmented Information, and Other Controlled
Access Program Information, October 1, 2008
(d) ICPG 704.3, Denial or Revocation of Access to Sensitive Compartmented
Information, Other Controlled Access Program Information, and Appeals
Processes, October 2, 2008

1.  Per the above references, a preliminary decision has been made by the Defense
Counterintelligence and Security Agency Consolidated Adjudication Services (DCSA CAS) to
revoke your eligibility for access to classified information, assignment to duties that have been
designated national security sensitive, and access to Sensitive Compartmented Information
(SCI).

2.  A decision on eligibility for access to classified information, assignment to duties that have
been designated national security sensitive, and SCI access is a discretionary security decision
based on judgments by appropriately trained adjudicative personnel. Pursuant to reference (a),
eligibility shall be granted only where facts and circumstances indicate eligibility for access to
classified information is clearly consistent with the national security interests of the United
States, and any doubt shall be resolved in favor of the national security. Information concerning
your personal history has led to the security concern(s) listed in Attachment 1, *Statement of
Reasons (SOR)*, which prevent DCSA CAS from making the affirmative decision that your
eligibility is clearly consistent with the interests of national security. If this preliminary decision
becomes final, you will not be eligible for access to classified information, assignment to duties
that have been designated national security sensitive, and SCI access as defined by the above-
cited references.

THE CONTENTS OF THIS DOCUMENT ARE PROTECTED UNDER THE PRIVACY ACT OF 1974

Updated on: 20231005

3.   Your access to classified information was suspended by your organization.

4.   You must complete Attachment 2, *Statement of Reasons Receipt and Statement of Intent*, and forward it to the DCSA CAS, via your organization's Security Management Office (SMO) or SCI SMO within ten (10) calendar days of receipt of this memorandum. Contact your SMO or SCI SMO for help in preparing and forwarding this form. If the completed Attachment 2 is not received at DCSA CAS, it will be presumed that you do not intend to submit a reply.

5.   You may request the records upon which DCSA CAS relied on to make the preliminary decision. Attachment 3 is provided to assist you in requesting your records. Use the DCSA investigation request if your SOR is based upon a DCSA Investigation (formerly known as the Office of Personnel Management (OPM) investigation). Use the appropriate records request form(s) provided herein, if your SOR is based upon records other than, or in addition to, the DCSA investigation. Failure to request the record(s) in a timely manner, failure to provide an accurate mailing address, and/or failure to accept receipt of the record(s) upon delivery, will not serve as justification for an extension of time to respond to the SOR.

6.   You may challenge this preliminary decision by responding, in writing, with any information or explanation that you think should be considered in reaching a final decision. Attachment 4, *Instructions for Responding to a Statement of Reasons*, provides instructions to assist you if you choose to submit a response. Attachment 5, *National Security Adjudicative Guidelines*, provides information on the guidelines and Attachment 6, *Applicable National Security Adjudicative Guidelines*, provides the specific national security adjudicative guideline(s) from reference (b) used in this preliminary decision.

7.   You may choose to obtain legal counsel, or other assistance, in preparing your response to this preliminary decision. You may obtain civilian counsel, at your own expense, or, if you are eligible, from the staff of the Judge Advocate General. If you desire assistance from legal counsel, you should make those arrangements immediately.

8.   If you choose the option to respond, your written response must be submitted through your SMO or SCI SMO within sixty (60) calendar days from the date you acknowledge receipt of this memorandum. Your SMO or SCI SMO will then forward it to the DCSA CAS. To request an extension, you must provide a written request, with justification, to your SMO or SCI SMO prior to the current deadline. Your SMO or SCI SMO will then submit your request to the DCSA CAS for review/approval. Any request for extension of time to respond may be granted only by the DCSA CAS.

THE CONTENTS OF THIS DOCUMENT ARE PROTECTED UNDER THE PRIVACY ACT OF 1974

Updated on: 20231005

9.   If you choose the option not to respond or if you chose to respond but your response is not received by your SMO or SCI SMO within the specified time, this preliminary decision will become a final security determination on the merits of the information available. Please direct questions regarding this memorandum to your SMO or SCI SMO.


*Tonya Rodgers*    by **rj**

Tonya Rodgers
Division Chief
DCSA CAS

Attachments:
1. Statement of Reasons
2. Statement of Reasons Receipt and Statement of Intent
3. Form(s) for Requesting Records
4. Instructions for Responding to a SOR
5. National Security Adjudicative Guidelines
6. Applicable National Security Adjudicative Guidelines

THE CONTENTS OF THIS DOCUMENT ARE PROTECTED UNDER THE PRIVACY ACT OF 1974

Updated on: 20231005

**STATEMENT OF REASONS (SOR) FOR MS. KRISTINA A. GLINES,** ██████████.

The information listed below was derived from the documents listed at the end of this attachment (Attachment 1, Statement of Reasons). Each item of disqualifying information falls under one or more of the security guidelines listed below.

**GUIDELINE E: Personal Conduct**

Available information shows issues of Personal Conduct on your part.

Conduct involving questionable judgment, lack of candor, dishonesty, or unwillingness to comply with rules and regulations can raise questions about an individual's reliability, trustworthiness, and ability to protect classified or sensitive information. Of special interest is any failure to cooperate or provide truthful and candid answers during national security investigative or adjudicative processes.

Per the Adjudicative Guidelines, conditions that could raise a security concern and may be disqualifying include:

The Department of Defense Inspector General, Defense Criminal Investigative Service (DCIS) opened an investigation on May 30, 2019, after a referral from the Deputy Director of Security, Department of Defense Special Access Program (SAP), regarding questionable SAP accesses for ██████████, Incorporated. Your spouse founded ██████████ Incorporated in 2013 and is the President and Chief Executive Officer. The referral also included the allegation that you used your official U.S. Government position as Director of Security, Department of The Navy Special Programs Office/Department of the Navy Special Access Program Central Office (SAPCO) (N9SP), Pentagon, Washington, D.C. to benefit your financial position, potentially amounting to a conflict of interest.

As an employee of the executive branch of the U.S. government, you have an obligation to abide by 5 C.F.R. § 2635 - Standards of Ethical Conduct for Employees of the Executive Branch. The basic obligation of public service is that it is a public trust. The general principles apply to every employee. These principles include, but are not limited to, the following:

1. Employees shall not hold financial interests that conflict with the conscientious performance of duty;
2. Employees shall act impartially and not give preferential treatment to any private organization or individual;
3. Employees shall endeavor to avoid any actions creating the appearance that they are violating the law, or the ethical standards set forth in this part. Whether particular circumstances create an appearance that the law or these standards have been violated shall be determined from the perspective of a reasonable person with knowledge of the relevant facts.

On October 12, 2022, during an interview with DCIS Special Agents, you admitted that you used your official position to help your husband and his company, ██████████. Furthermore, the report revealed that you failed to recuse yourself from matters in which you had a personal financial interest/conflict of interest and failed to seek guidance or report all perceived or actual

THE CONTENTS OF THIS DOCUMENT ARE PROTECTED UNDER THE PRIVACY ACT OF 1974

Updated on: 20231005

conflicts of interest to your supervisor and/or Department of Navy (DoN) attorneys. You acknowledged that you had received ethics training throughout your DoN career and knew you had an obligation to seek guidance, report your conflicts, and recuse yourself in matters involving your spouse's company. You acknowledged that you did not do this for every conflict involving ██████████████.

The DCIS report disclosed that on August 20, 2020, an employee of ████████████████ committed a security violation while assigned to the Defense Advanced Research Projects Agency (DARPA), Adaptive Capabilities Office (ACO), Arlington, Virginia. At this time, you were on leave, and in your absence, the Deputy Director of Security assumed your duties as the Acting Director of Security and led the effort to suspend the ████████████████ employee's DoN SAP access. On October 19, 2020, you returned from leave and resumed your role as Director; however, the Deputy Director continued to work on the ████████████ employee SAP suspension. On November 12, 2020, the Deputy Director forwarded an email chain to you regarding the employee's suspension decision. You responded, "I need to recuse myself from this specific case. This [Systems Engineering and Technical Assistance] SETA works for my husband's company. I don't want any decision to appear bias [sic]." You remained involved even after acknowledging your conflict. You questioned DARPA's decision to suspend the employee's SAP accesses; however, you were aware that if you did not suspend the employee's DoN SAP accesses, it would look like "favoritism." You also admitted to sharing information about the employee's SAP suspension with your spouse as it was being adjudicated. You did not believe this was wrong or inappropriate. You stated that you would have shared this type of information with other corporate leaders who requested information about their employee in the same situation. Nonetheless, you stated that you should not have participated in this matter, should have recused yourself, and notified your supervisor of your conflict.

According to the DCIS investigative report, you admitted to requesting DoD SAPCO Joint Access Database Enterprise (JADE) accounts for your spouse and other ████████████████ employees while acting in your official capacity as the Director of Security. On January 17, 2019, you electronically approved and submitted a request to DoD SAPCO for the creation of a JADE account for your spouse. You told the investigator that you did not believe your actions were inappropriate but would never do it again.

As part of the DCIS investigation, DCIS agents obtained and reviewed your U.S. Navy unclassified and CNET classified e-mails. According to the report, your e-mails showed that as early as 2015, you misused your position, failed to separate personal and business relationships, and disregarded your obligation to abide by the ethical standards expected of a government employee.

For instance, on September 1, 2015, you requested that the Senior Security Manager check on the status of your spouse's Program Access Request (PAR). In a September 16, 2015, e-mail exchange between you and your spouse regarding his PAR status, you told your spouse his PAR was at N89. Your spouse said to you, "Fyi I think this constitutes direction from a government superior." In response, you wrote, "Lol…I can't call and expedite PARs for my family :-)."

THE CONTENTS OF THIS DOCUMENT ARE PROTECTED UNDER THE PRIVACY ACT OF 1974

Updated on: 20231005

DCIS interviewed an employee copied on the e-mail exchange. He described his relationship with you as predominately personal in nature and your spouse as a friend and work colleague. He explained that he and your spouse typically would not have reached out to you for assistance in getting this type of access request moving; however, he stated they were trying to "move bureaucracy along." The employee further explained that the usual process for getting a PAR through the system involved routing the request through the OPNAV Special Programs Division (N89). The employee stated this process was inefficient so on occasion, he and your spouse would go to you to try to expedite the paperwork. The employee added that in the position he held at that time, he was able to facilitate the submission of PARS but was not involved in processing the PARS. Hence, he required your assistance.

According to the DCIS report, in April 2016, you assisted your spouse using your official position. Your spouse asked you to check if ███████████ had a Facility Clearance (FCL), and if you could not check, if you would find someone who could. You were asked how many times you executed database checks using U.S. government computer systems for your spouse. You acknowledged executing database checks for your spouse but did not provide a specific number of instances. You reported accessing U.S. government computer systems to find out your spouse's security clearance access date. You acknowledged that the ██████████ FSO could do this as part of his industrial security duties. You rationalized running database checks for your spouse as something you would do for other companies and personnel. As such, you did not believe you were doing anything wrong, nor were you doing a favor for your spouse. In retrospect, you acknowledged you should not have conducted these checks.

On October 12, 2022, your supervisor suspended you from work and suspended your access to SAPs.

According to the DCIS report, you misused your position, failed to separate personal and business relationships, and disregarded your obligation to abide by the ethical standards expected of a government employee. The investigation found that you were involved with the SAP access determination of your spouse's employee, even after you acknowledged your conflict; you used your official position to expedite the approval process for your spouse's PAR, and you ran database checks using U.S. Government computer systems for your spouse, which you acknowledge you should not have due to your personal relationship.  You admitted during your DCIS interview that you used your official position to help your husband and his company. The report revealed that you failed to recuse yourself from matters in which you had a personal financial interest and failed to seek guidance or report all perceived or actual conflicts of interest to your supervisor or DoN attorneys. DCIS found that your financial interests conflicted with the conscientious performance of your duties; you failed to act impartially and gave preferential treatment to a private entity. Your behavior reflects questionable judgment and an unwillingness to comply with rules and regulations, which raises questions about your reliability, trustworthiness, and ability to protect classified or sensitive information. Therefore, your personal conduct is a security concern. (Guideline E, Attachment 6)

THE CONTENTS OF THIS DOCUMENT ARE PROTECTED UNDER THE PRIVACY ACT OF 1974

Updated on: 20231005

**List of Pertinent Documents**

Defense Information System for Security, Incident Report, December 7, 2022

Department of Defense Inspector General, Defense Criminal Investigative Service, Report of Investigation, #2019002173-80SI-B0/F, October 26, 2022

THE CONTENTS OF THIS DOCUMENT ARE PROTECTED UNDER THE PRIVACY ACT OF 1974

Updated on: 20231005

## **Statement of Reasons Receipt and Statement of Intent (Subject)**

I, Ms. Kristina A. Glines, ▮▮▮▮▮▮▮ acknowledge that I have received the Statement of Reasons (SOR) notifying me of the Defense Counterintelligence and Security Agency Consolidated Adjudication Services' preliminary decision to revoke my eligibility for access to classified information, assignment to duties that have been designated national security sensitive, and access to Sensitive Compartmented Information (SCI). I understand that this form must be returned to my organization's Security Management Office (SMO) or SCI SMO within ten (10) calendar days.

I will (select one):

☐  NOT submit a reply to the SOR. I understand that by making this choice, this preliminary decision will become a final determination based on the merits of the available information.

☐  Submit a response via my organization's SMO or SCI SMO within sixty (60) calendar days of the date I acknowledged receipt of the SOR. I understand that if my response is not received by the SMO or SCI SMO within the sixty (60) calendar days, or later date as provided in a valid extension of time, this preliminary decision will become a final determination based on the merits of the available information.

_____    _____
(Signature)                                    (Date)

THE CONTENTS OF THIS DOCUMENT ARE PROTECTED UNDER THE PRIVACY ACT OF 1974

Updated on: 20231005

## **Statement of Reasons Receipt and Statement of Intent (SMO)**
Ms. Kristina A. Glines, ██████████

TO BE COMPLETED BY THE ORGANIZATION'S SMO or SCI SMO

This organization verifies the Statement of Reasons (SOR) package was delivered to Subject on
_____/_____/_____.

The following action(s) will be taken (Select all that apply):

☐ Subject declared his/her intent NOT to sign the SOR Receipt and Statement of Intent form.

☐ Subject elected NOT to submit a reply to the SOR

☐ Subject will respond to the SOR.

    ☐ The organization has not granted an extension to the subject.

    ☐ The organization has granted an extension until _____/_____/_____ (not to exceed 60 days from the date of receipt of the SOR)

_____
Organization's SMO/SCI SMO (Print & Sign Name)          (Date)

_____
Witness (Print & Sign Name) (Required if Subject refuses to sign form)          (Date)

THE CONTENTS OF THIS DOCUMENT ARE PROTECTED UNDER THE PRIVACY ACT OF 1974

Updated on: 20231005

»

# REQUEST for RECORDS
## DCSA – Investigations

**Please EXPEDITE to assist in responding to a DCSA CAS Statement of Reasons (SOR).**

**Defense Counterintelligence and Security Agency (DCSA)**
**Attn: FOI/PA Office for Investigations**
**P.O. Box 618; 1137 Branchton Road**
**Boyers, PA 16018-0618**

Email: dcsa.boyers.dcsa.mbx.inv-foip@mail.mil

To request a copy of DCSA investigation records (formerly known as NBIB-OPM), **complete this form** and provide copies of **two (2) identity source documents**, to the DCSA Boyers FOI/PA office. You may submit your request via mail to the address above, or submit via e-mail to the e-mail address above using scanned attachments.

- Visit the DCSA FOI/PA Office for Investigations website ("Completed Investigations" tab) to view a list of acceptable forms of identity source documents at:
  https://www.dcsa.mil/mc/pv/mbi/mr/

- If submitting via e-mail, you should ensure that the security of your e-mail system is adequate for transmitting your sensitive personally identifiable information (PII) before choosing to transmit your request.

**Description of Records Being Sought:** *I request a copy of records pertaining to me, specified below, which are maintained by the DCSA. These documents are needed to assist in responding to a Statement of Reasons (SOR) issued by DCSA CAS.*

## Requested Records:

**List the Investigation Case # provided via DCSA CAS SOR Pertinent Documents page.**

*OPM or DCSA Case #*: _____

*OPM or DCSA Case #*: _____

## My Identifying Information:

Full Name: _____

Date of Birth: _____ Place of Birth: _____

Full Social Security Number: _____
**Page 1 of 2**

THE CONTENTS OF THIS DOCUMENT ARE PROTECTED UNDER THE PRIVACY ACT OF 1974

Updated on: 20231005

**Please send the requested records to me via (select one):**

**(    ) Hardcopy Mail (physical address required):**

_____

_____

_____

**(    ) E-Mail (e-mail address required):** _____

> *"I declare under penalty of perjury under the laws of the United States of America that the foregoing information [concerning my identity] is true and correct."*

_____          _____

Handwritten  Signature  (required)                              Date

**Privacy Act Advisement:** Requesting personal information which includes your Social Security  Number is authorized by 5 USC Sec. 552a (*Privacy Act of 1974*).  Information provided herein is  used to identify and retrieve records pertaining to you.  Providing all or part of the information  is voluntary; however, without it, the above agency may not be able to identify your records.  This information may be retained and/or released to other agencies under Routine Use.

**Authority:**  E.O. 12968, Access to Classified Information, and the Department of Defense (DoD) Manual 5200.02, *Procedures for the DoD Personnel Security Program.*

**Page 2 of 2**

THE CONTENTS OF THIS DOCUMENT ARE PROTECTED UNDER THE PRIVACY ACT OF 1974

Updated on: 20231005

# REQUEST for RECORDS
## DCSA – Consolidated Adjudication Services

To request a copy of **your employing agency/military command personnel security records; your medical records; continuous evaluation incident reports and credit reports obtained by Vetting Risk Operations (VRO), and/or DCSA CAS**, please complete this form and mail to:

**Defense Counterintelligence and Security Agency (DCSA)**
**Attn: FOI/PA Office for Adjudications**
**600 10th Street**
**Fort George G. Meade, MD 20755-5131**

**Encrypted Email Only**: dcsa.meade.caf.mbx.privacy-act@mail.mil

**Note:** To encrypt to this email address using your CAC card, please select the "DCSA Ft Meade CAF Mailbox Privacy Act" email address from the Global Address List (GAL), rather than the local default list.

**Privacy Act Advisement:** Requesting personal information which includes your Social Security Number is authorized by 5 USC Sec. 552a (*Privacy Act of 1974*). Information provided herein is used to identify and retrieve records pertaining to you. Providing all or part of the information below is voluntary; however, without it, the DCSA CAS may not be able to identify your records. This information may be retained and/or released to other agencies under Routine Use.

**Authority:** E.O. 12968, Access to Classified Information; Department of Defense (DoD) Manual 5200.02, *Procedures for the DoD Personnel Security Program,* April 3, 2017.

**Description of Records:** Under the provisions of the *Privacy Act*, and to respond to a Statement of Reasons (SOR) issued by DCSA CAS, I hereby request a copy of record(s) pertaining to me, which DCSA CAS relied upon in its preliminary decision to deny/revoke my security eligibility.

**Required Personally Identifiable Information is provided as follows:**

Social Security Number: _____

Full Name: _____

Other Names Used: _____

Date of Birth: _____ Place of Birth: _____

**Page 1 of 2**

THE CONTENTS OF THIS DOCUMENT ARE PROTECTED UNDER THE PRIVACY ACT OF 1974

Updated on: 20231005

**Please mail my file to (physical mailing address):**

_____

_____


**E-mail address:**

_____

*"I declare under penalty of perjury under the laws of the United States of America that the foregoing information [concerning my identity] is true and correct."*


_____    _____
Handwritten or CAC eSignature (required)        Date (required)


**Page 2 of 2**

THE CONTENTS OF THIS DOCUMENT ARE PROTECTED UNDER THE PRIVACY ACT OF 1974

Updated on: 20231005

# REQUEST for RECORDS

DoD IG FOIA Requester Service Center
Attn: FOIA/PA Chief, Suite 17F18
4800 Mark Center Drive
Alexandria, VA 22350-1500

To request a copy of pertinent records from the above named agency, please provide a photocopy of <u>your picture ID</u>, along with this completed form and mail to the above address.

**Privacy Act Advisement:** Requesting personal information which includes your Social Security Number is authorized by 5 USC Sec. 552a (*Privacy Act of 1974*). Information provided herein is used to identify and retrieve records pertaining to you. Providing all or part of the information below is voluntary; however, without it, the above agency may not be able to identify your records. This information may be retained and/or released to other agencies under Routine Use.

**Authority:** E.O. 12968, Access to Classified Information; Department of Defense (DoD) Manual 5200.02, *Procedures for the DoD Personnel Security Program (PSP),* April 3, 2017.

**Description of Records:** Under the provisions of the Privacy Act, and to respond to a Statement of Reasons (SOR) issued by the Defense Counterintelligence and Security Agency Consolidated Adjudication Services
**I hereby request a copy of the following records (<u>fill in pertinent records description below</u>):**
_____
_____

**Identifying information is provided as follows:**

Social Security Number:_____

Full Name:_____

Other Names Used:_____

Date of Birth:_____Place of Birth:_____

**Please mail my file to (<u>physical address required</u>):**

_____

_____

Government e-mail address (.mil or .gov): _____

*"I declare under penalty of perjury under the laws of the United States of America that the foregoing information [concerning my identity] is true and correct."*

_____     _____
**Handwritten or CAC eSignature (required)          Date**

THE CONTENTS OF THIS DOCUMENT ARE PROTECTED UNDER THE PRIVACY ACT OF 1974

Updated on: 20231005

## Instructions for Responding to a Statement of Reasons

1.  The Statement of Reasons (SOR) is based on unfavorable information revealed in investigation(s) into your personal history, and/or received through other means, such as your organization's security office. Specific security concerns about your conduct or background are listed in the SOR.

2.  These instructions are intended to help you provide the most accurate and relevant information as to why the preliminary decision should be reversed. However, it is only a guide. You should provide whatever information you wish to be considered by DCSA CAS in reaching a final decision.

3.  If you decide to challenge the preliminary decision, you should address each area of security concern listed in the SOR as completely as possible. It is in your best interest to provide a timely response, including complete and accurate information with pertinent details and supporting documentation.

    a.  Preparing your response

        (1) The SOR package and these instructions provide specific requirements and deadlines for compliance. You should carefully read the SOR to determine if the findings are accurate and whether there are circumstances that were not included which might have a favorable bearing in your case.

        (2) On the *Statement of Reasons Receipt and* Statement of Intent attached to the SOR, you must notify the DCSA CAS, via your organization's Security Management Office (SMO) and/or Sensitive Compartmented Information (SCI) SMO, within ten (10) calendar days as to whether you intend to respond. If you choose to respond, your response must be submitted to your SMO and/or SCI SMO within thirty (30) calendar days from the date you received the SOR unless you requested and were granted an extension of time.

        (3) If you choose to respond, you should gather any documentation that supports your case. Your response and supporting documentation should be organized in the same order as the security concerns presented in the SOR. The documents that have the most impact will be those that refute, correct, explain, extenuate, mitigate, or update the unfavorable information presented in the SOR. Examples of documentation include: copies of court records with details or dispositions of arrests and status of probation; transcripts of court testimony taken under oath; probation reports; copies of negotiated plea bargains; releases from judgment or wage attachment; statements of account or letters from creditors verifying the status of delinquent accounts; receipts or copies of canceled checks for payment on debts; certificates of completion for alcohol/drug abuse rehabilitation programs; etc. Mere statements such as "I didn't do it," "It wasn't my fault," or "I paid those bills" will not carry as much weight as supporting documentation. You may provide statements from co-workers, supervisors, your commander, friends, neighbors, and others concerning your judgment, reliability and trustworthiness, and any other information that you think should be considered before a final decision is made.

THE CONTENTS OF THIS DOCUMENT ARE PROTECTED UNDER THE PRIVACY ACT OF 1974

Updated on: 20231005

(4) Seek assistance from your local security office on this matter. By separate memorandum, your SMO has been requested to provide any assistance you need in understanding this process. If they cannot answer your questions, they can request assistance from higher authority. The process is designed so Subjects can represent themselves. You may obtain legal counsel or other assistance in preparing your response; however, if you obtain private assistance, it must be obtained at your own expense. Remember it is up to you to decide whether to respond or not. You are responsible for the substance of your response, and it must be signed by you.

b. Writing your response

(1) Your response should be submitted in writing, via your SMO and/or Sensitive Compartmented Information (SCI) SMO, to DCSA CAS. It must be submitted before the expiration of the response deadline. You should address each item cited in the SOR separately. You should also admit or deny each item in the SOR and provide an explanation for each response.

(2) Attach all supporting documentation, to include any available documentation that explains, refutes, corrects, extenuates, mitigates, or updates each item cited in the SOR. Organize supporting documents in the order that they are cited in your response and enclose copies with your response. You may use dividers or tabs to help you assemble the supporting documentation in order.

(3) The impact of your response will depend on the extent to which you can specifically refute, correct, extenuate, mitigate, or update security concerns cited in the SOR. If you believe that the unfavorable information in the SOR presents an incomplete picture of the situation or circumstances, you should provide information that explains your case. Bear in mind that the information you provide will be considered, but it also may be verified through additional investigation.

(4) The National Security Adjudicative Guideline(s) pertinent to security concerns in your case are listed in Attachment 5. The guideline(s) provide a framework for weighing all available information, both favorable and unfavorable that is of security concern. The Guideline(s) aid in making a common-sense decision based upon all that is known about a Subject's personal history.

(5) When you have completed your written response, ensure you sign and date it. Place your response and supporting documents in a single envelope or package and forward to DCSA CAS, via your organization's SMO and/or SCI SMO. Be sure to meet the time deadline for submission. When a final decision is made, you will be notified in writing, via your organization's SMO and/or SCI SMO. If the decision is favorable, your access eligibility will be granted or restored. If not, you may appeal the decision to higher authority.

THE CONTENTS OF THIS DOCUMENT ARE PROTECTED UNDER THE PRIVACY ACT OF 1974

Updated on: 20231005

## NATIONAL SECURITY ADJUDICATIVE GUIDELINES
## FOR DETERMINING ELIGIBILITY FOR ACCESS TO CLASSIFIED INFORMATION
## OR ELIGIBILITY TO HOLD A SENSITIVE POSITION

1. Introduction.

(a) The following National Security Adjudicative Guidelines ("guidelines") are established as the single common criteria for all U.S. Government civilian and military personnel, consultants, contractors, licensees, certificate holders or grantees and their employees, and other individuals who require initial or continued eligibility for access to classified information or eligibility to hold a sensitive position, to include access to sensitive compartmented information, restricted data, and controlled or special access program information (hereafter referred to as "national security eligibility"). These guidelines shall be used by all Executive Branch Agencies when rendering any final national security eligibility determination.

(b) National security eligibility determinations take into account a person's stability, trustworthiness, reliability, discretion, character, honesty, and judgment. Individuals must be unquestionably loyal to the United States. No amount of oversight or security procedures can replace the self-discipline and integrity of an individual entrusted to protect the nation's secrets or occupying a sensitive position. When a person's life history shows evidence of unreliability or untrustworthiness, questions arise as to whether the individual can be relied upon and trusted to exercise the responsibility necessary for working in an environment where protecting the national security is paramount.

(c) The U.S. Government does not discriminate on the basis of race, color, religion, sex, national origin, disability, or sexual orientation in making a national security eligibility determination. No negative inference concerning eligibility under these guidelines may be raised solely on the basis of mental health counseling. No adverse action concerning these guidelines may be taken solely on the basis of polygraph examination technical calls in the absence of adjudicatively significant information.

(d) In accordance with EO 12968, as amended, eligibility for covered individuals shall be granted only when facts and circumstances indicate that eligibility is clearly consistent with the national security interests of the United States, and any doubt shall be resolved in favor of national security.

2. The Adjudicative Process.

(a) The adjudicative process is an examination of a sufficient period and careful weighing of a number of variables of an individual's life to make an affirmative determination that the individual is an acceptable security risk. This is known as the whole-person concept. All available, reliable information about the person, past and present, favorable, and unfavorable, should be considered in reaching a national security eligibility determination.

(b) Each case must be judged on its own merits, and the final determination remains the responsibility of the authorized adjudicative agency. Any doubt concerning personnel being considered for national security eligibility will be resolved in favor of the national security.

THE CONTENTS OF THIS DOCUMENT ARE PROTECTED UNDER THE PRIVACY ACT OF 1974

Updated on: 20231005

(c) The ultimate determination of whether the granting or continuing of national security eligibility is clearly consistent with the interests of national security must be an overall common sense judgment based upon careful consideration of the following guidelines, each of which is to be evaluated in the context of the whole person.

    (1) GUIDELINE A: Allegiance to the United States
    (2) GUIDELINE B: Foreign Influence
    (3) GUIDELINE C: Foreign Preference
    (4) GUIDELINE D: Sexual Behavior
    (5) GUIDELINE E: Personal Conduct
    (6) GUIDELINE F: Financial Considerations
    (7) GUIDELINE G: Alcohol Consumption
    (8) GUIDELINE H: Drug Involvement and Substance Misuse
    (9) GUIDELINE I: Psychological Conditions
  (10) GUIDELINE J: Criminal Conduct
  (11) GUIDELINE K: Handling Protected Information
  (12) GUIDELINE L: Outside Activities
  (13) GUIDELINE M: Use of Information Technology

(d) In evaluating the relevance of an individual's conduct, the adjudicator should consider the following factors:

    (1) the nature, extent, and seriousness of the conduct;
    (2) the circumstances surrounding the conduct, to include knowledgeable participation;
    (3) the frequency and recency of the conduct;
    (4) the individual's age and maturity at the time of the conduct;
    (5) the extent to which participation is voluntary;
    (6) the presence or absence of rehabilitation and other permanent behavioral changes;
    (7) the motivation of the conduct;
    (8) the potential for pressure, coercion, exploitation, or duress; and
    (9) the likelihood of continuation or recurrence.

(e) Although adverse information concerning a single criterion may not be sufficient for an unfavorable eligibility determination, the individual may be found ineligible if available information reflects a recent or recurring pattern of questionable judgment, irresponsibility, or unstable behavior. However, a single criterion may be sufficient to make an unfavorable eligibility determination even in the absence of a recent occurrence or a recurring pattern. Notwithstanding the whole-person concept, pursuit of further investigation may be terminated by an appropriate adjudicative agency in the face of reliable, significant, disqualifying, adverse information.

THE CONTENTS OF THIS DOCUMENT ARE PROTECTED UNDER THE PRIVACY ACT OF 1974

Updated on: 20231005

(f) When information of security concern becomes known about an individual who is currently eligible for access to classified information or eligible to hold a sensitive position, the adjudicator should consider whether the individual:

(1) voluntarily reported the information;
(2) was truthful and complete in responding to questions;
(3) sought assistance and followed professional guidance, where appropriate;
(4) resolved or appears likely to favorably resolve the security concern;
(5) has demonstrated positive changes in behavior; and
(6) should have his or her national security eligibility suspended pending final adjudication of the information.

(g) If after evaluating information of security concern, the adjudicator decides the information is serious enough to warrant a recommendation of denial or revocation of the national security eligibility, but the specific risk to national security can be managed with appropriate mitigation measures, an adjudicator may recommend approval to grant initial or continued eligibility for access to classified information or to hold a sensitive position with an exception as defined in Appendix C [of Security Executive Agent Directive 4, National Security Adjudicative Guidelines, signed December 10, 2016, effective June 8, 2017].

(h) If after evaluating information of security concern, the adjudicator decides that the information is not serious enough to warrant a recommendation of denial or revocation of the national security eligibility, an adjudicator may recommend approval with a warning that future incidents of a similar nature or other incidents of adjudicative concern may result in revocation of national security eligibility.

(i) It must be noted that the adjudicative process is predicated upon individuals providing relevant information pertaining to their background and character for use in investigating and adjudicating their national security eligibility. Any incident of intentional material falsification or purposeful non-cooperation with security processing is of significant concern. Such conduct raises questions about an individual's judgment, reliability, and trustworthiness and may be predictive of their willingness or ability to protect national security.

THE CONTENTS OF THIS DOCUMENT ARE PROTECTED UNDER THE PRIVACY ACT OF 1974

Updated on: 20231005

**Applicable National Security Adjudicative Guidelines**

The relevant national security adjudicative guidelines as published in the *Security Executive Agent Directive 4, National Security Adjudicative Guidelines, December 10, 2016 (Effective June 8, 2017)* for each area of security concern are attached. Please be aware that each Guideline criteria may not be applicable to your case.

**GUIDELINE E: PERSONAL CONDUCT**

*The Concern*. Conduct involving questionable judgment, lack of candor, dishonesty, or unwillingness to comply with rules and regulations can raise questions about an individual's reliability, trustworthiness, and ability to protect classified or sensitive information. Of special interest is any failure to cooperate or provide truthful and candid answers during national security investigative or adjudicative processes. The following will normally result in an unfavorable national security eligibility determination, security clearance action, or cancellation of further processing for national security eligibility:

(a) refusal, or failure without reasonable cause, to undergo or cooperate with security processing, including but not limited to meeting with a security investigator for subject interview, completing security forms or releases, cooperation with medical or psychological evaluation, or polygraph examination, if authorized and required; and

(b) refusal to provide full, frank, and truthful answers to lawful questions of investigators, security officials, or other official representatives in connection with a personnel security or trustworthiness determination.

*Conditions that could raise a security concern and may be disqualifying include:*

(a) deliberate omission, concealment, or falsification of relevant facts from any personnel security questionnaire, personal history statement, or similar form used to conduct investigations, determine employment qualifications, award benefits or status, determine national security eligibility or trustworthiness, or award fiduciary responsibilities;

(b) deliberately providing false or misleading information; or concealing or omitting information, concerning relevant facts to an employer, investigator, security official, competent medical or mental health professional involved in making a recommendation relevant to a national security eligibility determination, or other official government representative;

(c) credible adverse information in several adjudicative issue areas that is not sufficient for an adverse determination under any other single guideline, but which, when considered as a whole, supports a whole-person assessment of questionable judgment, untrustworthiness, unreliability, lack of candor, unwillingness to comply with rules and regulations, or other characteristics indicating that the individual may not properly safeguard classified or sensitive information;

THE CONTENTS OF THIS DOCUMENT ARE PROTECTED UNDER THE PRIVACY ACT OF 1974

Updated on: 20231005

(d) credible adverse information that is not explicitly covered under any other guideline and may not be sufficient by itself for an adverse determination, but which, when combined with all available information, supports a whole-person assessment of questionable judgment, untrustworthiness, unreliability, lack of candor, unwillingness to comply with rules and regulations, or other characteristics indicating that the individual may not properly safeguard classified or sensitive information. This includes, but is not limited to, consideration of:

    (1) untrustworthy or unreliable behavior to include breach of client confidentiality, release of proprietary information, unauthorized release of sensitive corporate or government protected information;

    (2) any disruptive, violent, or other inappropriate behavior;

    (3) a pattern of dishonesty or rule violations; and

    (4) evidence of significant misuse of Government or other employer's time or resources;

(e) personal conduct, or concealment of information about one's conduct, that creates a vulnerability to exploitation, manipulation, or duress by a foreign intelligence entity or other individual or group. Such conduct includes:

    (1) engaging in activities which, if known, could affect the person's personal, professional, or community standing;

    (2) while in another country, engaging in any activity that is illegal in that country; and

    (3) while in another country, engaging in any activity that, while legal there, is illegal in the United States;

(f) violation of a written or recorded commitment made by the individual to the employer as a condition of employment; and

(g) association with persons involved in criminal activity.


*Conditions that could mitigate security concerns include:*

(a) the individual made prompt, good-faith efforts to correct the omission, concealment, or falsification before being confronted with the facts;

(b) the refusal or failure to cooperate, omission, or concealment was caused or significantly contributed to by advice of legal counsel or of a person with professional responsibilities for advising or instructing the individual specifically concerning security processes. Upon being made aware of the requirement to cooperate or provide the information, the individual cooperated fully and truthfully;

(c) the offense is so minor, or so much time has passed, or the behavior is so infrequent, or it happened under such unique circumstances that it is unlikely to recur and does not cast doubt on the individual's reliability, trustworthiness, or good judgment;

(d) the individual has acknowledged the behavior and obtained counseling to change the behavior or taken other positive steps to alleviate the stressors, circumstances, or factors that contributed to untrustworthy, unreliable, or other inappropriate behavior, and such behavior is unlikely to recur;

(e) the individual has taken positive steps to reduce or eliminate vulnerability to exploitation, manipulation, or duress;

(f) the information was unsubstantiated or from a source of questionable reliability; and

(g) association with persons involved in criminal activities was unwitting, has ceased, or occurs under circumstances that do not cast doubt upon the individual's reliability, trustworthiness, judgment, or willingness to comply with rules and regulations.


THE CONTENTS OF THIS DOCUMENT ARE PROTECTED UNDER THE PRIVACY ACT OF 1974

Updated on: 20231005

**Statement of Reasons Receipt and Statement of Intent (SMO)**
Ms. Kristina A. Glines, █████████████

## TO BE COMPLETED BY THE ORGANIZATION'S SMO or SCI SMO

This organization verifies the Statement of Reasons (SOR) package was delivered to Subject on
__2__ / __28__ / __2024__ .

The following action(s) will be taken (Select all that apply):

☐ Subject declared his/her intent NOT to sign the SOR Receipt and Statement of Intent form.

☐ Subject elected NOT to submit a reply to the SOR

☑ Subject will respond to the SOR.

    ☑ The organization has not granted an extension to the subject.

    ☐ The organization has granted an extension until _____/_____/_____ (not to exceed
    60 days from the date of receipt of the SOR)


MARSHALL, LASHON A.          MARSHALL.LASHON.ALLEN (b)(6)   3/5/2024
Organization's SMO/SCI SMO (Print & Sign Name)          (Date)


Witness (Print & Sign Name) (Required if Subject refuses to sign form)          (Date)

THE CONTENTS OF THIS DOCUMENT ARE PROTECTED UNDER THE PRIVACY ACT OF 1974

## Statement of Reasons Receipt and Statement of Intent (Subject)

I, Ms. Kristina A. Glines, ⬛⬛⬛⬛⬛ acknowledge that I have received the Statement of Reasons (SOR) notifying me of the Defense Counterintelligence and Security Agency Consolidated Adjudication Services' preliminary decision to revoke my eligibility for access to classified information, assignment to duties that have been designated national security sensitive, and access to Sensitive Compartmented Information (SCI). I understand that this form must be returned to my organization's Security Management Office (SMO) or SCI SMO within ten (10) calendar days.

I will (select one):

☐  NOT submit a reply to the SOR. I understand that by making this choice, this preliminary decision will become a final determination based on the merits of the available information.

☒  Submit a response via my organization's SMO or SCI SMO within sixty (60) calendar days of the date I acknowledged receipt of the SOR. I understand that if my response is not received by the SMO or SCI SMO within the sixty (60) calendar days, or later date as provided in a valid extension of time, this preliminary decision will become a final determination based on the merits of the available information.

_____          3/4/24
(Signature)                                  (Date)

THE CONTENTS OF THIS DOCUMENT ARE PROTECTED UNDER THE PRIVACY ACT OF 1974

Updated on: 20231005

# EXHIBIT S



March 22, 2024

Defense Counterintelligence and Security Agency
ATTN: Office of General Counsel,
27130 Telegraph Road
Quantico, VA 22134-2253

Re:      Appeal of FOIA DCSA-M 24-02177

Dear DCSA FOIA Appellate Authority,

We are in receipt of the DCSA FOIA response for DCSA-M 24-02177.  It purports to be both a response to a November 2, 2023 FOIA request and the March 11 request to expedite the review of materials DCSA relied upon in issuing its preliminary decision to revoke Ms. Glines' security eligibility.   The dates cited in the response are incorrect:  the FOIA request was dated November 20, 2023, and the SOR Records request and request to expedite was submitted on March 1, 2024 and confirmed received by DCSA on March 7, 2024.

In its response, DCSA stated that it looked for the following materials:

- Video recording of DCIS interview dated October 12, 2022
- All materials relating to the DOD IG and DCIS investigation of Blue Sky Innovators, Inc, to range from May 1, 2021 to January 1, 2023.
- All documents, Information, opinions, guidance, advice, notes, records, recordings, interviews, emails, text messages, and conclusions relating to the DOD IG, DCIS, DCSA, DCIS and Navy investigations to range from December 2021 through present.
- The final report by former Agent Peter Rozman, and Agent Brian Futagaki in the range of October 2022 to January 2023.

See DCSA Response for DCSA-M 24-02177, dated March 20, 2024.  This bulleted list does not accurately reflect the FOIA request DCSA-M 24-02177.  The second bullet, reprinted above, incorrectly truncated our responsive date range from **April 1, 2021** to January 1, 2023 to May 1, 2021 to January 2023.  Further, the third bullet point contains two errors:  first, it does not mention that the request included documents, information, opinions, guidance, advice, notes, records, recordings, interviews, emails, text messages, and conclusions relating to "the

investigation of Ms. Glines." This error—which leaves the subject of the investigation out of the search-- likely leads to an overly-broad search with few, if any, documents responsive to the actual request. Second, this bullet point is also incorrectly truncated. The actual request sought documents beginning in May 2019, but the bullet point discussed in the response truncated the search to a date range beginning in December 2021, 19 months shorter than the requested search period. The bulleted list, even giving allowance for its errors, does not encompass all the materials requested, and we have concerns that DCSA did not perform a search, much less a complete and full search, for the full range of materials requested under the November 20, 2023 FOIA request. The November 20, 2023 FOIA request also requested the following items:

> (d) Information, emails, text messages, notations, or other documents in which the report discussed in [the final Rozman/Futagaki report], was shared within the Navy, DCSA, DoD IG, or other Government agencies. These documents would be dated from October 2022 to the present.

> (e) The interview notes, impressions, conclusions, and documentation of all interviews conducted in relation to the DOD and DCSA investigation of Ms. Glines. These email, text messages, and documents would be dated in the range of December 2021 through January 2023.

> (f) All DOD, DCSA, DOD IG and DCIS requests for opinions, guidance, advice, or direction on the ethical matters pertaining to Ms. Glines. These documents would be dated from 2021 to the present.

> (g) All information pertaining to the security review of Ms. Glines stemming from the DOD IG and DCIS investigation; including documentation of whether (and if so, how) DCSA, DOD IG, and DCIS staff informed any Navy action under procedural requirements of DODM 5200.02 and other applicable laws and regulations, from December 2021 to the present.

Given that no emails, text messages, or notes\ were received, it seems unlikely that this was a full search for responsive materials. This conclusion is bolstered by the fact that the response contains only a handful of documents which Ms. Glines does not already possess, and those documents were heavily redacted. We request that DCSA perform a full search for all requested materials, and tell us which databases and/or document repositories it searched in coming to these results.

Further, an additional Request for Records was submitted in addition to the FOIA Request—and sought records which the "DCSA CAS relied upon in its preliminary decision to deny/revoke [Ms. Glines'] security eligibility." We are disappointed that DCSA has forced us into the FOIA paradigm to request records Ms. Glines requires in order to defend herself in an administrative proceeding. This administrative proceeding is tantamount to litigation before an agency. By invoking the FOIA exemption (b)(5), the DCSA CAS attempts to deny Ms. Glines, the aggrieved party, the ability to overcome an assertion of privilege and exercise her Due Process rights under statutes and regulations. Importantly, the opportunity to prove need and overcome qualified privileges would be otherwise available to parties in litigation who are not forced into the FOIA paradigm. Thus, by treating this administrative proceeding Records Request as a FOIA request, the DCSA CAS is depriving Ms. Glines of documents and information that are both relevant and

necessary in the administrative proceeding. Please see the DOJ FOIA Manual for the official position of the United States-

> It is important to bear in mind a difference between the application of privileges in civil discovery and in the FOIA context. In the former, the use of qualified privileges may be overcome by a showing of relevance or need by an opposing party. In the FOIA context, however, the Supreme Court has held that the standard to be employed is whether the documents would "routinely be disclosed" in civil litigation. By definition, documents for which a party would have to make a showing of need are not routinely disclosed and thus do not fall into this category. As a result, in the FOIA context there is no difference between qualified and absolute privileges, and courts do not take into account a party's need for the documents in ruling on a privilege's applicability.[1]

The intent of Exemption 5 is to prevent the FOIA from being used to backdoor normal discovery rules, not to deny access to materials otherwise accessible to those who need them in order for justice to function.  By shoe-horning SOR discovery under the FOIA, DCSA is denying Ms. Glines material to which she is otherwise entitled. Despite the DCSA response to the SOR request, Ms. Glines still has none of the substantive materials upon which the DCSA CAS preliminary decision relies, and which is specifically requested in the form SOR request, which DCSA itself generated.

Indeed, DOD Manual 5200.02, Paragraph 10.2, is titled "MINIMUM DUE PROCESS REQUIREMENTS APPLICABLE TO ALL," and instructs that any individual facing an unfavorable national security eligibility determination is entitled to "[r]equest the documents, records, and reports upon which the unfavorable national security determination was made." DOD policy on due process requirements mirrors the requirements of Executive Order 12986.[2] None of those rights are abrogated by FOIA Exemptions.[3]  DOD Policy is consistent with Ms. Glines' Due Process Rights under the U.S. Constitution, Federal Law, and Executive Order.  We are hereby appealing the denial, and referral to other agencies (as opposed to submitting the materials under DOD policy and federal law), complete copies of any and all documents relating to the SOR, including but not limited to our request for:

- any continuous evaluation incident reports pertaining to Ms. Glines,
- Any OPNAV personnel security records pertaining to Ms. Glines; and
- Those materials listed under "List of Pertinent Documents" and which the CAS relied upon in their decision making:

---

[1] Exemption 5 (justice.gov), at numbered page 358.
[2] Executive Order 12986, section 5.2(a)(3) states that individuals have the right to "**request any documents, records, and reports as described in section 5.2(a)(2) upon which a denial or revocation is based; and to request the entire investigative file**, as permitted by national security and other applicable law, which**, if requested, shall be promptly provided** prior to the time set for a written reply".
[3] The only justification provided in the Manual for not providing the entire file supporting the eligibility determination is where a "**DoD Component head or principal deputy personally certifies that a procedure in this section cannot be made available in a particular case without damaging the national security interests of the United States** by revealing classified information.  See DODM 5200.02 paragraph 10.2(h).  This is a high standard; absent a Certification from a DOD Component head or principal deputy alleging a national security concern with release of the requested materials, we should have received full copies of the subject files.

- o  Defense Information System for Security, Incident Report, December 7, 2022; and
- o  Department of Defense Inspector General, Defense Criminal Investigative Service, Report of Investigation, #2019002173-80SI-B0/F, October 26, 2022.

Consistent with our documented compelling need for these materials on an expedited basis for the original FOIA request under 32 CFR 286.8(e)(ii)(A) and the EO 12986 requirement that the materials we requested be "promptly provided," we continue to request these documents on an expedited basis due to the need to respond to the SOR. Please provide these documents in their entirety and in an unredacted format.

Finally, for any documents denied or redacted under FOIA, we respectfully request a Vaughn Index and Privilege Log so we can evaluate whether the parties might be able to resolve this matter without involving a Federal Court.

Respectfully,

Robert J. Sander, Partner
The Sander Group, PLLC
6618 St. Marks Court
Alexandria, VA 22306
(703) 459-0442
rsander@sandergroup.org

cc: Ms. Kristina Glines

# EXHIBIT T



**DEFENSE COUNTERINTELLIGENCE AND SECURITY AGENCY**
27130 TELEGRAPH ROAD
QUANTICO, VA 22134-2253

March 26, 2024

Mr. Robert J. Sander, Partner
The Sander Group, PLLC
6618 St. Marks Court
Alexandria, VA 22306

Re: Glines, Kristina A.

Dear Mr. Sander:

We received your March 22, 2024, appeal of the response made by the Freedom of Information and Privacy Office for Adjudications regarding the Privacy Act Request submitted on behalf of your client (DCSA-M 24-02177). We are reviewing your appeal and will respond as soon as possible.

If you have any questions regarding this response, contact the Freedom of Information and Privacy office at james.r.delmar.civ@mail.mil or 878-274-1185 and reference tracking number APP24-00027.

Sincerely,

James R Delmar

James Delmar
Government Information Specialist

# EXHIBIT U



**OFFICE OF INSPECTOR GENERAL**
DEPARTMENT OF DEFENSE
4800 MARK CENTER DRIVE
ALEXANDRIA, VIRGINIA  22350-1500

November 30, 2023
Ref: DODIG-2024-000119

**SENT VIA EMAIL TO: rsander@sandergroup.org**
Mr. Robert Sander
The Sander Group, PLLC
6618 Saint Marks Court
Alexandria, VA  22306

Dear Mr. Sander:

This responds to your Freedom of Information Act (FOIA) request, as enclosed.  We received your request on November 20, 2023, and assigned it case number DODOIG-2024-000119.

For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of the FOIA.  See 5 U.S.C. 552(c) (2006 & Supp. IV 2010).  This response is limited to those records that are subject to the requirements of the FOIA.  This is a standard notification given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist.

Please be advised that any documents that may be responsive to your request are compiled for a law enforcement inquiry and release, at this time, could reasonably be expected to interfere with the inquiry.  As such, 5 U.S.C. § 552 exemption (b)(7)(A) of the FOIA provides for withholding records or information compiled under these circumstances, as law enforcement inquiries are not limited to criminal actions but include civil actions and regulatory proceedings as well.  For this reason, we cannot release any responsive documents at this time.  Once the inquiry is complete however, exemption (b)(7)(A) may no longer apply, and you may re-submit your request.  Please note that, even after the inquiry is completed, responsive records may still be exempt from disclosure based on one or more FOIA exemptions.

If you consider this an adverse determination, you may submit an appeal.  Your appeal, if any, must be postmarked within 90 days of the date of this letter, clearly identify the determination that you would like to appeal, and reference to the FOIA case number above. Send your appeal via mail to the Department of Defense, Office of Inspector General, ATTN: FOIA Appellate Authority, Suite 10B24, 4800 Mark Center Drive, Alexandria, VA 22350-1500, via email to foiaappeals@dodig.mil, or via facsimile to 571-372-7498.  However, please note that FOIA appeals can only examine adverse determinations concerning the FOIA process.  For more information on appellate matters and administrative appeal procedures, please refer to 32 C.F.R. Sec. 286.9(e) and 286.11(a).

You may contact our FOIA Public Liaison at FOIAPublicLiaison@dodig.mil, or by calling 703-604-9785, for any further assistance with your request.  Additionally, you may

November 30, 2023
Ref: DODIG-2024-000119

contact the Office of Government Information Services (OGIS) at the National Archives and
Records Administration to inquire about the FOIA mediation services they offer.  The contact
information for OGIS is as follows: Office of Government Information Services, National
Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, MD 20740-
6001, email at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or
facsimile at 202-741-5769.  However, OGIS does not have the authority to mediate requests
made under the Privacy Act of 1974 (request to access one's own records).

        If you have any questions regarding this matter, please contact our office at 703-604-
9775 or via email at foiarequests@dodig.mil.

                            Sincerely,

                            Searle Slutzkin
                            Division Chief
                              FOIA, Privacy and Civil Liberties Office

Enclosure(s):
As stated

2

**The Sander Group**
**6618 Saint Mark Court**
**Alexandria, VA 22306**
**(703) 459-0442**

November 20, 2023

Department of Defense (DOD) Office of the Inspector General (IG)
Attn: DOD IG FOIA Coordinator
foiarequests@dodig.mil
(Submitted Via Email Only)

Dear FOIA Coordinator:

This is a request under the Freedom of Information Act (5 U.S.C. 552).

On behalf of Ms. Kristina Glines and as her counsel of record, I request that a copy of the
following document(s) be provided to me:

(a)  All materials relating to the DOD IG and DCIS investigation of ███████████, Inc,
also known as '████    These documents would likely be dated in the range of 5/1/2021 to
1/1/2023.

(b)  All documents, notes, records, recordings, interviews, emails, text messages, and
conclusions relating to the DOD IG and DCIS investigation of Ms. Glines, whether they be
generated by DOD, DCIS, or by the Navy. These documents are expected to range from
December 2021 through January 2023.

(c)  The final report by former Agent Peter Rozman, Agent Brian Futagaki, and/or any other
DOD IG or DCIS agent(s) or employees regarding Ms. Glines, and any attachments or
enclosures thereto.  This document is likely dated in the range of October 2022 to January
2023.

(d)  Information, emails, text messages, notations, or other documents in which the report
discussed in request (c), supra, was shared within the Navy, DoD IG, or other Government
agencies. These documents would be dated from October 2022 to the present.

(e)  The interview notes, impressions, conclusions, and documentation of all interviews
conducted in relation to the DCSA investigation of Ms. Glines. These email, text messages,
and documents would be dated in the range of December 2021 through January 2023.

(f)  All DOD IG and DCIS requests for opinions, guidance, advice, or direction on the ethical
matters pertaining to Ms. Glines. These documents would be dated from 2021 to the present.

(g)  All information pertaining to the security review of Ms. Glines stemming from the DOD IG and DCIS investigation; including documentation of whether (and if so, how) DOD IG and DCIS staff informed any Navy action under procedural requirements of DODM 5200.02 and other applicable laws and regulations, from December 2021 to the present.

In order to help you determine my status for the purpose of assessing fees, you should know that Ms. Glines is an individual seeking information for her personal use and not for a commercial use.

I request a waiver of fees for this request because disclosure of the requested information is in the public interest.  This information is likely to contribute significantly to public understanding of the procedural requirements applicable to operations or activities of the DoD and is not primarily in her commercial interest.  These documents will contribute to an understanding of how the DOD and the Navy processes security clearance access and eligibility determinations, including the appropriate processing of these matters pursuant to DODM 5200.02.

This process is otherwise hidden from public view under an inappropriate understanding of the Supreme Court's *Egan* doctrine, with the hiding of such materials creating the impression that the Navy uses *Egan* as a shield against review of potentially inappropriate security actions. *Egan*'s stated purpose is to protect against judicial review of the substance of the security action, which is properly reserved to the Executive Branch. Ms. Glines is aggrieved by an improper application of *Egan* by the Navy and a failure to follow DoD and Navy procedures. The information on the full process under DODM 5200.02 and its practical application will be disseminated through the public court system to allow any individual similarly aggrieved to have their cases addressed according to whether the Navy followed proper procedural protocols. An understanding of those procedural protocols will allow individuals to fully adjudicate complaints of improper process in security matters.

I have also included a telephone number at which I can be contacted if necessary to discuss any aspect of my request.

Sincerely,

Robert J. Sander
6618 Saint Mark Court
Alexandria, VA 22306
(703) 459-0442
rsander@sandergroup.org

cc: Ms. Kristina Glines

# EXHIBIT V

**THE SANDER GROUP, PLLC**
**6618 SAINT MARK COURT**
**ALEXANDRIA, VA 22306**
**(703) 459-0442**

December 20, 2023

Department of Defense, Office of Inspector General
ATTN: FOIA Appellate Authority
Suite 10B24, 4800 Mark Center Drive
Alexandria, VA 22350-1500
**(Via email only to foiaappeals@dodig.mil)**

**Re: Appeal of FOIA Denial DODOIG-2024-000119**

Dear FOIA Appellate Authority,

On behalf of Kristina Glines, The Sander Group, PLLC ("The Sander Group") sent The Department of Defense Office of Inspector General ("DODIG") a Freedom of Information Act ("FOIA") Request on November 20, 2023. This FOIA Request was received the same day, and DODIG assigned it case number DODOIG-2024-000119 (Attached as Exhibit 1). On November 30, 2023, FOIA, Privacy and Civil Liberties Office Division Chief Searle Sluzkin sent a form letter denying this FOIA Request (Attached as Exhibit 2). In their FOIA Request Denial and Response, the DODIG failed to even conduct a records search or review of the records under the unfounded assumption that the records sought might be excluded from the FOIA under 5 U.S.C. § 552(c). This denial is surprising, given the DODIG's obligation under the FOIA to make records available unless certain criteria are met, see 5 U.S.C. § 552. Based on the DODIG's Response, it appears as though the DODIG did not even attempt to determine whether such criteria applied to the individual documents requested, as apparently, no search for materials, much less a review of such records, was even conducted.

On November 30, 2023, DODIG sent a standard notification, which DCIS appears to send when responsive documents may have been compiled for law enforcement purposes in anticipation of the possibility that the records may be covered by sections (b)(7)(A) and/or (c). DODIG claims that this letter is not a determination that the records are indeed exempt from FOIA under those sections, but advises that we can treat the letter as a negative determination--hence, the "final response" name given to its email response. Importantly, DODIG did not advise that it was performing any search whatsoever, and there is no assertion that they even conducted a records search or review. Additionally, the FOIA Office's Response gives the negative implication that it does not intend to even begin its perfunctory obligations under the FOIA absent an appeal. This stance demonstrates a legal interpretation that reads DODIG's FOIA obligations out of the statute and improperly shifts the burden to requestors to justify the request before DODIG undertakes its own statutory obligations. We are thus compelled to use

the FOIA appeal process not to make an appeal of a reasoned determination, but rather, to convince DODIG to take a first look at the materials.

Please consider this letter our appeal of the DODIG's refusal to search for the requested materials and review the documents.   We believe that neither 5 U.S.C. §552(b)(7)(A) nor the "rarely applicable" 5 U.S.C. §552(c) (*see Shapiro v. United States DOJ*, 153 F. Supp 3d 253, 271 (D.D.C. 2016)) apply to exclude the search or production of records sought.

## I.    <u>The Requested Records.</u>

Exhibit 1, FOIA request DODOIG-2024-000119, articulates which records The Sander Group requested.  Ms. Glines has an interest in all of the requested records, of most interest are the records requested as follows:

(b)  All documents, notes, records, recordings, interviews, emails, text messages, and conclusions relating to the DOD IG and DCIS investigation of Ms. Glines, whether they be generated by DOD, DCIS, or by the Navy. These documents are expected to range from December 2021 through January 2023.

(c) The final report by former Agent Peter Rozman, Agent Brian Futagaki, and/or any other DOD IG or DCIS agent(s) or employees regarding Ms. Glines, and any attachments or enclosures thereto. This document is likely dated in the range of October 2022 to January 2023.

Based upon a November 10, 2022 Memorandum from Director of the Department of the Navy Special Programs (available upon request), the investigation into Ms. Glines was closed at very latest by November 10, 2022.  Requests (d) through (g) all stem from the investigation into Ms. Glines and should pre-date the completion of Agent Rozman's report.  See Exh. 1.

We have reason to believe that the investigation into BSI (see Exh.1, request (a)) is also complete. The final response to the FOIA request suggests that if investigation is not completed, we can re-submit the request once completed.  DODIG should have at a minimum done their due diligence and determined this status before denying the request. We also understand that Agent Rozman, who retired almost a year ago, told the Navy that DCIS "would not be bringing criminal charges."

## II.    <u>5 U.S.C. § 552(b)(7)(A) Does Not Apply to the Requested Records.</u>

Exhibit 2, DODIG's denial of the FOIA request, claims that records which:

may be responsive to your request are compiled for a law enforcement inquiry and release, at this time, could reasonably be expected to interfere with the inquiry.  As such, 5 U.S.C. § 552 exemption (b)(7)(A) of the FOIA provides for withholding records or information compiled under these circumstances, as law enforcement inquiries are not limited to criminal actions but include civil actions and regulatory proceedings as well.  For this reason, we cannot release any

responsive documents at this time.  Once the inquiry is complete however, exemption (b)(7)(A) may no longer apply, and you may re-submit your request. Please note that, even after the inquiry is completed, responsive records may still be exempt from disclosure based on one or more FOIA exemptions.

Exemption (b)(7)(A) includes:

> [r]ecords or information compiled for law enforcement purposes, **but only to the extent that the production** of such law enforcement records or information (A) **could reasonably be expected to interfere with enforcement proceedings**. (emphasis added).

DCIS investigated a question of whether Ms. Glines used her public position for private gain.  In the November 10, 2022 memorandum, Mr. Brian T. Howes, the Director of the Department of the Navy Special Programs Central Office (DON SAPCO) claims that the investigation is "closed and culpability established."   This suggests that enforcement proceedings on the matter, if any, were completed over a year ago.  In the same time frame, DCIS reported to Navy that it "would not be bringing criminal charges."  Although (b)(7)(A) need not only apply to criminal enforcement proceedings, DCIS does not handle non-criminal matters; the implication in this statement is that there will be no enforcement proceedings arising out of the subject investigation.  Despite different conclusions, both sources suggest that any enforcement proceedings potentially affected by the report requested in request (c), are not an issue, and as such, the report should be released. Further, the documents in requests (b) and (d) through (g) arise out of that investigation and should also be released.

Based upon the Government's own records and despite all reasonable conclusions in the Government's favor, this material should not be withheld under exemption (b)(7)(A), and the exemption should certainly not be read to nullify the entirety of the request.  It is undisputed that FOIA's "'limited exemptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act.' Accordingly, these exemptions 'must be narrowly construed.'" *John Doe Agency v. John Doe Corp., 493 US 146, 152 (1989), citing Dept. of Air Force v. Rose*, 425 U.S. 352, 361 (1976).  There is no reasonable way that exemption b(7)(A) can be seen to control the request such as to foreclose disclosure, much less the full disclosure claimed in the FOIA Request Denial.

## III.    5 U.S.C. § 552(c) Does Not Apply to the Requested Records.

The FOIA Request Denial does not comply with the FOIA by declining to search for records based on the possibility that the records might be excluded from the FOIA under 5 U.S.C. § 552(c).  This provision allows agencies, "under unusual circumstances," to treat responsive materials as if they were exempt from FOIA's application.  *Shapiro*, 153 F. Supp. 3d at 256 (D. D.C. 2016).  "The Section 552(c) exclusions are rarely applicable in principle and are even more rarely applied in practice. In the words of the Justice Department's own guide to FOIA, the exclusions are 'a novel mechanism for protecting certain especially sensitive law enforcement matters,' and are employed only in 'exceptional circumstances.'" *Id*. at 271-272, citing U.S. Dep't of Justice, *Guide to the Freedom of Information Act: Exclusions 1* (last updated

Mar. 5, 2014).  There are three subsections to 5 U.S.C. § 552(c), which we address in succession.
A cursory review of the materials would have demonstrated that 5 U.S.C. § 552(c) does not
apply to the requested records.

**a.     5 U.S.C. § 552(c)(1) depends on successful application of criteria which do not apply
to these records.**

5 U.S.C. § 552(c)(1) reads as follows:

> (1) Whenever a request is made which involves access to records described in
> subsection (b)(7)(A) **and**—
>> (A) the investigation or proceeding **involves a possible violation of
>> criminal law**; **and**
>> (B) there is reason to believe that (i) the **subject of the investigation or
>> proceeding is not aware of its pendency**, and (ii) **disclosure** of the
>> existence of the records **could reasonably be expected to interfere with
>> enforcement proceedings**,
> the agency may, during only such time as that circumstance continues, treat the
> records as not subject to the requirements of this section.
> 5 U.S.C. § 552(c)(1) (emphasis added.)

Section 552(c)(1) requires that the investigation involve a possible violation of criminal
law.  We have documents showing that DCIS Agent Rozman informed the Navy in October 2022
that DCIS determined there is no violation of criminal law.  Further, in order to apply the
exemption, the subject of the investigation must not be aware of its pendency.  Ms. Glines, the
subject of the investigation, is not only aware of its pendency, she understands that the
investigation is complete.  Further, because there was no criminal conduct identified by DCIS,
there will be no enforcement proceedings.  5 U.S.C. § 552(c)(1) cannot be a reason to deny the
applicability of the FOIA to the records Ms. Glines requests.

**b.     5 U.S.C. § 552(c)(2) and (3) are not at issue for the requested records.**

5 U.S.C. § 552(c)(2) depends on specific conditions concerning the request:

> Whenever informant records maintained by a criminal law enforcement agency
> under an informant's name or personal identifier are requested by a third party
> according to the informant's name or personal identifier, the agency may treat the
> records as not subject to the requirements of this section unless the informant's
> status as an informant has been officially confirmed.
> 5 U.S.C. § 552(c)(2).

Ms. Glines did not ask for informant records, nor did she ask for records under an
informant's name.  The only names referenced in her FOIA request were the names of the
primary DCIS agent, Peter Rozman; the successor agent after Agent Rozman retired, Agent
Brian Futagaki; and her own name.  See Exh. 1.  5 U.S.C. §552(c)(2) does not apply to exclude
Ms. Glines' request from the FOIA.

5 U.S.C. §522(c)(3) applies to records maintained by the Federal Bureau of Investigation pertaining to foreign intelligence or counterintelligence, or international terrorism, but only where the existence of those records is classified in the interests of national defense or foreign policy. Given Ms. Glines' interview by the DCIS, and what we know, the records requested concerning both Ms. Glines and/or BSI do not meet this standard. There is no likelihood that that any foreign intelligence or counterintelligence issues are addressed in the requested records. Further, the request is made to DODIG for records generated by DCIS, and there is no reasonable expectation that the FBI is a custodian for these materials. None of the criteria under 5 U.S.C. §552(c) apply to exclude the records Ms. Glines has requested from the FOIA.

## IV.    **DODIG improperly shifted their agency burden and failed to conduct an adequate search.**

DODIG, not Ms. Glines, bears the burden of demonstrating that it has complied with its obligations under FOIA. 5 U.S.C. § 552(a)(4)(B). Specifically, it bears the burden of demonstrating that it conducted an adequate search and properly withheld documents under one of the recognized exemptions. *Id.*; *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991). However, that burden was not met here because DODIG proactively denied the request without even searching for the records to verify whether or not the rarely applicable provisions of 552(c) applied.

5 U.S.C. §552(a)(6)(A) sets forth the process for Agencies to respond to a FOIA request, and the requestor's appeal rights:

> Each agency, upon any request for records made under paragraph (1), (2), or (3) of this subsection, shall—
> **(i)** determine […] whether to comply with such request and shall immediately notify the person making such request of—
>> **(I)** such determination and the reasons therefor;
>> **(II)** the right of such person to seek assistance from the FOIA Public Liaison of the agency; and
>> **(III)** in the case of an adverse determination—
>>> **(aa)** the right of such person to appeal to the head of the agency, within a period determined by the head of the agency that is not less than 90 days after the date of such adverse determination[.]
> […]
> **(ii)** make a determination with respect to any appeal […]. If on appeal the denial of the request for records is in whole or in part upheld, the agency shall notify the person making such request of the provisions for judicial review of that determination under paragraph (4) of this subsection. 5 U.S.C. § 552(a)(6)(a).

Reasons for denial to release particular pieces of information are often listed in what is known as a Vaughn Index. It appears that DODIG's FOIA stance—in which it denies via form letter the requirement to search for records that might potentially be covered by 552(c)—systematically deprives the requestor of a functional appeal under 552(a)(6)(A)(i)(III). At this time, there is no determination on the documents at issue, or reason given as required by

552(a)(6)(A)(i)(I). The only apparent recourse would launch the requestor into a costly court battle over an improper first-time denial, without the benefit of seeking an administrative appeal for disagreements over the Agency's true first look. Ms. Glines hopes that the Government will see its errors and amicably and properly comply with this FOIA Request in accordance with the law.

## V.    Anticipatory arguments to possible DODIG responses.

To preserve time and resources, we here respond to denials or redactions we might anticipate receiving based on FOIA exemption (b)(7), without any information on the particular denials or redactions DODIG seeks to make.

Keeping the narrow construction of FOIA exemptions in mind, exemption (b)(7) includes:

> [r]ecords or information compiled for law enforcement purposes, **but only to the extent that the production** of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings, (B) would deprive a person of a right to a fair trial or an impartial adjudication, (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, (D) could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or (F) could reasonably be expected to endanger the life or physical safety of any individual[.]

5 U.S.C. 552(b)(7), (emphasis added.)

The DOJ FOIA guide makes it abundantly clear that Agencies seeking to withhold information under exemption (7) must demonstrate for each subpart that the information requested "could reasonably be expected" to cause the harm that the subsection seeks to prevent- - except for subparts (B) and (E), which requires that the Agency demonstrate that the disclosure would indeed cause the harm the subpart seeks to prevent. *Id.*

While these records may have originally been compiled for a law enforcement purpose, the other requirements of exemption (b)(7) are not met. As discussed above, over a year ago DCIS determined that there was no criminal wrongdoing, and as such there are no enforcement proceedings to implicate (b)(7)(A), and no trial with which to interfere under (b)(7)(B). Ms. Glines is requesting information about herself, so there is no reasonable expectation that granting her information about an investigation into her own conduct could be deemed an invasion into her privacy, and no one else's privacy is implicated by the investigation into her conduct under (b)(7)(C). There is no reasonable expectation of confidential sources under (b)(7)(D). To the

extent that there may be some unexpected confidential source referenced in the investigation, that information may be redacted to satisfy the requirement that information withheld under exemption (b)(7) may be withheld "only to the extent that" its production could be expected to disclose that source.

To the extent that the requested information reveals any techniques, procedures, or guidelines for law enforcement investigations, we expect that this would be a very limited portion of the documents requested. Further, exemption (7)(E) is one of the subparts requiring a more stringent standard of proof of harm—that is "would disclose" material otherwise exempted under (7)(E), and even then, that information could be redacted. Given that the investigation concerned false allegations that Ms. Glines used her public position for private gain, there is no reasonable possibility that this report would endanger the life or physical security of any individual, and as such, there is no reasonable expectation that exemption (7)(F) would be a factor in any withholding of the report.

## VI.    **Conclusion.**

For the above reasons, we believe that DODIG should release the requested records. To the extent that DODIG decides to deny any portion of the request, we request a Vaughn Index such that we may expedite court consideration of this matter. Given that DODIG did not deny Ms. Glines' request to waive fees in its final response, it is our understanding that the Government agrees to waive fees for processing this FOIA request.

Sincerely,

Robert J. Sander
6618 Saint Mark Court
Alexandria, VA 22306
(703) 459-0442
rsander@sandergroup.org

cc: Ms. Kristina Glines

Enclosures:

Exhibit 1, FOIA request DODOIG-2024-000119, November 20, 2023

Exhibit 2, FOIA Request Denial and Response, November 30, 2023